Simon J. Frankel, SB # 171552
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:    (415) 591-6000
Facsimile:    (415) 591-6091
sfrankel@cov.com

EUGENE D. GULLAND (*pro hac vice application pending*)
DONALD J. RIDINGS JR. (*pro hac vice application pending*)
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004-2401
Tel: (202) 662-6000
Fax: (202) 662-6291

Attorneys for Defendant
KYOCERA CORPORATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY N. LAPINE,<br><br>                    Plaintiff,<br><br>        v.<br><br>KYOCERA CORPORATION,<br><br>                    Defendant. | Civil Case No.:  3:07-cv-06132-MP<br><br>**DEFENDANT KYOCERA CORPORATION'S NOTICE OF CROSS-MOTION AND CROSS-MOTION TO CONFIRM ARBITRAL AWARD; MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF CROSS-MOTION TO CONFIRM ARBITRAL AWARD, AND (2) IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE**<br><br>Date:          April 7, 2008<br>Time:          2:00 p.m.<br>Courtroom:   15<br><br>Hon. Marilyn H. Patel |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................... iii

NOTICE OF MOTION AND MOTION TO CONFIRM ARBITRAL AWARD ...................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

PRELIMINARY STATEMENT ............................................................................... 1

I.      PROCEDURAL BACKGROUND ................................................................ 3

II.     STATEMENT OF FACTS ........................................................................ 4

        A.      Reorganization Of LTC In The Mid-1980s. ........................................ 4

        B.      LaPine's 1990 Arbitration Request And The Lengthy Delay. .............. 5

        C.      Reactivation Of The LaPine Arbitration Proceedings. ........................ 6

                1.      The Arbitral Tribunal ............................................................ 6

                2.      Kyocera's Motion For Summary Adjudication ......................... 7

                3.      The Tribunal's Award ........................................................... 8

III.    THE AWARD SHOULD BE CONFIRMED UNDER CHAPTER II OF THE
        FAA AND THE CONVENTION ON THE RECOGNITION AND
        ENFORCEMENT OF FOREIGN ARBITRAL AWARDS ................................. 9

        A.      The Convention Governs This Court's Review of the Award. .............. 9

        B.      The Award Must Be Confirmed In A "Summary Proceeding." ........... 11

                1.      Article V Of The Convention Supplies The Only Grounds For
                        Refusing To Confirm The Award ......................................... 11

                2.      None Of The Convention's Grounds For Refusing
                        Confirmation Applies Here .................................................. 12

                        a)      The Award may not be denied confirmation on the ground
                                that the Tribunal's summary adjudication standards were
                                "not in accordance with the agreement of the parties" ............... 13

                        b)      The Award may not be refused confirmation on the
                                ground that LaPine was "not able to present his case" ............... 16

        C.      The Court May Not Subject The Award To "Expanded Judicial
                Review." ........................................................................................ 18

IV.   LAPINE'S MOTION TO VACATE MUST BE DENIED EVEN UNDER (1) DOMESTIC FAA REVIEW STANDARDS AND (2) CONTRACTUAL "EXPANDED JUDICIAL REVIEW".................................................................... 20

    A.   The Award Should Not Be Vacated Under Chapter I Of The FAA. ................... 20

        1.   The Tribunal Did Not Exceed Its Powers By Applying Summary Judgment Standards That Are Different From California Judicial Procedures ................................................. 21

        2.   The Tribunal Did Not "Ignore[] Plaintiff's Claims Of Breach Of The Covenant Of Good Faith And Fair Dealing" In Manifest Disregard Of The Law ................................................. 21

    B.   The Award Must Be Upheld Even Under "Expanded Judicial Review." ........... 23

        1.   The Tribunal's Legal Conclusions Were Not Erroneous. ...................... 24

            a)   The Tribunal correctly ruled that, under California substantive law, LaPine lacks standing to bring claims for the "destruction in value" of LTC ................................ 24

            b)   LaPine's claims are also barred by waiver and estoppel ............ 28

            c)   The Tribunal correctly ruled that the pendency of a class action lawsuit brought by another former LTC shareholder did not toll the statute of limitations on LaPine's fraud claims. ......................................................................... 31

        2.   The Tribunal's Award Was Supported By Substantial Evidence............ 33

            a)   The Tribunal correctly ruled that LaPine failed to establish a *prima facie* case of fraud ............................................. 34

            b)   The Tribunal did not err by deciding Kyocera's motion on the full record before it ................................................ 35

CONCLUSION.................................................................................................... 36

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*American Pipe & Construction Co.* v. *Utah*,
  414 U.S. 538 (1974)..................................................................................31, 32

*Alexander* v. *Gardner-Denver Co.*,
  415 U.S. 36 (1974)............................................................................................17

*Blue Chip Enter., Inc.* v. *Brentwood Sav. & Loan Ass'n*,
  139 Cal.Rptr. 651 (Cal Ct. App. 1977)............................................................16

*Brock* v. *Kaiser Found. Hosps.*,
  13 Cal.Rptr.2d 678 (Cal. Ct. App. 1992).........................................................16

*Burgess* v. *Kaiser Found. Hosps.*,
  20 Cal.Rptr.2d 488 (Cal. Ct. App. 1993).........................................................16

*Burton* v. *Bush*,
  614 F.2d 389 (4th Cir. 1980) ...........................................................................17

*Byerly* v. *Sale*,
  204 Cal.App.3d 1312 (Cal. Ct. App. 1988) ......................................................16

*Carey* v. *Kerr-McGee Chem. Corp.*,
  999 F. Supp. 1109 (N.D. Ill. 1998)...................................................................32

*China Nat'l Metal Prod. Import/Export Co.* v. *Apex Digital, Inc.*,
  379 F.3d 796 (9th Cir. 2004) ...........................................................................12

*Collins* v. *D.R. Horton, Inc.*,
  505 F.3d 874 (9th Cir. 2007) ......................................................................21, 22

*Common Wealth Ins. Sys., Inc.* v. *Kersten*,
  115 Cal.Rptr. 653 (Cal. Ct. App. 1974)...........................................................29

*Compagnie des Bauxites de Guinee* v. *Hammermills, Inc.*,
  1992 WL 122712 (D.D.C. May 29, 1992)..........................................................13

*Daly* v. *Yessne*,
  31 Cal.Rptr.3d 420 (Cal. Ct. App. 2005).....................................................25, 28

*De la Fuente* v. *FDIC*,
  332 F.3d 1208 (9th Cir. 2003) .........................................................................33

*Fireman's Fund Ins. Co.* v. *Sparks Constr., Inc.*,
  8 Cal.Rptr.3d 446 (Cal. Ct. App. 2004)...........................................................29

*Fortier* v. *Morgan Stanley DW, Inc.*,
   2006 WL 3020926 (N.D. Cal. Oct. 23, 2006) ........................................................21

*Gallus Investments, L.P.* v. *Pudgie's Famous Chicken, Ltd.*,
   134 F.3d 231 (4th Cir. 1998) ..............................................................................15

*Generica Ltd.* v. *Pharmaceutical Basics, Inc.*,
   125 F.3d 1123 (7th Cir. 1997) ............................................................................17

*Goodman* v. *CIBC Oppenheimer & Co.*,
   131 F. Supp. 2d 1180 (C.D. Cal. 2001) ..............................................................22

*Hall Street Assocs., L.L.C.* v. *Mattel, Inc.*,
   127 S. Ct. 2875 (2007)..................................................................................19, 20

*Helvering* v. *Southwest Consol. Corp.*,
   315 U.S. 194 (1942)......................................................................................27, 28

*Hoopai* v. *Astrue*,
   499 F.3d 1071 (9th Cir. 2007) ............................................................................33

*In re: Estate of Anderson*,
   70 Cal.Rptr.2d 266 (Cal. Ct. App. 1997)...........................................................30

*Indus. Risk Ins.* v. *M.A.N. Gutehoffnungshutte*,
   141 F.3d 1434 (11th Cir. 1998) ..................................................................9, 10, 12

*Interchem Asia 2000 PTE Ltd.* v. *Oceana Petrochemicals AG*,
   373 F. Supp. 2d 340 (S.D.N.Y. 2005) .................................................................15

*Jain* v. *de Mere*,
   51 F.3d 686 (7th Cir. 1995) ................................................................................10

*Jolly* v. *Eli Lilly & Co.*,
   44 Cal.3d 1103 (1988) ........................................................................................32

*Jones* v. *H.F. Ahmanson & Co.*,
   81 Cal.Rptr. 592 (1969) ......................................................................................25

*Kessler* v. *General Cable Corp.*,
   155 Cal.Rptr. 94 (Cal. Ct. App. 1979)...........................................................25, 27

*Kidd* v. *Kopald*,
   36 Cal. Rptr. 2d 875 (Cal. Ct. App. 1994).........................................................16

*Kyocera Corp.* v. *Prudential-Bache Trade Servs., Inc.*,
   341 F.3d 987 (9th Cir. 2003) (*en banc*) .....................................................*passim*

*M&C Corp.* v. *Erwin Behr GmbH & Co.*,
   87 F.3d 844 (6th Cir. 1996) ................................................................................20

*Management & Technical Consultants S.A.* v. *Parsons-Jurden Int'l Corp.*,
    820 F.2d 1531 (9th Cir. 1987) ...................................................................11

*Mastrobuono* v. *Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)........................................................................................15

*Metalclad Corp.* v. *Ventana Envir. Org'l Ptrshp.*,
    1 Cal.Rptr.3d 328 (Cal. Ct. App. 2003).......................................................29

*Michigan Mutual Ins. Co.* v. *Unigard Security Ins. Co.*,
    44 F.3d 826 (9th Cir. 1995) .........................................................................21

*Ministry of Defense of Islamic Republic* v. *Gould, Inc.*,
    969 F.2d 764 (9th Cir. 1992) .......................................................................12

*Nelson* v. *Anderson*,
    84 Cal.Rptr.2d 753 (Cal. Ct. App. 1999)......................................................26

*Old Republic Ins. Co.* v. *FSR Brokerage, Inc.*,
    95 Cal.Rptr.3d 583 (Cal. Ct. App. 2000).....................................................29

*Paladino* v. *Avnet Computer Technologies, Inc.*,
    134 F.3d 1054 (11th Cir. 1998) ...................................................................17

*Parsons & Whittemore Overseas Co., Inc.* v. *Societe Generale De L'Industrie Du
    Papier*,
    508 F.2d 969 (2d Cir. 1974) ........................................................................17

*Port of Seattle* v. *FERC*,
    499 F.3d 1016 (9th Cir. 2007) .....................................................................33

*Porterville Citizens for Responsible Hillside Develop.* v. *City of Porterville*,
    157 Cal.App. 4th 885 (Cal. Ct. App. 2007)..................................................33

*Preston* v. *Ferrer*,
    --- S.Ct. ----, 2008 WL 440670 (U.S. February 20, 2008)........................15

*Salton Comm. Servs. Dist.* v. *Southard*,
    64 Cal.Rptr. 246 (Cal. App. 1967)...............................................................29

*Schuster* v. *Gardner*,
    25 Cal.Rptr.3d 468 (Cal. Ct. App. 2005).................................................25, 26

*Sheldon* v. *Vermonty*,
    269 F.3d 1202 (10th Cir. 2001) ...................................................................13

*Sphere Drake Ins. Ltd.* v. *Lincoln Nat. Life Ins. Co.*,
    2006 WL 2699270 (N.D. Ill. Sept. 13, 2006)..............................................13

*St. Agnes Medical Center* v. *Pacificare of Cal.*,
    8 Cal.Rptr.3d 517 (2003)..............................................................................29

*T-Mobile USA, Inc.* v. *Quest Communications Corp.*,
   2007 WL 3171428 (W.D. Wash. Oct. 26, 2007) ........................................................22

*Titan/Value Equities Group, Inc.* v. *Superior Court*,
   35 Cal.Rptr.2d 4 (Cal. Ct. App. 1994) ..................................................................16

*Tricome* v. *Success Trade Secs.*,
   2006 WL 1451502 (E.D. Pa. May 25, 2006) ..........................................................13

*Vittal* v. *Long Beach Unified Sch. Dist.*,
   8 Cal.App.3d 112 (1970) ....................................................................................30

*Warren* v. *Tacher*,
   114 F. Supp. 2d 600 (W.D. Ky. 2000) ..................................................................13

*Woodchem Europe, S.A.* v. *D.B. Western, Inc.*,
   2001 U.S. Dist. LEXIS 25290 (D. Or. Nov. 2, 2001) ..............................................12

*Woods* v. *Saturn Dist. Co.*,
   1994 U.S. Dist. LEXIS 21471 (C.D. Cal. May 31, 1994), *aff'd* 78 F. 3d 424 (9th Cir.
   1996) ..................................................................................................................12

*Young* v. *Ross-Loos Med. Group*,
   135 Cal.App.3d 669 (Cal. Ct. App. 1982) ..............................................................16


**STATUTES**

5 U.S.C. § 706(2)(E) ..................................................................................................33

9 U.S.C. § 10(a) ........................................................................................................21

9 U.S.C. § 201 .................................................................................................*passim*

9 U.S.C. § 202 ..........................................................................................................10

9 U.S.C. § 203 ..........................................................................................................10

9 U.S.C. § 207 ....................................................................................................11, 12

Cal. Civ. Proc. Code § 583.310 ..................................................................................16

Cal. Civ. Proc. Code § 583.340 ..................................................................................16

Cal. Civ. Proc. Code § 583.410(a) ..............................................................................16

Cal. Rules of Court, Rule 3.1340 ................................................................................16

## NOTICE OF MOTION AND MOTION TO CONFIRM ARBITRAL AWARD

PLEASE TAKE NOTICE that, on April 7, 2008 at 2:00 p.m., this Court will hear the cross-motion of Kyocera Corporation to confirm the unanimous award of the Tribunal of the ICC International Court of Arbitration in *Anthony N. LaPine* v. *Kyocera Corporation*, No. 7099 (the "Award").

For the reasons described below, the Award must be confirmed under the standards set forth in Chapter II of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* ("FAA"), and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, 300 U.N. 38 (the "Convention").  We also show herein that plaintiff Anthony LaPine's motion to vacate the Award must be denied because it is without basis in fact or law.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the Award must be recognized and enforced as provided in the Convention and the Federal Arbitration Act, 9 U.S.C. §§ 201, *et seq.*

2.  Whether plaintiff has demonstrated any valid ground for vacating the Award.

## PRELIMINARY STATEMENT

In a 1986 business transaction, Anthony LaPine, Kyocera and Prudential agreed to submit any future dispute to binding arbitration before the ICC International Court of Arbitration, which is widely regarded as the leading international arbitration organization. LaPine delayed the prosecution of his claims against Kyocera for nearly 20 years, in hopes of benefiting from an ICC arbitration award for Prudential and against Kyocera in a related arbitration that is well known to this Court and to the Ninth Circuit.  *See Kyocera Corp.* v. *Prudential-Bache Trade Servs., Inc.,* 341 F.3d 987 (9th Cir. 2003) (*en banc*) ("*Prudential*").

LaPine's effort to bootstrap the *Prudential* award failed completely.  In August 2007, an exceptionally distinguished ICC arbitral Tribunal unanimously ruled that none of his claims has any merit.  Two members of the Tribunal are leading U.S. lawyers and arbitrators who also sat on the *Prudential* Tribunal.  The third is the former Secretary-General of the ICC International Court of Arbitration, who serves as a full-time arbitrator of major international disputes.  The record, and the Tribunal's 31-page single-spaced Award, amply shows that the Tribunal gave

1  full and fair consideration to all of LaPine's factual and legal arguments, and rejected them for

2  sound reasons.

3      LaPine has brought this case to vacate the Award, challenging virtually every one of the

4  Tribunal's rulings.  This Court should not hesitate in denying LaPine's motion to vacate — and

5  should grant Kyocera's cross-motion to confirm — for the following reasons:

6      *First*, the Convention and the FAA *require* U.S. courts to confirm international

7  arbitration awards unless the party opposing confirmation demonstrates one of several

8  enumerated defects — incapacity of a party, invalidity of the agreement to arbitrate, lack of

9  notice or denial of the right to be heard, *ultra vires* rulings by the arbitrators, improper

10  composition of the Tribunal, breach of public policy, or existence of a judgment setting aside

11  the Award.  LaPine has not presented a plausible case for denying confirmation of the Award on

12  any of these narrow grounds, including any basis for entry of a judgment setting aside the

13  Award.

14      *Second*, in attacking the Award, LaPine entirely ignores that it is an *international*

15  arbitration Award governed by the Convention, to which the U.S. and Japan are signatories.  As

16  reflected in the many cases applying Chapter II of the FAA, 9 U.S.C. §§ 201, *et seq.*, the scope

17  of judicial review of an international Award is exceedingly narrow and does not allow the courts

18  to conduct the merits review sought by LaPine.  LaPine's reliance on the broader scope of

19  review allowed by the arbitration agreement — whether the Award is clearly erroneous or

20  unsupported by "substantial evidence" — fails because such a standard (i) is inconsistent with

21  the Convention and the FAA; (ii) is contrary to the Ninth Circuit's *en banc* ruling as to the same

22  contract provision in the *Prudential* case; and (iii) is not permitted by the governing ICC Rules,

23  which require the parties to waive all objections to the Award to the fullest extent such waiver is

24  lawful, and do not allow the parties to agree upon procedures that are inconsistent with that

25  Rule.

26      *Third*, even under the expanded scope of review sought by LaPine, there would be no

27  basis for vacating the Award.  In most instances, the supposed legal errors in the Award consist

28  of the Tribunal's refusal to follow California judicial and discovery *procedural* rules, which are

1   simply inapplicable to an international arbitration conducted according to ICC rules and

2   procedures.  Where the Tribunal applied California *substantive* law, it did so correctly and

3   without committing any error.  Finally, the Award was supported not only by "substantial

4   evidence" — which is actually a very narrow standard of review — but by the overwhelming

5   evidence of record that was carefully considered by the Tribunal.

6   **I.      PROCEDURAL BACKGROUND**

7          The Award arises out of events that occurred more than 20 years ago.  Kyocera and

8   Prudential acquired a small California disk drive company in 1986 called LaPine Technology

9   Corporation ("LTC") in a transaction in which plaintiff LaPine was also a participant.  LTC

10  never earned a profit and soon ceased operations.

11         Kyocera and Prudential blamed one another for LTC's failure, and Prudential and LTC

12  (which Prudential controlled) commenced arbitration proceedings against Kyocera (the

13  "Prudential Arbitration").  The ICC appointed a three-member tribunal to hear the dispute.  In

14  1994, the panel ruled in favor of Prudential and LTC, and directed Kyocera to pay damages to

15  LTC equal to 100% of LTC's value.  After years of litigation over that award, the Ninth Circuit

16  confirmed the award in the Prudential Arbitration.  *See Kyocera Corp.* v. *Prudential-Bache*

17  *Trade Servs., Inc.,* 341 F.3d 987 (9th Cir. 2003) (*en banc*).

18         Plaintiff LaPine is a former CEO and shareholder in LTC.  In the 1986 transaction,

19  LaPine sold his interest in LTC to Prudential and Kyocera in exchange for a $2 million package.

20  In 1990 — more than three years after LTC failed — LaPine filed this arbitration proceeding

21  (the "LaPine Arbitration") against both Kyocera and Prudential, accusing them of destroying the

22  value of LTC.  In his arbitration demand, LaPine acknowledged his intent to "take advantage

23  of" whatever award resulted from the separate Prudential Arbitration that was already

24  underway.

25         The ICC appointed the same arbitrators in the LaPine Arbitration as had been seated in

26  the Prudential Arbitration.  The Tribunal granted a stay of the LaPine Arbitration pending

27  issuance of an award in the Prudential Arbitration.  But even after the Prudential award issued in

28  1994, LaPine sought and obtained further extensions from the ICC.  Only after Kyocera sought

discontinuance of the LaPine Arbitration in 2005 did LaPine advise the ICC that he was ready to move forward with his case.  By that point, eleven years had passed since the Prudential Arbitration award had issued; fifteen years had elapsed since LaPine filed this proceeding; and almost two decades had run since the disputed events had occurred.

In the meantime, one of the arbitrators had passed away.  In 2006, the ICC appointed (without objection) a former ICC Secretary General to fill that seat.  With agreement of both parties, the re-constituted Tribunal agreed to entertain a summary adjudication motion by Kyocera.  After receiving extensive briefing and evidentiary submissions from both parties, and hearing oral argument, the Tribunal issued a unanimous 31-page Award in favor of Kyocera.

In December 2007, LaPine petitioned to vacate the Award.  Kyocera opposes that motion and cross-moves to confirm the Award.

## II.    STATEMENT OF FACTS

Except as otherwise noted, this Statement of Facts is drawn from LaPine's *Updated Request for Arbitration*, attached as Exhibit 16 to LaPine's Motion to Vacate Arbitration Award, and other related exhibits attached to LaPine's Motion to Vacate Arbitration Award.

### A.    Reorganization Of LTC In The Mid-1980s.

LaPine established LTC in the early 1980s to design and sell computer disk drives.  (*See* Ex. 16, ¶¶ 3, 9.)  LaPine was LTC's President, CEO and Chairman.

In 1985, Prudential, Kyocera and LaPine formed a three-way business relationship to manufacture, finance and market LTC's disk drives.  (*Id.* ¶¶ 10-11.)  But Prudential and Kyocera quickly began to be concerned about LaPine's management. (*Id.* ¶ 12.)  Prudential complained that LTC "was not meeting its [partnership] obligations" and asserted that Prudential "was no longer obligated to provide financing to [LTC]."  (*Id.*)  LTC "was not meeting its minimum purchase obligations."  (*Id.*)  By mid-1986, all "production and sales activity" at LTC had ceased, as Kyocera, Prudential, and LaPine "attempted to negotiate a resolution." (*Id.* ¶ 13.)

Those negotiations ultimately resulted in a buyout of LaPine and LTC's other shareholders by Prudential and Kyocera, and reorganization of LTC.  (*Id.* ¶¶ 14-15.)  The

relevant terms were embodied in a "Definitive Agreement" dated November 10, 1986.  (Ex. 3.)
The parties to the Definitive Agreement (LTC, Kyocera, Prudential and LaPine) agreed to
arbitrate "[a]ll questions, disputes or differences in any way arising out of or relating to this
Agreement" under ICC Rules.  (*Id.* at ¶ 8.10.)   The Definitive Agreement was governed by
California *substantive* law.

LaPine received more than $2 million from the reorganization and buyout, including an
initial cash payment exceeding $197,000 (Ex. A to the accompanying Declaration of Shannon
M. Nestor ("Nestor Decl.")); notes and interest in an escrow account worth in excess of
$1,168,000 (Ex. B, Nestor Decl.), and $220,000 (Ex. C, Nestor Decl.), respectively; and a five-
year "Consulting Agreement" that paid him $500,000.  (Ex. D, Nestor Decl.)  LaPine never
provided any services under the Consulting Agreement.  (Ex. 16, ¶ 37.)

Shortly before the reorganization was scheduled to close, a disagreement arose between
Kyocera and Prudential over the terms of one of the subsidiary agreements among the parties,
the Amended Trading Agreement (the "ATA").  (*See* Ex. 16, ¶ 22.)  Efforts to reorganize LTC
proceeded despite the disagreement and, in the first half of 1987, Kyocera and Prudential
negotiated over the terms of the ATA.  (*Id.* ¶¶ 24, 26.)  The negotiations failed and, in May
1987, Prudential caused LTC to file suit against Kyocera in this Court.  (*Id.* ¶ 25.)  LTC ceased
operations shortly thereafter.  (*Id.* ¶¶ 26, 28.)  In October 1987, Prudential and LTC commenced
the Prudential Arbitration against Kyocera.  (*Id.* ¶ 49.)  LaPine took no action.

**B.    LaPine's 1990 Arbitration Request And The Lengthy Delay.**

On December 14, 1990, LaPine filed the LaPine Arbitration, expressly stating his
intention to "take advantage of any decision in the [Prudential] arbitration" that had been
pending for three years.  (Ex. 7, "Introduction" (unnumbered page).)  He asked that his
arbitration be stayed and "not be commenced until after there ha[d] been a preliminary award or
awards in the [Prudential Arbitration]."  (*Id.*)  The ICC ordered that the LaPine Arbitration be
held in abeyance "until after the final award" in the Prudential Arbitration.  (Ex. 8.)

The ICC issued its final award in the Prudential Arbitration in August 1994.  LaPine obtained a further stay in the proceedings.  (Ex. 33, ¶ 11.)  Over the ensuing years, the ICC repeatedly extended procedural deadlines.  (Ex. E, Nestor Decl.)

The Ninth Circuit, sitting *en banc*, confirmed the Prudential Arbitration award against Kyocera in December 2003.  At that point the LaPine Arbitration had been languishing on the ICC's docket for more than thirteen years, and Kyocera and Prudential both wrote to the ICC asking that the case be closed.  (Ex. 33, ¶ 15.)  In August 2004, LaPine responded that he intended to prosecute the proceedings (Exs. 12-13), but nothing happened for another year.  In mid-2005, and over Kyocera's objection, new counsel for LaPine entered an appearance and indicated that LaPine was ready to move forward with his claims.  (Ex. 15.)

### C.    Reactivation Of The LaPine Arbitration Proceedings.

#### 1.    The Arbitral Tribunal

The ICC had appointed the same three arbitrators to preside over both the Prudential and LaPine arbitrations in 1991.  Because the chairperson had died, the ICC appointed a replacement in February 2006.  The Tribunal that issued the Award thus consisted of the following three arbitrators:

- **Dr. Horacio A. Grigera Naón**, Chairman.  From 1996-2001, Dr. Naón served as the Secretary General of the ICC International Court of Arbitration.  He has practiced in the field of international commercial arbitration and international business law for over 25 years.[1]

- **Gerald Aksen**, Esq.  Mr. Aksen is a retired partner of the firm Thelen Reid Brown Raysman & Steiner LLP.  He served for sixteen years as the General Counsel of the American Arbitration Association.  From 2000-2002, Mr. Aksen was the Vice Chairman of the ICC International Court of Arbitration.  He was recognized as the leading international arbitration attorney in New York in the 2003-2004 editions of *Chambers Global: The World's Leading Lawyers* and *Chambers USA Guide to America's Leading Business Lawyers*.[2]

---

[1]    Dr. Naón's biography may be found at <http://www.wcl.american.edu/arbitration/naon.cfm>.

[2]    Mr. Aksen's biography can be found at <http://www.thelenreid.com/index.cfm?section=attorney&function=Read&contactID=29>.

- **Graydon S. Staring**, Esq.   Mr. Staring practiced at the law firms of Lillick & Charles and its successor, Nixon Peabody LLP.  He is a Fellow of the American College of Trial Lawyers, and past President of the Maritime Law Association of the United States.  Mr. Staring previously held positions at the U.S. Department of Justice and served as an Adjunct Professor at Boalt Hall School of Law, University of California, Berkley and Hastings College of the Law.[3]

### 2.    Kyocera's Motion For Summary Adjudication

LaPine filed an Updated Request for Arbitration ("Updated Request") in June 2006, asserting ten claims alleging fraud, breach of fiduciary duty, breach of contract, and unjust enrichment.  (Ex. 16.)  LaPine dropped his claims against Prudential.

Kyocera filed an Updated Answer and Counterclaim on June 30, 2006, and simultaneously moved for summary adjudication on all of LaPine's Claims.  (Ex. 17.)  The motion argued that LaPine's claims should be rejected on several grounds:

- **Unreasonable Delay**:  LaPine's extraordinary delay in prosecuting his claims violated California's strong public policy, embodied in statute, against unreasonable litigation delays;

- **Standing**:  LaPine lacked standing to pursue the claims;

- **Waiver / Estoppel**:  LaPine waived his claims and was estopped from asserting them by voluntarily exchanging his right to acquire shares in the hypothetical IPO for cash;

- **Statute of Limitations**:  LaPine's fraud claims are barred by the statute of limitations; and

- **Release**:  LaPine released all of his claims under the broad release contained in the Definitive Agreement.

The parties jointly submitted a proposed procedural schedule to the Tribunal on August 18, 2006.  (Ex. 20.)  The joint schedule called for the Tribunal to address Kyocera's dispositive motion in a threshold summary adjudication phase.  On September 18, 2006, the Tribunal issued Procedural Order No. 1 adopting the parties' proposal and establishing a briefing schedule.  (Ex.

---

[3]      A complete listing of Mr. Staring's publications can be found at <http://community.reinsurance.org/StaticContent/Resumes/StaringGraydonSCV.PDF> and <http://works.bepress.com/graydon_staring/>.

19.)  Both parties filed extensive briefs and evidentiary submissions in support of their respective arguments.  On January 23, 2007, the Arbitral Tribunal heard oral argument in San Francisco.

After the hearing, both parties made additional submissions in response to questions that had arisen during the argument.  On April 11, 2007, the Tribunal advised the parties of the specific summary judgment standards it would apply and offered the parties a further opportunity to submit any additional evidence in support of their respective positions.  (Ex. 26.) Contrary to the joint schedule, LaPine then filed a new 29-page brief, as well as several new exhibits and declarations.  LaPine's post-argument submissions included a declaration by one of LaPine's attorneys identifying — for the first time — 34 additional documents that LaPine's attorneys wanted in order to defend against Kyocera's motion.  Kyocera was granted leave to respond.

On June 22, 2007, Kyocera submitted copies of 28 of the 34 documents.  In an accompanying declaration, Kyocera's attorneys confirmed that following an extensive search of Kyocera's files the remaining six documents either never existed or could not be located.

LaPine did not respond to Kyocera's June 22 submission.  The Tribunal declared the arbitral proceedings closed on July 17, 2007.

### 3.    The Tribunal's Award

On August 29, 2007, the Tribunal issued a unanimous 31-page Award.  (Certified copy attached as Ex. F, Nestor Decl.)

*First*, the Tribunal declined to dismiss LaPine's claims for his delays of prosecution. The Tribunal acknowledged California's procedural rules favoring dismissal in such circumstances, but declined to apply California procedural law.  Instead, it ruled — as LaPine had argued — that "although California law governs the dispute on the merits, it does not control procedural matters or matters concerning the conduct of this arbitration."  (Award ¶ 71.) The Tribunal stressed that ICC procedural rules "isolat[e] ICC arbitral proceedings from the local laws of procedure of the arbitral seat."  (*Id.* ¶ 83.)  Since ICC rules do not call for dismissal of cases for delayed prosecution, the Tribunal ruled that LaPine could present his claims.

1    *Second*, turning to the merits, the Tribunal ruled that LaPine's fraud claims were barred

2    by the statute of limitations applicable to such claims.  The Tribunal rejected LaPine's argument

3    that a class action filed by another former shareholder had tolled the statute on LaPine's

4    obligation to commence his Arbitration, and ruled that the authority cited by LaPine did not

5    apply.  As an alternative ground for dismissal, the Tribunal also ruled that LaPine failed to make

6    out a *prima facie* case of fraud.  The Tribunal considered the entire record in reaching that

7    ruling, including the 28 documents that Kyocera had submitted after LaPine belatedly identified

8    them as potentially relevant.

9    *Third*, the Tribunal dismissed LaPine's contract-based and corporate mismanagement

10    claims for lack of standing.  Applying settled California substantive law, the Tribunal ruled that

11    warrant holders lack standing to bring generalized damages claims based on the diminution in

12    value or destruction of the company that issued the warrant.  The Tribunal also ruled that

13    LaPine's claims were derivative, not individual; that they could only be asserted by LTC; and

14    that LTC had already asserted and recovered damages for them in the Prudential Arbitration.

15    As an additional basis for dismissal, the Tribunal ruled that LaPine's claims were barred by the

16    doctrines of waiver and estoppel, based on LaPine's decision to accept, without any reservation

17    of rights, $1.1 million in lieu of exchanging his warrants for shares; his failure to escrow those

18    monies or otherwise segregate and secure them; his failure to tender those monies back; and his

19    use of those monies during the past 18 years to fund other ventures.

20    Having dismissed all of LaPine's claims on these grounds, the Tribunal found it

21    unnecessary to resolve Kyocera's release and other defenses.

22    **III.    THE AWARD SHOULD BE CONFIRMED UNDER CHAPTER II OF THE FAA
23    AND THE CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF
        FOREIGN ARBITRAL AWARDS**

24    **A.    The Convention Governs This Court's Review Of The Award.**

25    The Convention's principal purpose is to "encourage the recognition and enforcement of

26    international arbitral awards."  *Indus. Risk Ins.* v. *M.A.N. Gutehoffnungshutte*, 141 F.3d 1434,

27    1440 (11th Cir. 1998), quoting *Bergesen* v. *Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir.

28    1983).  It was "drafted in 1958 under the auspices of the United Nations.  The United States

1   acceded to the treaty in 1970, and Chapter II of the FAA [implementing the Convention] was

2   passed that same year." *Indus. Risk Ins*., 141 F.3d at 1440 (citations omitted); *see also* 9 U.S.C.

3   § 201 ("[t]he [Convention] shall be enforced in United States Courts in accordance with this

4   chapter"). The Convention is codified as a note following the text of 9 U.S.C. § 201.

5       An arbitral award "falls under" the Convention if it (i) arises out of a legal relationship

6   that is (ii) commercial in nature and (iii) is not entirely between citizens of the United States.

7   *See* 9 U.S.C. § 202. The first two requirements are plainly met here: the Definitive Agreement

8   from which the arbitration arose embodies a "legal relationship," and the subject of that

9   agreement – the reorganization of LTC and the buyout of LTC's shareholders – is "commercial

10  in nature." The third requirement is also met, because the arbitration under review was not

11  "entirely between citizens of the United States." A corporation is deemed to be a "citizen of the

12  United States" under Chapter II of the FAA "if it is incorporated or has its principal place of

13  business in the United States." 9 U.S.C. § 202. Neither applies to Kyocera: "Kyocera Corp. is

14  a corporation organized and existing under the laws of Japan" (Mot. at 3) with its principal place

15  of business in Kyoto, Japan. (Ex. 18 ¶ 1.2.) Because the arbitration was not entirely between

16  citizens of the United States, and because the proceeding arose out of a legal relationship that

17  was commercial in nature, the Convention governs the Court's review of the Award. *See Jain* v.

18  *de Mere*, 51 F.3d 686, 689 (7th Cir. 1995); *Indus. Risk Ins*., 141 F.3d at 1441.

19      Furthermore, the FAA vests district courts with subject matter jurisdiction over "an

20  action or proceeding falling under the Convention," irrespective of the amount of controversy.

21  9 U.S.C. § 203. This Court accordingly has jurisdiction to review the Award under the

22  standards set forth in the Convention.

23

24

25

26

27

28

**B.      The Award Must Be Confirmed In A "Summary Proceeding."**

      **1.      Article V Of The Convention Supplies The Only Grounds For Refusing To Confirm The Award**

When an arbitration award "falls under" the New York Convention, a district court "*shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207 (emphasis added); *see also Management & Technical Consultants S.A.* v. *Parsons-Jurden Int'l Corp.*, 820 F.2d 1531, 1533-34 (9th Cir. 1987) ("Under the Convention, an arbiter's award can be vacated only on the grounds specified in the Convention.").  Article V of the Convention lists the only seven grounds on which the recognition and enforcement of an award "may be refused."  Those seven grounds are:

> (1)(a) "The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made;"

> (1)(b) "The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;"

> (1)(c) "The award deals with a difference not contemplated or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced;"

> (1)(d) "The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place."

> (1)(e) "The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made;"

> (2)(a) "The subject matter of the difference is not capable of settlement by arbitration under the law of that country;" or

> (2)(b) "The recognition or enforcement of the award would be contrary to the public policy of that country."

1  Section 207 of the FAA "incorporates by reference the Convention's seven enumerated

2  exceptions or defenses to the mandatory recognition or enforcement of a foreign arbitral award."

3  *China Nat'l Metal Prod. Import/Export Co.* v. *Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir.

4  2004).

5       These seven grounds "should be construed narrowly" to promote the "general pro-

6  enforcement bias [that] inform[ed] the Convention." *Ministry of Defense of Islamic Republic* v.

7  *Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992) (citation omitted).  Confirmation of an arbitral

8  award is a "summary proceeding" that calls for virtually automatic issuance of a judgment on

9  the award.  *Woods* v. *Saturn Dist. Co.*, 1994 U.S. Dist. LEXIS 21471, at *22 (C.D. Cal. May 31,

10  1994), *aff'd* 78 F. 3d 424 (9th Cir. 1996), *quoting Florasynth, Inc.* v. *Pickholz*, 750 F.2d 171,

11  176 (2d Cir. 1984).  Thus, "no defense against enforcement of an international arbitral award is

12  available on the ground that the award is 'arbitrary and capricious,' or on any other grounds not

13  specified by the Convention".  *Indus. Risk Ins.*, 141 F.3d at 1441; *see also Woodchem Europe,*

14  *S.A.* v. *D.B. Western, Inc.*, 2001 U.S. Dist. LEXIS 25290 (D. Or. Nov. 2, 2001) (reviewing ICC

15  award rendered in New York, and declining to apply the standard of "manifest disregard for the

16  law" because it was not among the seven grounds specified in the Convention).

17       **2.**    **None Of The Convention's Grounds For Refusing Confirmation**

18            **Applies Here**

19       LaPine's moving papers do not mention the Convention.  However, LaPine's motion

20  does argue that the Tribunal "exceeded and applied the wrong standard when it ignored the

21  choice-of-law provision stipulated by the parties" (Mot. at 9), and that the summary adjudication

22  standards that the Tribunal employed were "contrary to the procedural order, Terms of

23  Reference and the Arbitration Agreement." (*Id.* at 10.)  This argument might fairly be read as

24  objecting to the Award on the ground that "the composition of the arbitral authority or

25  *procedure was not in accordance with the agreement of the parties*," a defense to confirmation

26  recognized under Convention Article V(1)(d).

27       LaPine also asserts that "the Tribunal never allowed the parties to exchange, review or

28  comment on discovery before it decided Defendant's Motion for Summary Adjudication" (Mot.

1    at 10), and that the Tribunal "grant[ed] Defendant's motion based on evidence never submitted

2    by the parties" (*id*.).  This argument might be read as objecting that LaPine "was . . . not able to

3    present his case."  Convention Article V(1)(b).

4         Neither argument has merit and the Award should be confirmed.

   a)    **The Award may not be denied confirmation on the ground
5          that the Tribunal's summary adjudication standards were
6          "not in accordance with the agreement of the parties"**

7         Article V(1)(d) of the Convention authorizes courts to vacate an award if "the

8    composition of the arbitral authority or procedure was not in accordance with the agreement of

9    the parties."  This standard does not "permit reviewing courts to police every procedural ruling

10   made by the Arbitrator and to set aside the award if *any* violation of ICC procedures is found."

11   *Compagnie des Bauxites de Guinee* v. *Hammermills, Inc.*, 1992 WL 122712, at *5 (D.D.C. May

12   29, 1992) (emphasis in original).  Rather, a court may "set aside an award based on a procedural

13   violation only if such violation worked substantial prejudice to the complaining party."  *Id.*

14        LaPine does not come close to showing any procedural violation, much less a serious

15   one.  He does not contend that it was improper for the Tribunal to consider and rule on

16   Kyocera's summary adjudication motion, nor could he reasonably do so.  Courts routinely

17   uphold arbitral awards that reject claims on dispositive threshold motion, regardless of whether

18   the governing arbitration rules provide for such a procedure.[4]  Furthermore, in this case the

19   parties *affirmatively agreed* to a motion for summary adjudication in advance of an evidentiary

20   hearing.  The Award correctly reflects that "the Parties have expressly accepted the Arbitral

21   Tribunal's jurisdiction" to entertain Kyocera's summary adjudication motion, and observes that

22

23   _____

     [4]    *See, e.g., Sheldon* v. *Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (declining to
24   vacate award on the ground that it was rendered based on a dispositive motion, and in advance
     of a full evidentiary hearing); *Tricome* v. *Success Trade Secs.*, 2006 WL 1451502, at *3 (E.D.
25   Pa. May 25, 2006) ("arbitrators may grant a motion to dismiss without holding a full evidentiary
     hearing"); *Warren* v. *Tacher*, 114 F. Supp. 2d 600, 602 (W.D. Ky. 2000) ("Petitioners are not
26   entitled to costly full-blown discovery when it would not change the outcome and the claim
     could be decided on a pre-hearing motion."); *Sphere Drake Ins. Ltd.* v. *Lincoln Nat. Life Ins.*
27   *Co.*, 2006 WL 2699270, at * 5 (N.D. Ill. Sept. 13, 2006) ("Hearing evidence is not pertinent and
     material to a controversy if the pertinent facts or issues can be resolved on other methods of
28   resolution, such as...a ruling on the pleadings.").

1   "providing for summary disposal on the merits of claims when the conditions to do so are met is

2   fully compatible with both the letter and spirit of the ICC Rules . . . ."  (Award ¶ 86.)

3   Instead, LaPine objects to the *procedural* standard that the Tribunal used to decide

4   Kyocera's motion.  Specifically, he contends that "[h]ad the Tribunal applied California law,

5   Defendant would have failed to meet its burden, and the parties would have had an opportunity

6   to enter into discovery to fully develop the record."  (Mot. at 10.)  This argument confuses the

7   *procedural* rules to be applied by the Tribunal — which are governed by the ICC Rules — with

8   the substantive law governing the Definitive Agreement, which is California law.

9   The Tribunal was well within its authority under ICC Rules to select and apply

10   appropriate summary adjudication standards that do not involve the full panoply of discovery

11   allowed in California courts.  Section 8.10 of the Definitive Agreement directs that arbitration

12   "shall be conducted in accordance with the Rules of Conciliation and Arbitration of the

13   International Chamber of Commerce ("ICC") and the Federal Arbitration Act."  As the Tribunal

14   observed, the ICC Rules provide that the *Tribunal* should select procedures where ICC Rules

15   are silent:

16   "The rules governing the proceedings before the arbitrator shall be those rules
resulting from these Rules and, where these Rules are silent, any rules which the
17   parties or, failing them, the arbitrator may settle, and *whether or not reference is
thereby made to the rules of procedure of a national law to be applied to the*
18   *arbitration*."  (Italics added.)

19   The Tribunal provided early notice, by letter dated April 11, 2007, that it would apply a

20   summary judgment standard patterned on FRCP 56.  (Award ¶ 85.)  In choosing that standard,

21   the Tribunal acted precisely according to the ICC Rules.  As the Tribunal observed, "this

22   arbitration is international in nature, and although venued in California, is not subject to

23   Californian procedural law not standing for core Californian public policy."  (Award ¶ 95.)  The

24   Tribunal reasoned that because the *lex arbitri* governing the arbitration is the FAA, "[s]hould

25   the Arbitral Tribunal seek guidance in the *lex arbitri* to determine standards regarding summary

26   judgment, it would naturally look to the Federal Rules of Procedure (Rule 56)."  (*Id.*)

27   The Court accordingly should reject LaPine's assertion that the Definitive Agreement's

28   choice-of-law provision specifying California *substantive* law required the Tribunal to apply

California *procedural* law.  (Mot. at 2, 10.)  LaPine cites no supporting authority.  By contrast, many cases confirm the correctness of the Tribunal's ruling.  *See, e.g., Gallus Investments, L.P.* v. *Pudgie's Famous Chicken, Ltd.*, 134 F.3d 231, 233 (4th Cir. 1998) (ruling that the law specified in a choice-of law provision "governs the parties' contractual rights and duties," but that evidentiary procedures are governed by the rules of the arbitral authority selected by the parties:  this "gives effect to the arbitration clause while in no way undermining the choice-of-law provision"); *Interchem Asia 2000 PTE Ltd.* v. *Oceana Petrochemicals AG*, 373 F. Supp. 2d 340, 346 (S.D.N.Y. 2005) ( "in deciding matters relating to the substantive merits of the action, the Court will apply New York State law, and in deciding matters of procedure or the authority of the Arbitrator, the Court will look to the AAA Commercial Rules.").[5]

Furthermore, LaPine's argument squarely contradicts the position he advocated in successfully opposing Kyocera's motion to dismiss the arbitration under California procedural rules requiring dismissal for unreasonably delayed prosecution.  LaPine's counsel argued that California substantive law governs the contract itself, but *the choice-of-law provision does not govern the conduct of the arbitration*:

> **"MR. GERGOSIAN**:  My position is that you are not [bound by California law], because the only area of California law you're bound to apply is as it applies to the contract itself.  The — there is not a choice-of-law provision.
>
> **MR. GULLAND**:  I'm sorry, I didn't hear that.
>
> **MR. GERGOSIAN**:  There's not a choice-of-law provision in the definitive agreement governing the conduct of the arbitration."  (Hearing Tr. 128-29, (emphasis added) (Ex. 23).)

---

[5]  *See also Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995) (interpreting a New York choice-of-law provision to "encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators"; and holding that the rules of arbitral authority selected by the parties, not New York law, governed the availability of punitive damages); *Preston* v. *Ferrer*, --- S.Ct. ----, 2008 WL 440670 (U.S. February 20, 2008) (rejecting argument that choice-of-law provision requires use of state procedural law when parties have selected rules of a governing arbitral authority; and highlighting "the import of the contract's incorporation by reference of privately promulgated arbitration rules").

Kyocera had urged dismissal under California procedural rules mandating dismissal for unreasonable delays in prosecution.[6]  California arbitrators have often applied these rules to dismiss domestic arbitrations, and courts have upheld those dismissals.[7]  The Tribunal expressly noted Mr. LaPine's argument that California procedures do not govern an international arbitration (Award ¶ 71), and ruled that the Tribunal should not apply California's procedural rules governing dismissal for delay.  (Award ¶¶ 71-84.)

Thus, the Tribunal consistently adhered to ICC rules when it refused to apply California law to procedural issues, both in relation to summary judgment standards and dismissal for delay.  LaPine cannot reasonably argue for California procedural law governing summary adjudication standards, while simultaneously avoiding the burden of California procedural law governing dismissal for delay.  The Award may not be refused confirmation under Article V(1)(d) of the Convention.

> **b)**    **The Award may not be refused confirmation on the ground that LaPine was "not able to present his case"**

Article V(1)(b) of the Convention permits a court to refuse confirmation of an award if "the party against whom the award was made was not given proper notice of the proceedings or

---

[6]    *See* Cal. Civ. Proc. Code § 583.410(a) (courts have broad discretion to "dismiss an action for delay in prosecution...on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case."); *Kidd* v. *Kopald*, 36 Cal. Rptr. 2d 875, 884 (Cal. Ct. App. 1994); Cal. Rules of Court, Rule 3.1340;  *Blue Chip Enter., Inc.* v. *Brentwood Sav. & Loan Ass'n*, 139 Cal. Rptr. 651, 654 (Cal Ct. App. 1977) (courts may "dismiss an action where there has been inexcusable delay in bringing it to trial."); Cal. Civ. Proc. Code § 583.310 (an action "shall be brought to trial within five years after the action is commenced"); *id.* § 583.340 (any action not brought to trial within five years "shall be dismissed" and the requirements of the section "are mandatory and are not subject to extension, excuse, or exemption except as expressly provided by statute").

[7]    *See, e.g., Titan/Value Equities Group, Inc.* v. *Superior Court*, 35 Cal.Rptr.2d 4, 7 (Cal. Ct. App. 1994) (collecting cases); *Burgess* v. *Kaiser Found. Hosps.*, 20 Cal.Rptr.2d 488, 490 (Cal. Ct. App. 1993) ("An arbitrator has discretion to dismiss a proceeding due to unreasonable delay by the claimant in bringing the matter to a hearing"); *Byerly* v. *Sale*, 204 Cal.App.3d 1312, 1315-16 (Cal. Ct. App. 1988) (explaining that "the arbitrator should determine whether there has been an unreasonable delay in prosecution which would justify dismissal [of the arbitration]"); *Young* v. *Ross-Loos Med. Group*, 135 Cal.App.3d 669, 673 (Cal. Ct. App. 1982) (upholding "the arbitrator's decision that [claimants] take nothing on their claims by reason of their dilatory prosecution"); *Brock* v. *Kaiser Found. Hosps.*, 13 Cal.Rptr.2d 678, 688 (Cal. Ct. App. 1992) ("the arbitrator . . . has authority to determine whether a party should take nothing because of that party's unwarranted delay in prosecuting the arbitration proceedings") (emphasis omitted).

---

was otherwise not able to present his case."  This ground embodies the basic standards of procedural due process.  *Parsons & Whittemore Overseas Co., Inc.* v. *Societe Generale De L'Industrie Du Papier*, 508 F.2d 969, 975 (2d Cir. 1974) (confirming ICC award, and rejecting a challenge under Article V(1)(b)).  It recognizes that a party who chooses arbitration "relinquishes his courtroom rights . . . in favor of arbitration with all of its well known advantages and drawbacks."  *Id.* (citation and quotation omitted); *see also Generica Ltd.* v. *Pharmaceutical Basics, Inc.*, 125 F.3d 1123, 1131 (7th Cir. 1997) (party was not denied due process where the ICC arbitrator halted cross-examination of a witness).

LaPine contends that he was deprived of a fair opportunity to present his case because the Tribunal decided Kyocera's motion based on the submissions of the parties and did not provide for additional discovery and evidentiary hearings.  (Mot. at 10, 24.)  This argument is without merit.

*First*, the Tribunal followed the parties' joint schedule calling for a decision on Kyocera's summary adjudication motion — which had already been filed — as the first order of business and in advance of any document exchange.  (Ex. 20.)  The parties' agreement was embodied in Procedural Order No. 1.  (Ex. 19.)

*Second*, LaPine's asserted entitlement to discovery cannot overcome black-letter law holding that parties enjoy no right to discovery in arbitration:

> "the factfinding process in arbitration usually is not equivalent to judicial factfinding. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable."  *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 57-58 (1974).

When parties agree to arbitrate, "they relinquish the right to certain procedural niceties which are normally associated with a formal trial.  One of these accoutrements is the right to pre-trial discovery."  *Burton* v. *Bush*, 614 F.2d 389, 390 (4th Cir. 1980) (internal citations omitted); *see also Paladino* v. *Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (noting that "[a]rbitral litigants often lack discovery").

*Third*, there is not even a factual basis for LaPine's objection that the "the Tribunal erred in holding Defendant was excused from providing material documents as requested by Plaintiff." (Mot. at 24.) And there is equally no merit to LaPine's claim that he was denied the opportunity to "comment on" documents that Kyocera submitted to the Tribunal. *After* Kyocera's motion had been briefed; *after* the parties had submitted evidence in support of their respective positions; *after* the motion was argued; and *after* the parties filed post-hearing submissions, LaPine asserted in May 2007 — *for the first time* — that he wanted 34 additional documents.[8] Kyocera voluntarily searched its files; found 28 of the 34 documents; submitted copies; and certified that the others did not exist or could not be found.[9] LaPine did not even respond to this submission. Having heard nothing from LaPine, the Tribunal announced on July 17, 2007 that it intended to close the proceedings and decide Kyocera's motion on the record before it. (Ex. 32.) LaPine's counsel acknowledged receipt of this notification (Ex. G, Nestor Decl.) and did not object to the closure of the proceedings. The Tribunal issued its Award six weeks later.

The Tribunal thus afforded LaPine every opportunity to present the merits of his position. LaPine's assertion that he was deprived of "the opportunity to present his case" is without merit.

## C.     The Court May Not Subject The Award To "Expanded Judicial Review."

LaPine spends only a few pages arguing that the Award should be vacated under the narrow standards of Chapter I of the FAA, which govern domestic arbitrations. (Mot. at 8-12.) His real argument is that this Court should engage in "Expanded Judicial Review" in order to decide whether (i) the Tribunal committed legal error and (ii) the Tribunal's findings are

---

[8]     The Declaration of Brooke E. West ("West Decl."), Exhibit 29 to LaPine's motion, lists 35 documents in a table; however, the first and last entries in that table refer to the same letter dated June 6, 1986, from M. Forrest to K. Inamori (*see* West Decl. pp. 2, 5), leaving 34 documents identified by LaPine.

[9]     Kyocera submitted a declaration stating that after thorough search, Kyocera was unable to locate the remaining six documents, and that it appeared that at least three of the six documents that LaPine had identified did not exist. (Ex. 31 [Declaration of Shannon M. Nestor in Support of Kyocera's Response to LaPine's Supplemental Submission].)

1   supported by substantial evidence. (Mot. at 13-24.) LaPine's argument is based on an unusual

2   provision in the Definitive Agreement authorizing a district court to vacate, modify or correct

3   any award "where the arbitrators' findings of facts are not supported by substantial evidence,"

4   or "where the arbitrators' conclusions of law are erroneous." (Ex. 3, ¶ 8.10(d).)

5       In the *Prudential* case, the Ninth Circuit's *en banc* opinion held that the *same expanded

6   judicial review provision* in the Definitive Agreement is unenforceable and of no legal effect.

7   *Prudential*, 341 F.3d at 1000 ("a federal court may only review an arbitral decision on the

8   grounds set forth in the Federal Arbitration Act. Private parties have no power to alter or

9   expand those grounds, and any contractual provision purporting to do so is, accordingly, legally

10  unenforceable"). LaPine seeks to avoid this obstacle by noting that similar questions are

11  currently before the Supreme Court in *Hall Street Assocs., L.L.C.* v. *Mattel, Inc.*, 127 S. Ct.

12  2875 (2007). (Mot. at 8, fn. 12.) While ignoring that *Hall Street* involves very different

13  circumstances, LaPine suggests that (i) the Supreme Court might cast doubt on the holding of

14  the Ninth Circuit in *Prudential*; and (ii) if that happens, then this Court should engage in

15  expanded judicial review.

16      The Court need not reach that argument, however, because no decision in *Hall Street*

17  should have any effect on these proceedings for three reasons:

18      *First*, whatever rule might be applied to a domestic arbitration, the standards of the

19  Convention require confirmation of an *international* arbitration award unless one of the narrow

20  exceptions to confirmation applies. Those exceptions cannot be broadened by "expanded

21  judicial review."

22      *Second*, the ICC rules specifically preclude the parties from restricting the enforceability

23  of ICC awards through expanded judicial review. Article 11 of the ICC Rules governing this

24  case provides that ICC Rules control the proceeding and only "where those Rules are silent, any

25  rules which the parties (or failing them, the arbitrator)" may apply. Article 24 of the ICC Rules,

26  which is titled "Finality and enforceability of award," strictly limits the parties' right to judicial

27  review and thus limits the parties' freedom to adopt a conflicting rule:

28

"By submitting the dispute to arbitration by the International Chamber of Commerce, the parties *shall be deemed* to have undertaken to carry out the award without delay and *to have waived their right to any form of appeal insofar as such waiver can validly be made*."  (Emphasis added.)

This Rule, in short, precludes the parties from expanding judicial review beyond the minimum standard of review allowed by public policy.  In the U.S., that is the standard embodied in the Convention and Chapter II of the FAA.  *See M&C Corp.* v. *Erwin Behr GmbH & Co.*, 87 F.3d 844, 847 (6th Cir. 1996) (ruling that Article 24 of the ICC Rules cannot properly waive judicial review of cases "involving fraud, procedural irregularities, or exertion of improper influences upon arbitrators").

*Third*, in the circumstances of this case, an intervening decision overruling the Ninth Circuit's ruling in *Prudential* could not reasonably be applied retroactively to Kyocera.  LaPine delayed prosecution for nearly 20 years in order to take advantage of the Prudential Arbitration — including the Ninth Circuit's ruling denying Kyocera's request for expanded judicial review of the Prudential Award under the same provisions of the Definitive Agreement.  LaPine may not equitably be permitted to benefit from a broader standard of review in his case where his own delay would result in Kyocera's being subjected to two inconsistent interpretations of the same contract provision.  If the Supreme Court's ruling in *Hall Street* calls into question the applicability of *Prudential* to this case, Kyocera will seek leave to brief the issue of retroactive application.

**IV.    LAPINE'S MOTION TO VACATE MUST BE DENIED EVEN UNDER (1) DOMESTIC FAA REVIEW STANDARDS AND (2) CONTRACTUAL "EXPANDED JUDICIAL REVIEW"**

**A.    The Award Should Not Be Vacated Under Chapter I Of The FAA.**

As already explained, because the Award was issued in an international arbitration, the seven standards set forth in Article V of the Convention, and incorporated in Chapter II of the FAA, govern this Court's review.  LaPine has framed his motion to vacate in terms of the somewhat different grounds for setting aside domestic arbitration awards under Chapter I of the FAA.  We show below that, even under the vacatur standards in Chapter I of the FAA, the result would be the same:  the Award must be confirmed.

1.    **The Tribunal Did Not Exceed Its Powers By Applying Summary Judgment Standards That Are Different From California Judicial Procedures**

Chapter I of the FAA permits a court to vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).  Arbitrators "exceed their powers" under Section 10(a)(4) when they "rule on a matter not submitted to them, or act outside the scope of the parties' contractual agreement."  *Michigan Mutual Ins. Co.* v. *Unigard Security Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995).  Courts resolve all reasonable benefit of the doubt in favor of upholding the award.  *See Fortier* v. *Morgan Stanley DW, Inc.*, 2006 WL 3020926, at *4 (N.D. Cal. Oct. 23, 2006) (holding that arbitrators acted "within their broad procedural powers" when they dismissed plaintiff's claims as time-barred prior to a full hearing on the substantive claims).  Vacatur on this ground is discretionary, not required.  9 U.S.C. § 10(a) (court "may" vacate award).

LaPine argues that the Tribunal "exceeded its power and applied the wrong standard" by failing to apply California judicial procedures, including full discovery.  (Mot. at 9.)  We have already addressed this argument in detail.  (*See* Section III.B.2.a above.)  To recapitulate, the Tribunal was not required to apply California state law to this question of procedure; LaPine's attorney said as much at the hearing; and the Tribunal acted well within its authority under ICC Rules when it applied summary judgment standards that were drawn from FRCP 56.  All of those arguments apply with equal force under § 10(a)(4).

2.    **The Tribunal Did Not "Ignore[] Plaintiff's Claims Of Breach Of The Covenant Of Good Faith And Fair Dealing" In Manifest Disregard Of The Law**

The Ninth Circuit has also held that an award may be vacated if the arbitrators engage in "manifest disregard of the law."  *See*, *e.g.*, *Collins* v. *D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007).  This is a high hurdle:  it requires much more than a "failure on the part of the arbitrators to understand and apply the law," or "erroneous interpretation of the law."  *Id.* Rather, "[i]t must be clear from the record that the arbitrators recognized the applicable law *and then ignored it*."  *Id.* (emphasis added).  "[T]o rise to the level of manifest disregard," moreover,

1   "[t]he governing law alleged to have been ignored by the arbitrators must be *well defined*,

2   *explicit*, and *clearly applicable*."  *Id.* at 879-80 (emphasis in original).  "The test cannot be

3   whether or not a mistake was made, or whether the district court would decide the case

4   differently."  *T-Mobile USA, Inc.* v. *Quest Communications Corp.*, 2007 WL 3171428, at *3-4

5   (W.D. Wash. Oct. 26, 2007) (denying motion to vacate award in which the arbitrator applied a

6   four-year rather than a two-year statute of limitations, where the arbitrator's reasoning was

7   "plausible").   Accordingly, when assessing whether arbitrators understood but deliberately

8   ignored well-established law, "the Court must search for 'even a barely colorable justification

9   for the outcome reached,' and if one is found, the arbitration award must be confirmed."

10  *Goodman* v. *CIBC Oppenheimer & Co.*, 131 F. Supp. 2d 1180, 1183 (C.D. Cal. 2001) (citing

11  *Houdstermaatschappij* v. *Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997)).

12         LaPine contends that "the Tribunal erred when it completely disregarded Plaintiff's

13  allegations of Kyocera's breaches of the covenant of good faith and fair dealing."  (Mot. at 12.)

14  The Tribunal made no such error and in fact carefully considered each contention.

15         LaPine asserted three claims for breach of the covenant of good faith:  (i) breach of the

16  implied covenant "re: the Collapse of LaPine Technology" (Claim 2, Ex. 16, ¶¶ 64-67); breach

17  of the implied covenant "for Concealing Kyocera's True Intent" regarding various agreements

18  (Claim 3, Ex. 16, ¶¶ 68-76); and an additional claim for breach of the implied covenant "in the

19  Overall" (Claim 10, Ex. 16, ¶¶ 108-110).

20         The Tribunal considered and rejected all three claims.  The Tribunal first summarized

21  each claim.  (*See* Award ¶ 47(b), (c) and (j).)  Because the Second and Tenth claims simply

22  tracked LaPine's breach of contract theory, the Tribunal disposed of them in its section dealing

23  with LaPine's contract claims.  (*See* Award ¶¶ 105-123 (dismissing implied covenant claims on

24  grounds of standing and estoppel).)  In paragraph 114, the Tribunal specifically addressed why

25  LaPine's Tenth Claim was also barred by the findings in the preceding paragraphs.  (Award ¶

26  114 ("The foregoing conclusions lead to the conclusion that the Claimant may not prevail on his

27  Tenth Claim for Relief . . . .").)  Similarly, because LaPine's Third claim for "Concealing

28

1    Kyocera's True Intent" mirrored his fraud claims, the Tribunal analyzed those claims together.

2    (Award ¶¶ 89-96 (analyzing LaPine's "Third, Fifth, Sixth and Seventh Claims for Relief").)

3    LaPine also asserts that "the Tribunal erred when it held that Plaintiff was a shareholder

4    of LTC and did not have a vested or ownership interest in the profits of the corporation."  (Mot.

5    at 12.)  The Tribunal made no such "holding."  Rather, it stated that LaPine was a *warrant*

6    holder, and correctly ruled that warrant holders lack standing to sue for damages based on the

7    diminution in value of the company where (as here) no claim is made based on the specific

8    terms of the underlying warrant.  (Award ¶ 109.[10])  The Tribunal went on to note, however, that

9    LaPine had *alleged* that he would have converted his warrants into shares if the company had

10   not failed.  Assuming *arguendo* that LaPine might eventually have become a shareholder, the

11   Tribunal ruled that the individual claims that he was attempting to assert would still have been

12   barred.  (*Id*. ¶ 113.)  It was in this context that the Tribunal observed that "shareholders do not

13   have a vested or ownership interest in the profits of the corporation."  (*Id*. ¶ 110.) That is a

14   correct statement of California law, and the Tribunal's analysis is sound.

15                              *              *              *

16   Because the Tribunal did not exceed its powers by declining to follow California

17   summary judgment standards in deciding Kyocera's motion, and because the Tribunal did not

18   "ignore" LaPine's "implied covenant" claims or "hold" that he was a shareholder in manifest

19   disregard of the law, the Award cannot be set aside under the vacatur standards in Chapter I of

20   the FAA.

21   **B.    The Award Must Be Upheld Even Under "Expanded Judicial Review."**

22   For the reasons discussed in Section III.C. above, there is no need for the Court to decide

23   whether the arbitrators committed legal error, or found facts that were not supported by

24   substantial evidence, because any expanded judicial review authorized by the Definitive

25   Agreement is foreclosed under the Ninth Circuit's *en banc* holding in *Prudential* and by the

26   ICC's Rules.  Because LaPine devotes most of his motion to this argument, however, we show

27   _____

28   [10]    We discuss this point in more detail in Section B.1.a below.

below that the rulings and findings challenged in LaPine's motion to vacate were correct and should not be disturbed even under "expanded judicial review."

### 1. The Tribunal's Legal Conclusions Were Not Erroneous

LaPine challenges three legal conclusions reached by the Tribunal:

- that as a warrant holder, LaPine lacks standing under California law to sue for the alleged destruction in value of the company;

- that four of LaPine's claims are barred by principles of waiver and estoppel; and

- that the statute of limitations was not tolled on LaPine's fraud claims.

The Tribunal carefully considered the arguments of both parties, correctly applied California law to each of these issues, and committed no error of law.[11]

#### a) The Tribunal correctly ruled that, under California substantive law, LaPine lacks standing to bring claims for the "destruction in value" of LTC

LaPine first challenges the Tribunal's dismissal of his Second, Fourth, Eighth, Ninth, and Tenth claims for lack of standing. (Award ¶¶ 105-114.) This challenge is without merit.

When LaPine sold his interest in LTC in 1986, the consideration that he received included initial warrants. Those initial warrants could be surrendered (together with his original notes) for cash; or, through a series of transactions, they could instead be exchanged for a 6.6% interest in LTC's parent company, LaPine Holding, in the event that company ever went public. The five claims that were dismissed for lack of standing alleged, in substance, that (i) through misconduct or mismanagement, Kyocera had destroyed the value of the post-buyout LTC (which was LaPine Holding's sole asset); and (ii) by destroying the value of LTC, Kyocera effectively deprived LaPine of the opportunity to benefit from a possible future IPO in LaPine Holding. The Tribunal properly dismissed these claims for lack of standing for two separate and independent reasons.

---

[11]     Because most of LaPine's claims were dismissed on multiple grounds, it is doubtful that reversing one of those rulings would alter the outcome of the arbitration.

*First*, the Tribunal held that a holder of convertible notes or warrants is at most a "creditor." The holder may not recover damages for alleged lost value of the contractual conversion right, except where there is a breach of the contract terms of the underlying note or warrant. That ruling correctly applies black-letter California law. In *Kessler* v. *General Cable Corp.*, 155 Cal.Rptr. 94 (Cal. Ct. App. 1979), the Court of Appeals rejected tort and contract claims asserted by the holder of "convertible debentures" that could be converted to common stock. The plaintiff had alleged that defendants "destroyed" the value of his conversion right, and rendered the debentures unmarketable. *Id.* at 98. Rejecting this claim, the Court of Appeals stated that "holders of debentures, with an option to convert, remain corporate creditors only, without any special status which affords them the opportunity to litigate in the area of potential damage to their economic interests." *Id.* at 100. Applying this same principle, the California Court of Appeals recently held that a holder of stock options who alleged destruction of corporate assets and diminished share value lacked standing to assert tort and contract claims that arose before the plaintiff actually acquired stock in the company. *See Daly* v. *Yessne*, 31 Cal.Rptr.3d 420 (Cal. Ct. App. 2005). Notably, the Court reasoned that the plaintiff's stock option right "was only a contractual arrangement that permitted her to buy stock in the company; *like a holder of a warrant or convertible debenture*, she had not assumed the risks and benefits of stock ownership." *Id.* at 426-27 (emphasis added). Relying on *Kessler*, *Daly*, and similar authority, the Tribunal correctly ruled that "[i]t is clear under California law that note or warrant holders are considered mere creditors of the corporation issuing the notes or warrants and thus lack standing to sue for loss of anticipated profit to be derived from the warrants or notes." (Award ¶ 113; *see also id.* ¶¶ 109-11.)

*Second*, the Tribunal ruled that California law requires that claims alleging injury to the value of a company or mismanagement (as LaPine's do) must be brought as a derivative action, and may not be asserted as direct claims. (*See* Award ¶ 113; *see also id.* ¶¶ 110-11.) A claim is derivative "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance of distribution among individual holders." *Schuster* v. *Gardner*, 25 Cal.Rptr.3d 468, 473-74 (Cal. Ct. App. 2005), quoting *Jones* v. *H.F. Ahmanson*

& *Co.*, 81 Cal.Rptr. 592, 198 (1969).  Thus, where the "injury amount[s] to alleged misfeasance or negligence in managing the corporation's business, causing the business to be a total failure, any obligations so violated were duties owed directly and immediately to the corporation." *Nelson* v. *Anderson*, 84 Cal.Rptr.2d 753, 762 (Cal. Ct. App. 1999).  In contrast, "[a]n individual cause of action exists only if damages to the shareholders were not *incidental* to damages to the corporation."  *Schuster*, 25 Cal.Rptr.3d at 474 (emphasis in the original).  LaPine's claims of alleged diminution or destruction of LTC's share value are thus derivative, not individual.  *See Schuster*, 25 Cal.Rptr.3d at 474 (plaintiff's action alleging "diminution in stock value" was derivative); *Nelson*, 84 Cal.Rptr.2d at 763 ("the corporation lost earnings, profits, and opportunities, rendering all the shares valueless.  When the injury is to the whole body of stock, the action must be derivative.") (emphasis and internal quotations omitted).

Applying these rules, the Tribunal correctly observed that LaPine's sole alleged injury, common to all of his claims, was predicated on the destruction of LTC:

> "Claimant is exclusively seeking damage compensation for:  ". . . the loss in the value of the 6.6% interest in LaPine Holding he would have acquired but for Kyocera's breach which destroyed LaPine Technology."  Indeed, all of such Claimant's claims for damages originate in the misappropriation of LTC technology, the mismanagement of LTC, the damage caused to LTC's business, including those resulting from its final collapse; *i.e., in damages directly inflicted to or suffered by LTC.*"  Award ¶ 108 (quoting LaPine's *Updated Request for Arbitration*) (emphasis added).

Relying on *Nelson*, *Jones*, *Schuster*, and similar authority, the Tribunal reasoned that "under California law:  (i) shareholders lack a direct action for any anticipated profits not obtained or diminution or destruction of the value of their shares; and (ii) may only file a derivative suit for the benefit of the corporation in which they hold shares to seek compensation to the corporation for the injury caused to it."  (Award ¶ 113.)  Because LaPine's claims were all derivative and not individual, the Tribunal correctly held that under California law LaPine would lack standing to pursue them *even if* he had exchanged his warrants for shares in LaPine Holding.

None of LaPine's challenges to the Tribunal's ruling has merit:

- LaPine misreads *Kessler* (Mot. at 15). Quoting language from *Kessler* stating that the "plaintiff has made no showing that he and other debenture holders have lost the benefits of their bargain because of any demonstrated misconduct on the part of the defendants," LaPine argues that he "has made a showing that he lost the benefit of his bargain" as a result of misconduct by Kyocera. (Mot. at 15.) The language that LaPine quotes in his brief, however, addressed a separate claim that the *Kessler* plaintiffs brought for *breach of the indenture agreement itself*. LaPine has not alleged any breach of the terms of the warrant or indenture agreements in this case, and the language he quotes is accordingly irrelevant.

- LaPine's assertion that he has standing to bring a generalized claim for "breach" because he was deprived of "the opportunity to acquire a 6.6% interest in LHC" (Mot. at 15-16) is without merit, because LaPine was unable to identify a single contract right in his favor that Kyocera allegedly violated. As the Tribunal correctly observed: "[T]he Definitive Agreement contains no Kyocera representation or warranty (and, indeed, no representation or warranty from anybody) guaranteeing LaPine a 6.6 percentage interest in LHC's share capital or any dividend or profit, or dividend or profit level originated in LHC's business, or relating to the future value of LHC or the warrants or LHC shares or LTC" and that "no such representation or warranty is part of the indenture . . . ." (Award ¶ 112.)

- Finally, the 65-year old case cited by LaPine (Mot. at 16) supports the Tribunal's conclusions, not LaPine's. The issue in *Helvering* v. *Southwest Consol. Corp.*, 315 U.S. 194 (1942), was whether a certain transaction qualified as a "reorganization" under provisions of the tax

code that required the assets of the transferor corporation to be acquired in exchange "solely" for "voting stock" of the transferee.  (*Id*. at 198.)  Part of the consideration in that transaction had included warrants, and the Court held that warrants were not "voting stock."  In reaching that conclusion, the Court emphasized — as the Tribunal did here — that a warrant holder's rights "are wholly contractual."  LaPine alleged no breach under the warrant agreement or accompanying indenture, however, and *Helvering* does not support the view that warrant holders have standing to bring generalized claims for the "destruction" of the company.  The California Court of Appeals has cited *Helvering* to make that very point.  *See Daly*, 31 Cal.Rptr.3d at 426-27 (Cal. Ct. App. 2005) (ruling that a holder of a conversion right who alleged destruction of corporate assets and diminished share value lacked standing to assert tort and contract claims that arose before the plaintiff actually acquired stock in the company") (citing *Helvering*).

Because the Tribunal did not err in concluding that LaPine lacked standing to bring his Second, Fourth, Eighth, Ninth, and Tenth claims, vacatur on this ground is not warranted.

### b)    LaPine's claims are also barred by waiver and estoppel

As an alternative ground for decision, the Tribunal also ruled that the same five claims were barred under principles of waiver and estoppel.  (Award ¶¶ 115-123; *see also id*. ¶ 122 ("LaPine waived such rights and is estopped from asserting claims based on them in this arbitration or elsewhere").)  The Tribunal's ruling was correct.

The Definitive Agreement gave LaPine the choice either to (i) redeem his original notes for a guaranteed payment of more than $1.1 million and let his initial warrants expire; *or* (ii) forego the $1.1 million in cash and convert his initial warrants into final warrants, which might eventually be converted into shares of LaPine Holding — but only if that company successfully went public.  In 1988, LTC notified LaPine and other LTC shareholders of their right to convert

their initial warrants into final warrants. LaPine did not exercise his conversion right and instead received $1.1 million in cash. (Award ¶¶ 116-17.)

The Tribunal found the following facts (Award ¶¶ 116-17, 122), none of which LaPine has disputed:

- LaPine chose to redeem his original notes and let his warrants expire;

- LaPine accepted the $1.1 million without protest or reservation of right;

- LaPine did not attempt to preserve his right to participate in an initial public offering of LaPine Holding;

- LaPine did not hold the monies that he received in escrow, or otherwise segregate those funds;

- LaPine did not tender those monies back at the time he filed his arbitration, or at the time the arbitration was reactivated, or at any other time; and

- LaPine enjoyed the unrestricted use of those monies for 18 years.

The foregoing facts clearly establish that, by electing cash instead of warrants, LaPine waived his rights to the warrants. "Generally, 'waiver' denotes the voluntary relinquishment of a known right." *Fireman's Fund Ins. Co.* v. *Sparks Constr., Inc.*, 8 Cal.Rptr.3d 446, 455 (Cal. Ct. App. 2004) (quoting *Platt Pacific, Inc.* v. *Andelson*, 24 Cal.Rptr.2d 597 (1993)); *see also St. Agnes Medical Center* v. *Pacificare of Cal.*, 8 Cal.Rptr.3d 517, 523 n.4 (2003). Waiver may be decided as a matter of law where, as here, the facts giving rise to the waiver are undisputed. *Old Republic Ins. Co.* v. *FSR Brokerage, Inc.*, 95 Cal.Rptr.3d 583, 592 (Cal. Ct. App. 2000).

LaPine is also estopped from asserting a right to stock from a hypothetical future IPO based on conversion of warrants that he surrendered for cash payments. Defenses of waiver and estoppel often arise together. *Salton Comm. Servs. Dist.* v. *Southard*, 64 Cal.Rptr. 246, 251 (Cal. App. 1967). "Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Metalclad Corp.* v. *Ventana Envir. Org'l Ptrshp.*, 1 Cal.Rptr.3d 328, 334 (Cal. Ct. App. 2003). "An estoppel may be found even though the person estopped did not actually intend to mislead or to defraud the other person." *Common Wealth Ins. Sys., Inc.* v. *Kersten,*

115 Cal.Rptr. 653, 662 (Cal. Ct. App. 1974). The question of estoppel may be decided as a matter of law when the facts giving rise to the estoppel are not disputed. *See In re: Estate of Anderson*, 70 Cal.Rptr.2d 266, 269 (Cal. Ct. App. 1997).

Waiver and estoppel were extensively briefed by the parties, and the Tribunal correctly ruled, based on undisputed facts, that the elements of both were met. None of LaPine's specific objections has merit:

- LaPine asserts that "[s]ubstantial evidence shows that Defendant could not have been ignorant of the true state of facts" (Mot. at 16) (addressing estoppel), but there are no cites to the record directing us (or the Court) to this "substantial evidence."

- LaPine contends that, because another former shareholder had filed a class action lawsuit following the buyout, "Kyocera was aware that legal claims were pending." (Mot. at 16.) We fail to see the relevance: LaPine does not explain how this bears on the elements of estoppel or waiver, or — more to the point — why the pendency of a lawsuit brought by a different former shareholder would put Kyocera on notice that *LaPine's* acceptance of $1.1 million, without reservation or protest, was secretly intended to "mitigate his damages," which is what he now claims.

- LaPine cites *Vittal* v. *Long Beach Unified Sch. Dist.*, 8 Cal.App.3d 112 (1970), in support of his claim that he "offers a reasonable explanation for his actions, namely that he accepted the money with the intent to mitigate losses." (Mot. at 17.) The Tribunal specifically considered and rejected this argument: "Unlike LaPine, the petitioner in *Vittal* clearly preserved her rights by expressly protesting against conduct infringing such rights and promptly resorting to litigation to protect them. Such protestations allowed the *Vittal* Court to construe the teacher's performance not as a waiver of her rights, but as fulfillment of her duty to mitigate damages." (Award ¶ 122.) In contrast, the Tribunal found that "LaPine received payment in exchange for his notes and any actual or potential rights arising from them without protest or reservation or preservation of such rights." (*Id.*) The Tribunal properly rejected LaPine's "mitigation of damages" argument.

Because the Tribunal did not err in concluding that LaPine waived and is estopped from asserting his Second, Fourth, Eighth, Ninth, and Tenth claims, vacatur on this ground is not warranted.

1

2

                     **c)**      **The Tribunal correctly ruled that the pendency of a class action lawsuit brought by another former LTC shareholder did not toll the statute of limitations on LaPine's fraud claims**

3

        The Tribunal dismissed LaPine's fraud claims on two independent grounds:  (i) for

4

failing to raise a genuine issue of material fact, and (ii) because the three-year statute of

5

limitations ran on those claims before LaPine filed this arbitration.  (Award ¶¶ 89-104.)

6

LaPine's motion treats the first ground as an issue of "substantial evidence"; we accordingly do

7

the same and discuss it in the next section of our brief.  In this section we address the Tribunal's

8

statute of limitations ruling.

9

        The events giving rise to this dispute occurred in 1986, but LaPine did not file his

10

arbitration demand until December 14, 1990.  The parties agreed that the applicable statute of

11

limitations for fraud and misrepresentation claims is three years.[12]  The question before the

12

Tribunal was accordingly whether LaPine knew or should have known of his injury prior to

13

December 14, 1987 — three years before he filed his arbitration.  The Tribunal ruled that

14

several events occurring before December 14, 1987, alerted or should have alerted LaPine to his

15

alleged injury.  (Award ¶ 98.)  LaPine's motion does not challenge this ruling.

16

        Instead, LaPine argues that the statute of limitations should have been tolled during the

17

eight-month period that another former LTC shareholder named Evans pursued a putative class

18

action lawsuit.  (Mot. at 18-20.)  This contention must be rejected at the threshold because

19

LaPine — unlike Evans and other former shareholders — was obligated by the Definitive

20

Agreement to *arbitrate* all disputes.  LaPine could not rely on others to vindicate his rights

21

through separate judicial litigation.

22

        Ignoring his obligation to arbitrate, LaPine relies on the Supreme Court's 1974 decision

23

in *American Pipe & Construction Co.* v. *Utah*, 414 U.S. 538 (1974).  But that case does not help

24

him.  In *American Pipe*, the Court held that tolling may be proper in the special situation "where

25

class action status has been denied *solely because of failure to demonstrate that the 'class is so*

26

_____

27

[12]     The parties agreed that California's three-year statute of limitations controlled this question.  (*See* Award ¶ 97.)

28

*numerous that joinder of all members is impracticable*.'"  *Id.* at 552-53 (emphasis added).  The Court held that, in such a case, claims of putative class members may be tolled from the time the suit was commenced until class certification is denied.

The Tribunal correctly rejected LaPine's argument that the *Evans* class action tolled the statute of limitations on LaPine's fraud claims.  Apart from the fact that California does not follow the rule in *American Pipe* (*see Jolly* v. *Eli Lilly*, 44 Cal.3d 1103, 1119-23 (1988)), the Tribunal concluded that tolling would not be proper in this case even under the *American Pipe* rule:

> "[T]he *Evans* case was dismissed because it settled out of court and did not present the numerosity requirement issue dealt with in *American Pipe*. Consequently, there is no basis for applying *American Pipe* to the Claimant's fraud claims in this arbitration . . . ."  (Award ¶ 102.)

LaPine argues that the Tribunal somehow erred by not *extending American Pipe* to apply to situations other than denials of class action certification for lack of numerosity.  (Mot. at 18 (criticizing the Tribunal for "tak[ing] a narrow view of the class-action tolling doctrine" of *American Pipe*)); (Mot. at 19 ("The Panel should act as California courts do *when no California rule is on point* . . . conduct a more thorough analysis of *American Pipe* . . . .") (emphasis added).)  LaPine's objection is not that the Tribunal committed an error of law, but rather that the Tribunal declined to create *new* law in the context of this international arbitration.  This is not a basis for vacating the Award.[13]

Because the Tribunal ruled that LaPine's fraud claims were not tolled during the eight months the *Evans* class action lawsuit was pending, it had no need to decide which of several events first put LaPine on notice of his injury.  (Award ¶ 98.)  One of those events — the

---

[13]    LaPine cites a federal district court opinion from Illinois in support of his argument that the tolling doctrine in *American Pipe* should be extended to encompass class action cases that settle before the issue of class certification is decided.  (*See* Mot. at 19-20, citing *Carey* v. *Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109 (N.D. Ill. 1998).)  The *Carey* court assumed that the *American Pipe* rule would extend to a settled case, but it did not explain why, and it does not appear that the issue was ever raised.  Furthermore, the district court noted that "[t]he Illinois Supreme Court has indicated agreement with and an intent to follow *American Pipe*."  (*Id.* at 1115 n.1.)  The California Supreme Court, in contrast, has been leery of the *American Pipe* rule; has not endorsed it; and has expressly declined to extend it.  *See Jolly*, 44 Cal.3d 1103.

1    dispatch of a December 22, 1986 letter from Kyocera to LaPine and the other parties to the

2    Definitive Agreement — would require the statute of limitations to run by December 1989 –

3    almost a year before LaPine filed his arbitration demand.[14]

### 2.    The Tribunal's Award Was Supported By Substantial Evidence

5    Finally, LaPine has moved to set aside the Tribunal's dismissal of his fraud claims on

6    the ground that the Tribunal's findings were not supported by "substantial evidence."  (Mot. at

7    20-25.)

8    The "substantial evidence" standard is a highly deferential test that draws its content

9    largely from the federal Administrative Procedure Act and cases construing that statute.[15]   As

10    the Ninth Circuit has explained:  "Substantial evidence is more than a mere scintilla but less

11    than a preponderance; it is such relevant evidence as a reasonable mind might accept as

12    adequate to support a conclusion."  *De la Fuente* v. *FDIC*, 332 F.3d 1208 (9th Cir. 2003); *see

13    also Hoopai* v. *Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  Accordingly, "[i]f the evidence is

14    susceptible of more than one rational interpretation, [the Court] must uphold [the factfinder's]

15    finding."  *Port of Seattle* v. *FERC*, 499 F.3d 1016, 1026 (9th Cir. 2007).  The "substantial

16    evidence" standard has been construed in similar fashion under California law.[16]

17    LaPine challenges two aspects of the Award under the substantial evidence standard:

18    (i) the Tribunal's ruling that LaPine failed to establish a *prima facie* case of fraud (Mot. at 20-

19    24); and (ii) its "holding [that] defendant was excused from providing material documents as

20    requested by plaintiff."  (Mot. at 24-25.)  Neither challenge has merit.

---

[14]    LaPine has not denied that he received this letter.  (Award ¶ 98.)

[15]    *See* 5 U.S.C. § 706(2)(E) (authorizing courts to set aside agency findings that are "unsupported by substantial evidence").

[16]    "'Substantial evidence'...means enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached." *See Porterville Citizens for Responsible Hillside Develop.* v. *City of Porterville*, 157 Cal.App. 4th 885, 900 (Cal. Ct. App. 2007).

a)    **The Tribunal correctly ruled that LaPine failed to establish a *prima facie* case of fraud**

In addition to dismissing LaPine's fraud claims on statute of limitations grounds, the Tribunal also ruled that LaPine had failed to make out a *prima facie* case of fraud.  (Award ¶¶ 89-93.)  In reaching that conclusion, the Tribunal carefully reviewed the submissions of both parties, including LaPine's extensive post-hearing evidentiary submissions.  The Tribunal's Award is amply supported by the record.[17]

LaPine first repeats his objection that the Tribunal should have applied California state law summary adjudication procedures, and required discovery.  (Mot. at 20-21.)  We addressed this issue in Section III above, and incorporate those arguments by reference here.

Next, LaPine asserts that he made out a *prima facie* case that he was fraudulently induced into signing the Definitive Agreement in November 1986.  (Mot. at 21-24.)  After thorough consideration of the evidence, the Tribunal found the contrary:

- the Proxy Statement and other documents identified by LaPine as containing allegedly fraudulent statements were created by parties other than Kyocera (Award ¶ 90) (*e.g.*, "Kyocera does not appear as a party to, or involved in, the Proxy Statement or the application");

- the documents containing allegedly fraudulent statements post-date the execution of the Definitive Agreement, and therefore could not have induced LaPine into signing that agreement, as LaPine had claimed (Award ¶ 91);

- Kyocera did not represent in the Definitive Agreement that the draft documentation attached to that agreement was final and would not be changed (Award ¶ 92);

- In compliance with its obligation under the Definitive Agreement to advise of reasonably foreseeable material changes, Kyocera notified the parties that it did not intend to sign the ATA in its current form (Award ¶ 92); and

---

[17]    The Tribunal's statute of limitations ruling was an independent and complete basis for dismissing LaPine's fraud claims.  Accordingly, the Court need not reach LaPine's "substantial evidence" objections unless it also holds that the Tribunal's statute of limitations ruling, discussed in the preceding section, was erroneous.

- most of the evidence that LaPine highlighted to the Tribunal was "irrelevant on its face" to the fraud claims (Award ¶ 93).

In challenging the Tribunal's findings, LaPine relies almost exclusively on his own conclusory affidavit. (Mot. at 22-24.) That affidavit contains bald allegations of "fraud," and LaPine did not even submit it until after Kyocera's motion had been briefed and argued. The Tribunal considered it anyway, and found that none of the record evidence supported LaPine's self-serving averments of fraud. (Award ¶ 96 ("the Arbitral Tribunal is then only left with LaPine's allegations as to the existence of such conduct in his affidavit.").) After careful review of the entire record, including due consideration of LaPine's affidavit, the Tribunal concluded that there was an "absence of factual proof joined by the Claimant showing genuinely existing and material disputed issues of fact regarding fraudulent misrepresentations or inducement conduct attributable to Kyocera." (*Id.*) Because that conclusion is supported by substantial evidence, vacatur on this ground is not warranted.

### b)    The Tribunal did not err by deciding Kyocera's motion on the full record before it

LaPine's last objection is that the "the Tribunal erred in holding Defendant was excused from providing material documents as requested by Plaintiff." (Mot. at 24.[18]) As we explained in Section III above, (i) there is no right to discovery in arbitration, and (ii) in any event, Kyocera voluntarily produced all of the documents that LaPine identified except for six that either never existed or could not be located. Moreover, as the Tribunal aptly observed:

> "such circumstances eloquently reveal once more the daunting evidentiary difficulties to be met if this case were tried on the merits after having been dormant for over twenty years and the absence of even a *prima facie* record permitting that to happen." (Award ¶ 93.)

---

[18]    This objection seems to go to the issue of arbitral procedure and not to whether the Award was supported by "substantial evidence," but we address it as LaPine has framed it.

1

## **CONCLUSION**

2      Kyocera urges the Court to grant its cross-motion to confirm the Award and to deny

3   LaPine's motion to vacate the Award.

4

5   DATED:  February 29, 2008

6                                                      Respectfully submitted,

7

8

9                                                            /s/

10                                        _____

11                                        Simon J. Frankel, SB # 171552
                                          COVINGTON & BURLING LLP
                                          One Front Street
12                                        San Francisco, CA 94111
                                          Telephone:     (415) 591-6000
13                                        Facsimile:     (415) 591-6091
                                          sfrankel@cov.com
14

15                                        EUGENE D. GULLAND
                                          DONALD J. RIDINGS JR.
16                                        Covington & Burling LLP
                                          1201 Pennsylvania Avenue, N.W.
17                                        Washington, DC  20004-2401
                                          Tel: (202) 662-6000
18                                        Fax: (202) 662-6291

19                                        Attorneys for Defendant
                                          KYOCERA CORPORATION

20

21

22

23

24

25

26

27

28