EXHIBIT B

**Exhibit 3**

THIS NOTE HAS NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED.  THIS NOTE MAY NOT BE SOLD, ASSIGNED, PLEDGED, DISTRIBUTED, DONATED, OFFERED OR OTHERWISE TRANSFERRED OR OFFERED FOR TRANSFER WITHOUT SUCH REGISTRATION AND EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF ANY APPLICABLE STATE SECURITIES LAWS AND ANY RULES AND REGULATIONS PROMULGATED THEREUNDER.  UNLESS LAPINE HOLDING COMPANY IS FURNISHED WITH AN OPINION OF COUNSEL SATISFACTORY TO IT THAT SUCH REGISTRATION IS NOT REQUIRED AND SUCH STATE SECURITIES LAWS ARE INAPPLICABLE.

IT IS UNLAWFUL TO CONSUMMATE A SALE OR TRANSFER OF THIS NOTE, OR ANY INTEREST THEREIN, OR TO RECEIVE ANY CONSIDERATION THEREFOR, WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA, EXCEPT AS PERMITTED IN THE COMMISSIONER'S RULES.

## LAPINE HOLDING COMPANY, A DELAWARE CORPORATION

### SUBORDINATED NOTE DUE MARCH 31, 1988

No. 146
$628,646.19                                    December 29, 1986

1.  _Promise_.  LaPine Holding Company, a Delaware corporation ("Holding"), for value received, hereby promises to pay to Anthony N. LaPine, or registered assigns (the "holder"), on March 31, 1988, the principal sum of $628,646.19, without interest, in lawful money of the United State of America.

2.  _Indenture_.  This Note is one of the Subordinated Notes due March 31, 1988 (the "Original Notes") in the aggregate principal amount of $4,000,000 which, together with certain warrants (the "Initial Warrants"), have been issued and are to be issued under an Indenture dated as of December 26, 1986 (the "Indenture") between Holding and Bishop Trust Company, Limited.  The terms of this Note include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939 (15 U.S. Code §§77aaa - 77bbb) as in effect on the date of the Indenture. Reference is hereby made to the Indenture and Trust Indenture Act for a statement of such terms.  Capitalized terms not otherwise defined herein shall be used herein as defined in the Indenture.

3.  <u>Method of Payment</u>.  Initially, Holding will act as Paying Agent and Registrar.  Holding may change the Paying Agent, Registrar or co-registrar without notice.  Holding may act in such capacities.  The holder must surrender this Note to a Paying Agent to collect principal payments.

4.  <u>Right of First Refusal</u>.  Before this Note (or any interest herein) or any interest in the related Initial Warrant may be sold or transferred (including transfer by operation of law), it shall first be offered to Holding in the following manner:

(a)  <u>Notice</u>.  The holder shall deliver a notice by certified mail ("Notice") to the office of Holding (at the address set forth at the end of this Note or such other address designated by Holding) stating (i) his bona fide intention to sell or transfer this Note, (ii) the principal amount of this Note to be sold or transferred, (iii) the cash or description of the property for which he proposes to sell or transfer this Note, and (iv) the name of the proposed purchaser or transferee, and accompanied by evidence (satisfactory to Holding) that the proposed transfer is permitted by state and federal securities laws.

(b)  <u>Holding Right to Purchase</u>.  Within thirty (30) days after receipt of the Notice by Holding, Holding may elect to purchase from the holder the interest in this Note referred to in the Notice and the pro rata interest in the Initial Warrant, at the price and on the terms specified in the Notice, provided that if the holder proposes to sell or transfer such interest for property, the price shall be an amount (in cash) equal to the fair market value of the property as reasonably determined by Holding, by delivery of written notice of such election to the holder at his registered address.  The closing of Holding's purchase pursuant to this right of first refusal shall take place at the office of Holding within twenty (20) days of the delivery of Holding's election notice to the holder.

(c)  <u>Permitted Sales</u>.  If Holding does not elect to purchase the interest in this Note referred to in the Notice and the pro rata interest in the Initial Warrant pursuant to the preceding subparagraph, the holder may sell or transfer this Note to any person or persons named in the Notice at a price not less than, and upon terms not more favorable to such person or persons than, those specified in the Notice, provided that such sales or transfers are consummated within sixty (60) days following the expiration of the thirty (30) day period

-2-

provided in Paragraph 4(b) above, and provided further that any such sale or transfer is in accordance with all the terms and conditions hereof. If the holder does not consummate the sale or transfer within such sixty (60) day period, the right to repurchase provided hereby shall be deemed to be revived with respect to such interests and no sale or transfer shall be effected without first offering this Note and the pro rata interest in the related Initial Warrant in accordance herewith.

(d) _Cooperation_. The holder shall cooperate affirmatively with Holding, to the extent reasonably requested by Holding, to enforce rights and obligations pursuant to this Note.

(e) _Exempt Transfers_. The provisions of this Paragraph 4 shall not apply to a transfer of this Note by the holder (i) by will or intestacy, (ii) if such holder is a trustee, to a successor trustee when such transfer does not involve a change in the beneficial ownership of this Note, (iii) to a spouse or former spouse pursuant to an agreement or decree for division of community property upon marital dissolution or legal separation, (iv) if such holder is a partnership, to its partners, (v) if such holder is a corporation, to its shareholders, parent or subsidiary or (vi) to another holder of an Original Note, and shall not apply to a pledge of or grant of a security interest in this Note to LaPine Technology Corporation or LaPine Holding Company, provided that in each such case the transferee shall receive and hold such interests subject to the provisions of this Paragraph 4 and there shall be no further transfer of such interests except in accordance herewith.

5.    _Transfer or Exchange_.

(a) _Procedure_. Subject to Paragraphs 4 and 5(b) and (c) hereof, this Note may be exchanged or transferred at the principal office of the Registrar by surrendering the same for cancellation as set forth in the Indenture. The Registrar may require a holder, among other things, to furnish appropriate endorsements and transfer documents and to pay any taxes and fees required by law or permitted by the Indenture. The registered holder of this Note may be treated as its owner for all purposes.

(b) _Securities Laws_. This Note shall not be sold, assigned, pledged or otherwise transferred or offered for transfer unless it is registered under the Securities Act of

-3-

1933, as amended, and the rules and regulations thereunder and is qualified under and sold in accordance with the provisions of any applicable state securities laws and any rules and regulations promulgated thereunder except as provided in the Indenture.

(c) Restrictions. Except with respect to a transfer or exchange in the event of the death of the holder, a holder may transfer and exchange a portion of this Note only if the portion is at least $5,000 and the remaining balance is at least $5,000. On transfer or exchange for this Note, an Original Note will be issued only with an Initial Warrant having an Exercise Price (as shown on the cover page thereof) equal to the principal amount of such Original Note, both of which must be registered in the name of the same holder.

6. Defaults and Remedies. If an Event of Default occurs, this Note may become and be declared due and payable, in the manner and with the effect provided in the Indenture. Holders of Original Notes may not enforce the performance of the Indenture, the PBTC Guaranty, the PSG Guaranty or payment of the Original Notes except as provided in the Indenture. The Trustee may require indemnity satisfactory to it before it enforces the performance of the Indenture, the PBTC Guaranty, the PSG Guaranty or payment of the Original Notes. Subject to certain limitations, Holders of a majority in Principal Amount may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Holders notice of any continuing default (except certain payment defaults) if it determines that withholding notice is in their interests.

7. Subordination. The indebtedness evidenced by this Note is, to the extent and in the manner set forth in the Indenture, expressly subordinated and junior in right of payment to the prior payment in full of all Senior Debt and this Note is issued subject to such provisions of the Indenture. Each holder of this Note, by accepting the same, agrees to and shall be bound by such provisions, and authorizes and directs the Trustee on behalf of such holder to take such action as may be necessary or appropriate to acknowledge or effectuate such subordination as provided in the Indenture and appoints the Trustee as attorney-in-fact for any and all such purposes.

8. Guaranty. This Note is guaranteed by Prudential-Bache Trade Corporation pursuant to a Guaranty dated the date of the Indenture, which Guaranty is guaranteed by Prudential Securities Group Inc. pursuant to a Guaranty dated the date of the Indenture.

9.   Replacement.  If this Note is lost, destroyed or wrongfully taken, Holding shall execute and deliver and the Trustee shall authenticate a replacement Note in the manner and subject to the conditions set forth in the Indenture.

10.   Amendments and Waivers.  Subject to certain exceptions, the Indenture or this Note may be amended with the consent of Holding and the Holders of at least sixty-six and two-thirds percent (66-2/3%) in Principal Amount, and any existing default may be waived with the consent of the Holders of a majority in Principal Amount.  Without the consent of any Holder, the Indenture or this Note may be amended to cure any ambiguity, defect or inconsistency, to provide for assumption of Holding obligations to Holders or to make any change that does not adversely affect the rights of any Holder.

11.   Trustee Dealings with Holding.  The Trustee, in its individual or any other capacity, may make loans to, accept deposits from, and perform services for Holding or its Affiliates, and may otherwise deal with Holding or its Affiliates, as if it were not the Trustee.

12.   No Shareholder Rights.  This Note shall not entitle the holder hereof to any voting rights or other rights as a shareholder of Holding.

13.   Authentication.  This Note shall not be valid until authenticated by the manual signature of a Trust Officer or an authenticating agent.

A COPY OF THE INDENTURE WHICH HAS IN IT THE TEXT OF THIS NOTE WILL BE FURNISHED TO ANY HOLDER UPON WRITTEN REQUEST AND WITHOUT CHARGE.  REQUESTS MAY BE MADE TO: CHIEF FINANCIAL OFFICER, LAPINE TECHNOLOGY CORPORATION, 182 TOPAZ STREET, MILPITAS, CALIFORNIA  95035.

LAPINE HOLDING COMPANY

By _____
Vice-President and Secretary

By _____
Assistant Secretary

-5-

<u>CERTIFICATE OF AUTHENTICATING AGENT</u>

This is one of the Subordinated Notes due March 31, 1988 described in the within-mentioned Indenture.

BISHOP TRUST COMPANY, LIMITED
Trustee

By _____
Reynaldo M. N. Espaneli
as Authenticating Agent

-6-

THIS NOTE HAS NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED.  THIS NOTE MAY NOT BE SOLD, ASSIGNED, PLEDGED, DISTRIBUTED, DONATED, OFFERED OR OTHERWISE TRANSFERRED OR OFFERED FOR TRANSFER WITHOUT SUCH REGISTRATION AND EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF ANY APPLICABLE STATE SECURITIES LAWS AND ANY RULES AND REGULATIONS PROMULGATED THEREUNDER, UNLESS LAPINE HOLDING COMPANY IS FURNISHED WITH AN OPINION OF COUNSEL SATISFACTORY TO IT THAT SUCH REGISTRATION IS NOT REQUIRED AND SUCH STATE SECURITIES LAWS ARE INAPPLICABLE.

IT IS UNLAWFUL TO CONSUMMATE A SALE OR TRANSFER OF THIS NOTE, OR ANY INTEREST THEREIN, OR TO RECEIVE ANY CONSIDERATION THEREFOR, WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA, EXCEPT AS PERMITTED IN THE COMMISSIONER'S RULES.

## LAPINE HOLDING COMPANY, A DELAWARE CORPORATION

### SUBORDINATED NOTE DUE MARCH 31, 1988

No. 147
$539,564.90                                    December 29, 1986

1.  _Promise_.  LaPine Holding Company, a Delaware corporation ("Holding"), for value received, hereby promises to pay to Anthony N. LaPine, or registered assigns (the "holder"), on March 31, 1988, the principal sum of $539,564.90, without interest, in lawful money of the United State of America.

2.  _Indenture_.  This Note is one of the Subordinated Notes due March 31, 1988 (the "Original Notes") in the aggregate principal amount of $4,000,000 which, together with certain warrants (the "Initial Warrants"), have been issued and are to be issued under an Indenture dated as of December 26, 1986 (the "Indenture") between Holding and Bishop Trust Company, Limited.  The terms of this Note include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939 (15 U.S. Code §§77aaa - 77bbb) as in effect on the date of the Indenture. Reference is hereby made to the Indenture and Trust Indenture Act for a statement of such terms.  Capitalized terms not otherwise defined herein shall be used herein as defined in the Indenture.

3.   Method of Payment.  Initially, Holding will act as Paying Agent and Registrar.  Holding may change the Paying Agent, Registrar or co-registrar without notice.  Holding may act in such capacities.  The holder must surrender this Note to a Paying Agent to collect principal payments.

4.   Right of First Refusal.  Before this Note (or any interest herein) or any interest in the related Initial Warrant may be sold or transferred (including transfer by operation of law), it shall first be offered to Holding in the following manner:

(a)   Notice.  The holder shall deliver a notice by certified mail ("Notice") to the office of Holding (at the address set forth at the end of this Note or such other address designated by Holding) stating (i) his bona fide intention to sell or transfer this Note, (ii) the principal amount of this Note to be sold or transferred, (iii) the cash or description of the property for which he proposes to sell or transfer this Note, and (iv) the name of the proposed purchaser or transferee, and accompanied by evidence (satisfactory to Holding) that the proposed transfer is permitted by state and federal securities laws.

(b)   Holding Right to Purchase.  Within thirty (30) days after receipt of the Notice by Holding, Holding may elect to purchase from the holder the interest in this Note referred to in the Notice and the pro rata interest in the Initial Warrant, at the price and on the terms specified in the Notice, provided that if the holder proposes to sell or transfer such interest for property, the price shall be an amount (in cash) equal to the fair market value of the property as reasonably determined by Holding, by delivery of written notice of such election to the holder at his registered address.  The closing of Holding's purchase pursuant to this right of first refusal shall take place at the office of Holding within twenty (20) days of the delivery of Holding's election notice to the holder.

(c)   Permitted Sales.  If Holding does not elect to purchase the interest in this Note referred to in the Notice and the pro rata interest in the Initial Warrant pursuant to the preceding subparagraph, the holder may sell or transfer this Note to any person or persons named in the Notice at a price not less than, and upon terms not more favorable to such person or persons than, those specified in the Notice, provided that such sales or transfers are consummated within sixty (60) days following the expiration of the thirty (30) day period

-2-

provided in Paragraph 4(b) above, and provided further that any
such sale or transfer is in accordance with all the terms and
conditions hereof.  If the holder does not consummate the sale
or transfer within such sixty (60) day period, the right to
repurchase provided hereby shall be deemed to be revived with
respect to such interests and no sale or transfer shall be
effected without first offering this Note and the pro rata
interest in the related Initial Warrant in accordance herewith.

      (d)  _Cooperation_.  The holder shall cooperate
affirmatively with Holding, to the extent reasonably requested
by Holding, to enforce rights and obligations pursuant to this
Note.

      (e)  _Exempt Transfers_.  The provisions of this
Paragraph 4 shall not apply to a transfer of this Note by the
holder (i) by will or intestacy, (ii) if such holder is a
trustee, to a successor trustee when such transfer does not
involve a change in the beneficial ownership of this Note,
(iii) to a spouse or former spouse pursuant to an agreement or
decree for division of community property upon marital
dissolution or legal separation, (iv) if such holder is a
partnership, to its partners, (v) if such holder is a
corporation, to its shareholders, parent or subsidiary or
(vi) to another holder of an Original Note, and shall not apply
to a pledge of or grant of a security interest in this Note to
LaPine Technology Corporation or LaPine Holding Company,
provided that in each such case the transferee shall receive
and hold such interests subject to the provisions of this
Paragraph 4 and there shall be no further transfer of such
interests except in accordance herewith.

     5.  _Transfer or Exchange_.

      (a)  _Procedure_.  Subject to Paragraphs 4 and 5(b)
and (c) hereof, this Note may be exchanged or transferred at
the principal office of the Registrar by surrendering the same
for cancellation as set forth in the Indenture.  The Registrar
may require a holder, among other things, to furnish
appropriate endorsements and transfer documents and to pay any
taxes and fees required by law or permitted by the Indenture.
The registered holder of this Note may be treated as its owner
for all purposes.

      (b)  _Securities Laws_.  This Note shall not be
sold, assigned, pledged or otherwise transferred or offered for
transfer unless it is registered under the Securities Act of
1933, as amended, and the rules and regulations thereunder and

-3-

is qualified under and sold in accordance with the provisions of any applicable state securities laws and any rules and regulations promulgated thereunder except as provided in the Indenture.

(c) Restrictions. Except with respect to a transfer or exchange in the event of the death of the holder, a holder may transfer and exchange a portion of this Note only if the portion is at least $5,000 and the remaining balance is at least $5,000. On transfer or exchange for this Note, an Original Note will be issued only with an Initial Warrant having an Exercise Price (as shown on the cover page thereof) equal to the principal amount of such Original Note, both of which must be registered in the name of the same holder.

6. Defaults and Remedies. If an Event of Default occurs, this Note may become and be declared due and payable, in the manner and with the effect provided in the Indenture. Holders of Original Notes may not enforce the performance of the Indenture, the PBTC Guaranty, the PSG Guaranty or payment of the Original Notes except as provided in the Indenture. The Trustee may require indemnity satisfactory to it before it enforces the performance of the Indenture, the PBTC Guaranty, the PSG Guaranty or payment of the Original Notes. Subject to certain limitations, Holders of a majority in Principal Amount may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Holders notice of any continuing default (except certain payment defaults) if it determines that withholding notice is in their interests.

7. Subordination. The indebtedness evidenced by this Note is, to the extent and in the manner set forth in the Indenture, expressly subordinated and junior in right of payment to the prior payment in full of all Senior Debt and this Note is issued subject to such provisions of the Indenture. Each holder of this Note, by accepting the same, agrees to and shall be bound by such provisions, and authorizes and directs the Trustee on behalf of such holder to take such action as may be necessary or appropriate to acknowledge or effectuate such subordination as provided in the Indenture and appoints the Trustee as attorney-in-fact for any and all such purposes.

8. Guaranty. This Note is guaranteed by Prudential-Bache Trade Corporation pursuant to a Guaranty dated the date of the Indenture, which Guaranty is guaranteed by Prudential Securities Group Inc. pursuant to a Guaranty dated the date of the Indenture.

-4-

9.  <u>Replacement</u>.  If this Note is lost, destroyed or wrongfully taken, Holding shall execute and deliver and the Trustee shall authenticate a replacement Note in the manner and subject to the conditions set forth in the Indenture.

10.  <u>Amendments and Waivers</u>.  Subject to certain exceptions, the Indenture or this Note may be amended with the consent of Holding and the Holders of at least sixty-six and two-thirds percent (66-2/3%) in Principal Amount, and any existing default may be waived with the consent of the Holders of a majority in Principal Amount.  Without the consent of any Holder, the Indenture or this Note may be amended to cure any ambiguity, defect or inconsistency, to provide for assumption of Holding obligations to Holders or to make any change that does not adversely affect the rights of any Holder.

11.  <u>Trustee Dealings with Holding</u>.  The Trustee, in its individual or any other capacity, may make loans to, accept deposits from, and perform services for Holding or its Affiliates, and may otherwise deal with Holding or its Affiliates, as if it were not the Trustee.

12.  <u>No Shareholder Rights</u>.  This Note shall not entitle the holder hereof to any voting rights or other rights as a shareholder of Holding.

13.  <u>Authentication</u>.  This Note shall not be valid until authenticated by the manual signature of a Trust Officer or an authenticating agent.

A COPY OF THE INDENTURE WHICH HAS IN IT THE TEXT OF THIS NOTE WILL BE FURNISHED TO ANY HOLDER UPON WRITTEN REQUEST AND WITHOUT CHARGE.  REQUESTS MAY BE MADE TO: CHIEF FINANCIAL OFFICER, LAPINE TECHNOLOGY CORPORATION, 182 TOPAZ STREET, MILPITAS, CALIFORNIA 95035.

LAPINE HOLDING COMPANY

By _____
   Vice President and Secretary

By _____
   Assistant Secretary

-5-

CERTIFICATE OF AUTHENTICATING AGENT

This is one of the Subordinated Notes due March 31, 1988 described in the within-mentioned Indenture.

BISHOP TRUST COMPANY, LIMITED
Trustee

By _____
    Reynaldo M. N. Espaneli
    as Authenticating Agent

-6-

11206 (1)

THELEN. MARRIN. JOHNSON & BRIDGES

ATTORNEYS AT LAW
TWO EMBARCADERO CENTER
SAN FRANCISCO, CA 94111
(415) 392-6320

TELEX 34-0906 CABLE THEMAR
TELECOPIER (415) 421-1066

333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071
(213) 621-6600
TELEX 19-4878 CABLE THEMAR LSA
TELECOPIER (213) 623-4742

ONE KAISER PLAZA
SUITE 1850
OAKLAND, CA 94612
(415) 893-5188
TELECOPIER (415) 881-9066

4100 MacARTHUR BOULEVARD
SUITE 300
NEWPORT BEACH CA 92660
(714) 851-6100

ONE ALMADEN BOULEVARD
SAN JOSE CA 95113
(408) 292-5900
TELECOPIER (408) 287-9040

1300 TEXAS AMERICAN BANK BLDG
HOUSTON TEXAS 77002
(713) 654-4677

April 7, 1987

Mr. Anthony N. LaPine
200 Belmont Avenue
Los Gatos, California    95030

        Re:  <u>New Notes and Warrants</u>

Dear Mr. LaPine:

        Rey Espineli recently informed me that you exercised
your right under the Consulting Agreement dated as of December
29, 1986 between you and LaPine Technology Corporation to
borrow an additional $300,000 in unpaid Annual Consulting Fees
as of March 16, 1987.  I am enclosing a revised Advance Note in
the principal amount of $300,000 to reflect your most recent
borrowing.  Please execute the Note and return it to me in the
self-addressed envelope provided.

        One of the conditions to your borrowing under the
Consulting Agreement was that you assign and pledge to the
Company (i) an Original Note in an unpaid principal amount
equal to the principal amount of all Advance Notes outstanding
and (ii) an Initial Warrant with an exercise price equal to the
principal amount of the Original Note described in (i) above.
You have now borrowed $400,000 under the Consulting Agreement,
necessitating an increase in the collateral retained by the
Company to secure your obligations.

        The total principal amount of your indebtedness to the
Company subject to collateralization after this $300,000
borrowing is $635,000, comprised of: (i) $400,000 in loans
against your Annual Consulting Fee; (ii) $180,000 borrowed as
of December 24, 1986 to purchase 500,000 shares of Company
Common Stock prior to the reorganization; and (iii) two loans
made by the Company in 1985 totalling $55,000.

Mr. Anthony N. LaPine
April 7, 1987
Page 2

      Prior to the adjustments described below, the Company held as collateral $38,625.49 in cash, $228,649.19 in Original Note principal and the corresponding Initial Warrant principal of $857,423.24, as described more fully in my letter of December 31 to Lynne Parshall, a copy of which I have enclosed.  This collateral, which is the consideration payable on 666,668 shares of Company Common Stock, secures both the December 1986 loan of $180,000 and the 1985 loans totalling $55,000, leaving $400,000 of indebtedness to the Company unsecured.

      I have therefore increased the principal amounts of the Original Notes that the Company holds as security by $400,000 and made a corresponding adjustment in the Initial Warrants to account for the $300,000 loan in March and your prior borrowing against your Consulting Fee of $100,000 as of December 29, 1986.  The revised Note and Warrant are enclosed. A breakdown of the consideration being withheld and that which is being returned to you is as follows.

|  | No. | Note | Warrant |
|---|---|---|---|
| Held as Security for Loans | 146 | $628,646.19 | $2,357,423.23 |
| Returned to You | 147 | $539,564.90 | 2,023,368.39 |

      Should you have any questions, do not hesitate to call me.

Very truly yours,

THELEN, MARRIN, JOHNSON & BRIDGES

Aaron J. Alter

AJA:n
Enclosure

cc:  Reynaldo M. N. Espineli
     Russell M. Krapf
     B. Lynne Parshall
     Nancy E. Smith

**BISHOP TRUST CO., LTD.**

TRUST SERVICES SINCE 1906

April 4, 1988

Aaron Alter, Esq.
c/o Thelen Marrin Johnson & Bridges
Two Embacadero Center
San Francisco, CA 94111

Re:  Anthony LaPine
     LaPine Holiding
     Note Certificate #147 - $539,564.90

Dear Aaron:

This is to confirm that we wired $539,564.90 to Security Pacific National
Bank for the credit of Anthony LaPine's account.

His certificate #147 in the meantime has been marked 'paid off'; you
will be providing us with a schedule as to how the balance would be
treated.

I trust our action is in order.

Yours truly,

Astika D. Botejue
Assistant Vice President &
Corporate Trust Officer

ADB:ra

*AJA*

# THELEN, MARRIN, JOHNSON & BRIDGES
### ATTORNEYS AT LAW
Two Embarcadero Center
San Francisco, CA 94111
(415) 392-6320

LOS ANGELES
OAKLAND
HOUSTON

NEWPORT BEACH
SAN JOSE
WASHINGTON, D C

TELEX 34-0900 CABLE THEMAR
TELECOPIER (415) 421-1068

April 12, 1988

Mr. Anthony N. LaPine
200 Belmont Avenue
Los Gatos, California  95030

Re:  LaPine Technology Corporation --
     Consideration Forthcoming; Deduction
     for Debt and Interest Obligations

Dear Tony:

I am writing to confirm our recent telephone conversation during which we went over the consideration payable to you as of March 31, 1988 as well as the debt and accrued interest obligations you owe the Company.  Table 1 sets forth all such borrowings of which we are aware.

### Table 1

#### ANL Borrowings from the Company

| | Borrowing | Date | Collateral | Interest Rate; Date All Principal And Interest Payable |
|---|---|---|---|---|
| 1. | $ 30,000 | 10/16/85 | 90,910 shares | 10% comp. qtrly. due 10/16/89 |
| 2. | $ 44,550 | 12/12/85 | None | 10% comp. qtrly. due 12/12/89 |
| 3. | $ 25,000 | 12/30/85 | 75,758 shares | 9% per annum due 12/30/90 |
| 4. | $180,000 | 12/24/86 | 500,000 shares | 6.8% per annum due 6/24/88 |
| 5. | $100,000 | 12/29/86 | $100,000 Original Note plus corresponding Initial Warrant | 8% per annum due December 29, 1990 |
| 6. | $300,000 | 3/16/87 | $300,000 Original Note plus corresponding Initial Warrant | 8% per annum due December 29, 1990 |

Mr. Anthony N. LaPine
April 12, 1988
Page 2

The Proxy Statement, in a section describing your interest in the reorganization, states that:

> If at March 31, 1988, Mr. LaPine is not in violation of the non-competition clause of the Consulting Agreement, the Company will cancel [the $180,000 promissory note of 12/24/86] up to $180,000 in principal amount and will also cancel an additional $98,000 of indebtedness of LaPine to the Company...

You will note from Table 1 above that your pre-Advance Note borrowing from the Company equals $279,550, whereas the foregoing excerpt from the Proxy Statement contemplates forgiveness of $278,000 of debt. Therefore, with respect to pre-Advance Note principal obligations, you owe, as of March 31, 1988, $1,550 to the Company.

In addition to this $1,550 principal obligation, you owe the Company interest on non-Advance Note borrowings, as set forth in Table 2 below.

## Table 2

### Tony LaPine's Interest Obligations

|   | Borrowing | Interest Repayment Terms | Accrued Interest (As of 3/31/88) |
|---|---|---|---|
| 1. | $ 30,000 | 10% payable quarterly since 12/31/85 | $ 8,089.89 |
| 2. | $ 44,550 | 10% payable quarterly since 3/12/85 | 9,961.75 |
| 3. | $ 25,000 | 9% per annum since 8/15/83 payable 12/30/90 | 12,290.89 |
| 4. | $180,000 | 6.8% per annum since 12/24/86 payable 6/24/88 | 15,749.83 |
|   | Total Interest Due |   | $46,092.36 |

The Company currently holds consideration payable to you with respect to 666,668 shares of common stock in the Company prior to its reorganization as collateral for the borrowings represented by notes 1, 3 and 4. Such consideration is payable to you as of March 31, 1988 when all of the debt represented by notes 1 through 4, but for $1,550 in principal, is to be cancelled.

Mr. Anthony N. LaPine
April 12, 1988
Page 3

Table 3 below sets forth your obligations under the Advance Notes (loans number 5 and 6 of Table 1).

Table 3

ANL Debt Obligations Under the Advance Notes

| | |
|---|---|
| Debt Obligations (principal plus (interest) as of 1/1/88 | $ 426,936.99 |
| Less ANL Annual Consulting Fee Applied to Outstanding Balance | (100,000.00) (100,000.00) |
| Interest from 1/1/88 – 3/31/88 | 6,449.17 |
| Net Debt Obligations | $ 333,386.16 |

As collateral for the Advance Notes, the Company is holding $400,000 in Original Note principal, along with the corresponding Initial Warrant of $1,517,647.06, pursuant to the terms of the Avance Notes. Section 3(a) of each Advance Note provides for mandatory prepayment in the event that there is a payment of principal on the Original Notes, which payment occurred as of March 31, 1988.

As a result of such mandatory prepayment, you will no longer have any Advance Notes outstanding as of March 31, 1988. Under the terms of the Consulting Agreement, you have requested that an amount equal to the total unpaid annual consulting fees be held in an escrow account to secure payment of such fees as they become due. We are working to establish this account as expeditiously as possible.

Table 4 below sets forth, in summary form, the consideration to be paid to you after deductions for your obligations to the Company.

Mr. Anthony N. LaPine
April 12, 1988
Page 4

## Table 4

### Summary of Payments to and Obligations of ANL

| | |
|---|---|
| Consideration payable in respect of 666,668 shares of LTC Common Stock | |
| Cash | $ 38,625.49 |
| Original Note | 228,646.19 |
| Original Note principal held as collateral for Advance Note borrowing | 400,000.00 |
| Uncancelled pre-Advance Note principal | ( 1,550.00) |
| Interest on pre-Advance Note borrowing | ( 46,092.36) |
| Advance Notes | (333,386.16) |
| Net Amount Due ANL | $286,243.16 |

Should you have any questions about any of the foregoing, please give me a call.

Very truly yours,

THELEN, MARRIN, JOHNSON & BRIDGES

Aaron J. Alter

AJA:n
Enclosures
cc:  Michael Watson
     Nancy E. Smith
     Roy W. Adams, Jr.
     Stephanie R. Kogan