EXHIBIT D

Exhibit 5

EXHIBIT N TO
DEFINITIVE AGREEME:

CONSULTING AGREEMENT

between

LAPINE TECHNOLOGY CORPORATION

and

ANTHONY N. LAPINE

TABLE OF CONTENTS

Section                                                                 Page

1. Consulting Services ............................  1
   1.1  Services .................................  1
   1.2  Term .....................................  1

2. Compensation .................................  1
   2.1  Fee ......................................  2
   2.2  Medical Coverage .........................  2
   2.3  Expenses .................................  2

3. Advance Notes ................................  2
   3.1  Advance Notes ............................  2
   3.2  Security .................................  2
   3.3  Procedure ................................  2

4. Escrow Account ...............................  3

5. Relationship of Parties ......................  3

6. Employment Taxes and Benefits ................  3

7. Covenant Not to Compete ......................  3
   7.1  Restrictive Covenants ....................  3
   7.2  Direct or Indirect Competition ..........  4
   7.3  Exclusions ...............................  4
   7.4  Convenants Severable .....................  5
   7.5  Proprietary Information Agreement .......  6

8. Default ......................................  6
   8.1  General ..................................  6
   8.2  Acceleration .............................  6
   8.3  General Remedies .........................  6
   8.4  Equitable Remedies .......................  7

9. PBTC .........................................  7
10. Assignment ..................................  7
11. Amendment ...................................  7
12. Complete Understanding; Modification .........  7
13. Notices .....................................  8
14. Construction ................................  8
15. Arbitration .................................  8

Exhibit A.  Description of LaPine's Medical Coverage
Exhibit B.  Form of Advance Note
Exhibit C.  Form of Security Agreement
Exhibit D.  Proprietary and Confidentiality
            Information Agreement

CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT ("Agreement") is made as of December 29, 1986 between LaPine Technology Corporation, a California corporation (the "Company"), and Anthony LaPine ("LaPine").

RECITAL

In connection with the Definitive Agreement and Plan of Reorganization dated as of November 10, 1986 between the Company, Prudential-Bache Trade Corporation ("PBTC"), K.K. P B Trade Corporation, Kyocera Corporation, Pru Tech Research and Development Partnership and LaPine (the "Definitive Agreement"), the Company wishes to retain LaPine, and LaPine wishes to serve, as consultant to the Company upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, the parties agree as follows:

1.    Consulting Services.

1.1    Services.    The Company shall retain LaPine as a consultant during the term of this Agreement. LaPine shall furnish such advisory and consulting services, including, without limitation, services with respect to computer memory products designed, manufactured, marketed, sold, licensed or distributed by the Company, as may be requested by the Company (the "Services") upon seven (7) days prior notice. LaPine will make himself available for performance of the Services up to twenty-five (25) days per year provided, however, that LaPine shall not be required to make himself available more than five (5) days in any one calendar month and shall not be required to perform the Services outside the State of California unless mutually agreed. For purposes of this Section 1.1, a "day" shall mean a work day of not more than ten (10) hours in any one calendar day, including travel time on a "portal to portal" basis.

1.2    Term.    The term of this Agreement shall be five (5) years, commencing on the date of this Agreement.

2.    Compensation.    During the term of this Agreement, but only so long as LaPine performs the services requested by the Company and is not in Default (as defined below) under this Agreement, the Company shall pay LaPine the following compensation:

2.1  Fee.  The Company shall pay LaPine an annual consulting fee ("Annual Consulting Fee") in the amount of one hundred thousand dollars ($100,000), payable in advance on the first day of each year of the five (5) year term, the first such annual fee having been paid on the date hereof.

2.2.  Medical Coverage.  The Company shall provide LaPine with medical coverage which is substantially equivalent to LaPine's current medical coverage under the group policy held by the Company (Policy Number 321415), issued by Union Mutual and effective August 1, 1985, and the medical coverage described in Exhibit A hereto (collectively, the "Medical Coverage") until LaPine obtains a similar medical coverage pursuant to other consulting arrangements or employment.

2.3.  Expenses.  The Company shall reimburse LaPine for LaPine's travel expenses (other than ordinary commuting expenses within the State of California to the principal office of the Company) incurred in the performance of the Services, but only if and to the extent such expenses are approved in writing by the Company in advance.

3.  Advance Notes.

3.1  Advance Notes.  Provided no Default has occurred, the Company shall make loans to LaPine, from time to time on written request of LaPine, in an aggregate principal amount not exceeding the total amount of the then unpaid Annual Consulting Fees under Section 2.1.  Each loan shall be evidenced by a recourse note in the form of Exhibit B hereto (each, an "Advance Note"), in the principal amount of such loan, duly executed and delivered by LaPine and dated the date of the loan.  Unless otherwise agreed by the Company and LaPine or unless otherwise paid, the Company shall apply when due all amounts payable to LaPine under Section 2.1 and, at the Company's election, may apply any other amounts due LaPine hereunder, to the payment of principal of and interest on the Advance Notes, such application to be made to the Advance Notes in inverse order of their dates of execution.

3.2  Security.  The payment of Advance Notes shall be secured by a Security Agreement dated the date hereof, in the form of Exhibit C hereto (the "Security Agreement"), made by LaPine for the benefit of the Company.

3.3  Procedure.  LaPine may give the Company a written notice of borrowing at least twenty (20) days before

-2-

the date of any borrowing, specifying the amount of the
proposed borrowing and the date of such borrowing.

4.    Escrow Account.    Provided no Default has
occurred, LaPine may require that an amount equal to the total
unpaid Annual Consulting Fees less the total amount advanced to
him under Section 3 be held in escrow in an account in a
California Bank acceptable to the Company to secure payment of
such fees when and if payment thereof becomes due.    Such
account may be an interest bearing account, with all interest
earned thereon payable to PBTC.    Such account shall terminate
and the funds and all interest earned thereon held therein
shall be disbursed to the Company on the occurrence of a
Default.

5.    Relationship of Parties.    LaPine is an
independent contractor with respect to the Services.    LaPine
shall perform the Services under the general direction of the
Company, but LaPine shall determine, in his sole discretion,
the manner and means by which the Services are accomplished,
subject to the express condition that LaPine shall at all times
comply with applicable law.    Neither LaPine nor LaPine's
employees and agents, if any, will be agents or employees of
the Company, or will have any authority whatsoever to bind the
Company by contract or otherwise.

6.    Employment Taxes and Benefits.    LaPine shall
report as self-employment income all compensation received by
him pursuant to this Agreement.    LaPine shall indemnify the
Company and hold it harmless to the extent of any obligation
imposed by law on the Company to pay any withholding taxes,
social security, unemployment or disability insurance or
similar taxes or charges in connection with any payments made
to LaPine by the Company pursuant to this Agreement on account
of LaPine or LaPine's agents or employees, if any.    Except as
expressly provided herein, neither LaPine nor LaPine's
employees or agents, if any, shall be entitled to participate
in any Company plans, arrangements, or distributions pertaining
to any bonus, stock option, profit sharing, insurance or
similar benefits for Company employees.

7.    Covenant Not to Compete.

7.1    Restrictive Covenants.    For five (5) years
from the date hereof, LaPine shall not (i) compete with the
Company (including, without limitation, any successor in
interest to the Company) anywhere in the world with respect to
the research and development, design, manufacture, marketing

-3-

(including, without limitation, the solicitation of customers),
sale, licensing or distribution of any rotating computer memory
product (including, without limitation, Winchester disk drives
and optical or laser memory storage and retrieval devices but
excluding archival, tape, semiconductor, or bubble memory
products and any rotating computer memory devices with greater
than one (1) Gigabyte storage capacity) that both (a) is of the
type of rotating computer memory product manufactured,
marketed, sold, licensed or distributed during the term of this
Agreement and (b) competes with or makes obsolete any of the
rotating computer memory products designed, manufactured,
marketed, sold, licensed or distributed by the Company during
such five-year period or (ii) engage in any activity which is
intended, directly or indirectly, to attract to the employ of
LaPine or any other person or entity, any person who is then an
employee or consultant of the Company.  For purposes of the
preceding sentence, computer memory products which vary in
storage capacity, for example but not limited to, 20 megabyte
and 40 megabyte Winchester disk drives, shall be deemed to be
competitive computer memory products.

    7.2  <u>Direct or Indirect Competition</u>.  By way of
illustration and not limitation, for the purposes of this
Section 7, LaPine shall be deemed to be competing with the
Company if LaPine directly or indirectly consults with, is or
becomes an owner of or general partner in or with, a principal
in, a greater than five percent (5%) shareholder or a limited
partner of (other than as a shareholder in a company subject to
the periodic reporting requirements of the Securities Exchange
Act of 1934, as amended), an employee, officer or director of,
any entity or business that conducts the activities of the
kind, and with respect to products described in Section 7.1
above.

    7.3  <u>Exclusions</u>.

    (a)  <u>LaPine Request</u>.  Notwithstanding Sections
7.1 and 7.2, LaPine may request in writing that the Company
consent to the exclusion of certain of LaPine's activities with
respect to a rotating computer memory product from the
application of the restrictive covenants of this Section 7.
LaPine's request shall be in writing and shall describe
LaPine's proposed activites and the subject rotating computer
memory product with sufficient particularity to allow the
Company to properly evaluate LaPine's request.  The Company
shall allow or deny LaPine's request within thirty (30) days of
its receipt thereof.  The Company may withhold its consent in
whole or in part with respect to any such request if the

request is made pursuant to this Section 7.3 on or prior to June 30, 1988. For any LaPine request made subsequent to such date, the Company's consent shall not be unreasonably withheld. For purposes of this Section 7.3, the Company's withholding of consent shall not be unreasonable if the Company has, prior to the date, imitated the design, or development of a rotating computer memory product which is the same or similar to the rotating computer memory product which is the subject of LaPine's request and the Company reasonably expects to manufacture, market, sell, license or distribute such a product during the period specified in Section 7.1(a). If the Company fails to respond to LaPine's request within such thirty (30) day period, the Company's consent to the exclusion requested by LaPine in his written request shall be deemed to have been given to the extent set forth therein.

(b) <u>Non-Commercial Activities</u>. For purposes of this Section 7, LaPine shall not be deemed to be competing with the Company with respect to his activities as an instructor, teacher or professor at a non-commercial university or college or as a lecturer, speaker or panel member at public, non-commercial technical conferences, meetings or seminars.

(c) <u>References</u>. For purposes of this Section 7, LaPine shall not be deemed to be engaging in activity which is intended to attract to the employ of LaPine or any other person or entity, any person who is then an employee or consultant of the Company if LaPine, upon the unsolicited request of any such employee or consultant, provides references to a potential employer other than the Company for such employee or consultant.

7.4 <u>Covenants Severable</u>. The provisions of the restrictive covenants provided by this Section 7 shall be deemed to be a separate covenant for each (i) product designed, manufactured, marketed, sold, licensed or distributed by the Company during the term of this Agreement and (ii) country, state, county, city or other governmental jurisdiction or political or geographical subdivision anywhere in the world. To the extent that the provisions of the restrictive covenants provided by this Section 7 are held to be invalid or unenforceable for (i) any such product or (ii) any such country, state, county, city, governmental jurisdiction or political or geographical subdivision anywhere in the world, the covenant or covenants of this Section 7 so adjudicated shall be severed from the other convenants contained herein, and all remaining restrictive convenants hereof shall remain in full force and effect.

-5-

7.5  <u>Proprietary Information Agreement</u>.  Lapine shall, contemporaneously with the execution of this Agreement, enter into a Proprietary and Confidential Information Agreement in the form of Exhibit D hereto (the "Proprietary Information Agreement").

8.   <u>Default</u>.

8.1  <u>General</u>.  Each of the following shall constitute a Default by LaPine hereunder:

(i)  <u>Payment</u>.  LaPine fails to make any payment of principal of or interest on any Advance Note within ten (10) days of the date of the Company's notice that such payment is past due (whether at maturity, by acceleration or otherwise);

(ii)  <u>Covenants</u>.  LaPine defaults in any material respect in the performance or observance of any of his covenants or obligations under this Agreement (including, without limitation, the restrictive covenants set forth in Section 7), the Security Agreement or the Proprietary Information Agreement (as defined in Section 7.5) and such default has not been cured within ten (10) days of the date of the Company's notice of such default;

8.2  <u>Acceleration</u>.  If a Default occurs and is continuing, at the option of the Company, the entire principal of and accrued interest on all Advance Notes shall become due and payable without notice of default, presentment or demand for payment, protest or notice of nonpayment and dishonor, or other notices or demands of any kind or character, all of which are expressly waived.

8.3  <u>General Remedies</u>.  On the occurrence of a material Default, Lapine shall have no further right to receive Annual Consulting Fees or other benefits otherwise payable to LaPine under Section 2 hereof, and the Company, at its option, may cancel any Original Notes, Initial Warrants, Final Warrants or Convertible Notes (as defined in the Security Agreement) then held as security for Advance Notes without affecting LaPine's obligations with respect to such Advance, provided, however, that LaPine shall be credited toward the payment of the Advance Notes on the date of such cancellation the fair market value of such Original Notes, Initial Warrants, Final Warrants or Convertible Notes.  For purposes of this Section 8.3, "fair market value" shall be determined by mutual

-6-

agreement, or if the parties cannot in good faith agree within thirty (30) days of written notice of disagreement, by arbitration in accordance with Section 15.

8.4 <u>Equitable Remedies</u>.  LaPine acknowledges that (i) money damages will not be a sufficient remedy for any breach of the provisions of Section 7, (ii) the Company shall be entitled to injunctive relief or specific performance as a remedy for any such breach and (iii) such remedy shall not be deemed to be the exclusive remedy for any such breach but shall be in addition to all other remedies available at law or in equity.

9.    <u>PBTC</u>.  PBTC shall fund (i) the Annual Consulting Fee, (ii) the loans to be made under Section 3 and (iii) the escrow to be established under Section 4, in an aggregate amount not to exceed $500,000, and the premiums for the Medical Coverage.  In consideration of PBTC's funding obligation, the Company shall assign to PBTC the Advance Notes and the Security Agreement by absolute assignment and not as security.

10.    <u>Assignment</u>.  The rights and liabilities of the parties hereto shall bind and inure to the benefit of the parties and their respective successors, heirs, executors and administrators, as the case may be; provided that LaPine may not assign or delegate his obligations under this Agreement either in whole or in part without the prior written consent of the Company since the Company has specifically contracted for LaPine's services.

11.    <u>Amendment; Beneficiary; Termination</u>.  This Agreement may be amended only by a written instrument signed by the parties and by PBTC.  Nothing in this Agreement, express or implied, is intended to confer upon any third person other than PBTC any rights or remedies under or by reason of this Agreement.  This Agreement may be terminated only upon the written agreement of the Company, LaPine and PBTC.

12.    <u>Complete Understanding; Modification</u>.  This Agreement with exhibits constitute the full and complete understanding and agreement of the parties with respect to the subject matter hereof and supersede all prior understandings and agreements, including, without limitation, any and all employment contracts and severance agreements.

-7-

13. _Notices_. Any notices required or permitted hereunder shall be in writing and shall be deemed to be given when delivered in person or sent by registered or certified mail, postage paid, and

(a) If to the Company, addressed to:

LaPine Technology Corporation
182 Topaz Street
Milpitas, CA 95035
Attention: President

(b) If to LaPine, addressed to:

Anthony N. LaPine
200 Belmont
Los Gatos, CA 95030

14. _Construction_. This Agreement shall be construed under the laws of the State of California as applied to contracts between California residents made and performed entirely within California.

15. _Arbitration_. Any dispute shall be resolved pursuant to arbitration in accordance with Section 8.10 of the Definitive Agreement. Arbitrators who are qualified experts or who are familiar with the technological issues presented by any such arbitration shall be used to the extent reasonably available.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

LAPINE TECHNOLOGY CORPORATION

By /s/ R. M. Krapf
Title: President

/s/ Anthony N. LaPine
Anthony N. LaPine

-8-

### Acknowledgment

Prudential-Bache Trade Corporation hereby acknowledges and agrees to comply with Section 9 of the foregoing Agreement.

PRUDENTIAL-BACHE TRADE CORPORATION

By    /s/ Charles W. Jacob
Title    Vice President

-9-