EDWARD M. GERGOSIAN (105679)
ed@gergosian.com
ROBERT J. GRALEWSKI, JR. (196410)
bob@gergosian.com
BROOKE E. HODGE (234411)
brooke@gergosian.com
GERGOSIAN & GRALEWSKI LLP
655 West Broadway, Suite 1410
San Diego, CA  92101
Telephone:  (619) 237-9500
Facsimile:   (619) 237-9555

Attorneys for Plaintiff and Claimant
ANTHONY N. LaPINE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTHONY N. LaPINE,<br><br>                    Plaintiff and Claimant,<br><br>          vs.<br><br>KYOCERA CORPORATION,<br><br>                    Defendant and Respondent. | Case No. CV-07-06132 MHP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT KYOCERA CORPORATION'S CROSS-MOTION TO CONFIRM ARBITRAL AWARD**<br><br>Date:   April 28, 2008<br>Time:  2:00 p.m.<br>Courtroom:  15<br>Judge: Hon. Marilyn H. Patel |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.........................................................................................1

I.   STATEMENT OF FACTS ...............................................................................1

    A.  LaPine's Arbitration Request.................................................................1

    B.  Arbitration Proceedings........................................................................2

    C.  The Tribunal's Award ...........................................................................4

II.  ARTICLE V OF THE CONVENTION DOES NOT GOVERN THIS COURT'S

    REVIEW OF THE AWARD ............................................................................5

    A.  Article V(1)(e) Allows This Court to Apply Domestic Arbitral Law and Its
        Full Panoply of Express and Implied Grounds for Relief ...................5

    B.  Defendant's Cases Are Not Persuasive ...............................................7

    C.  Confirmation of This Award Is Premature and May Not Result In Automatic
        Judgment...............................................................................................10

    D.  In the Alternative, Should the Court Find that Article V Applies Exclusively to
        Review of This Award, the Award Still Cannot Be Confirmed Under Article V ............11

        1.   Article V(1)(b) ............................................................................11

        2.   Article V(1)(c) ............................................................................12

III. THE AWARD MUST BE VACATED UNDER THE FAA ...............................12

    A.  The Arbitral Panel Exceeded Its Powers .............................................13

    B.  The Tribunal Manifestly Disregarded the Law.....................................14

IV.  SHOULD THE COURT FIND THAT CONVENTION ARTICLE V APPLIES
    EXCLUSIVELY, THE ARBITRATION AGREEMENT MUST BE INVALIDATED......15

    A.  Review Under "Any of the Grounds Referred to in the Federal Arbitration Act" and the
        Expanded Review Clause Are Integral Components of the Arbitration Agreement.......15

    B.  Under California and Federal Law, the FAA and Expanded Judicial Review Clauses
        Cannot Be Severed and Failure or Inability to Apply Them Renders the Arbitration
        Agreement Void ....................................................................................17

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) .................................................................................... 18

*Barnes v. Logan*,
  122 F.3d 820 (9th Cir. 1997) ........................................................................ 13

*Bergesen v. Joseph Muller Corp.*,
  710 F.2d 928 (2nd Cir. 1983) .......................................................................... 9

*Bernhardt v. Polygraphic Co. of Am.*,
  350 U.S. 198 (1956) ..................................................................................... 14

*China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.*,
  379 F.3d 796 (9th Cir. 2004) .......................................................................... 8

*Chromalloy Aeroservices v. Arab Republic*,
  939 F. Supp. 907 (D.D.C. 1996) ..................................................................... 6

*Coast Trading Co. v. Pacific Molasses Co.*,
  681 F.2d 1195 (9th Cir. 1982) ...................................................................... 15

*Coutee v. Barington Capital Group, L.P.*,
  336 F.3d 1128 (9th Cir. 2003) ...................................................................... 14

*Florasynth, Inc. v. Pickholtz*,
  750 F.2d 171 (2nd Cir. 1934) ........................................................................ 10

*Fotochrome, Inc. v. Copal Co.*,
  517 F.2d 512 (2nd Cir. 1975) .......................................................................... 8

*George Day Constr. Co. v. United Bhd. of Carpenters & Joiners, Local 354*,
  722 F.2d 1471 (9th Cir. 1983) ...................................................................... 14

*Graham Oil Co. v. ARCO Prods. Co.*,
  43 F.3d 1244 (9th Cir. 1994) ........................................................................ 19

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
  552 U.S. ___ (2008) ....................................................................................... 7

*IMO Dev. Corp. v. Dow Corning Corp.*,
  135 Cal. App. 3d 451 (1982) ........................................................................ 17

*Industrial Risk Insurers v. M.A.N Gutenhoffnungshutte GmbH*,
  141 F.3d 1434 (11th Cir. 1998) ...................................................................... 9

*Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Indus. y Comercial*,
  745 F. Supp. 172 (S.D.N.Y. 1990) .................................................................. 6

*Iran Aircraft Indus. v. Avco Corp.*,
  980 F.2d 141 (2nd Cir. 1992) ........................................................................ 11

*Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.*,
  255 F. Supp. 2d 744 (W.D. Mich. 2003) ........................................................ 6

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  364 F.3d 274 (5th Cir. 2004) ........................................................................ 11

*Kyocera Corp. v. Prudential-Bache T. Servs.*,
  341 F.3d 987 (9th Cir. 2003) ........................................................................ 13

*Lander Co. v. MMP Invs.*,
  107 F.3d 476 (7th Cir. 1997) ................................................................... 6, 12

*LaPine Tech. Corp. v. Kyocera Corp.*,
   909 F. Supp. 697 (N.D. Cal. 1995)........................................................................15

*Little v. Auto Stiegler, Inc.*,
   29 Cal. 4th 1064 (2003) .....................................................................................18

*Mastrobuono v. Shearson Lehman Hutton*,
   514 U.S. 52 (1995) ...........................................................................................13

*Mgmt. & Tech. Consultants S.A. v. Parson-Jurden Int'l Corp.*,
   820 F.2d 1531 (9th Cir. 1987).............................................................................7

*Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*,
   44 F.3d 826 (9th Cir. 1995).................................................................................13

*Ministry of Def. of Islamic Republic v. Gould, Inc.*,
   969 F.2d 764 (9th Cir. 1992)...............................................................................8

*Murphy v. Check 'N Go of California, Inc.*,
   156 Cal. App. 4th 138 (2007)..............................................................................18

*Ottley v. Schwartzberg*,
   819 F.2d 373 (2nd Cir. 1987)..............................................................................17

*Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*,
   508 F.2d 969 (2nd Cir. 1974)............................................................................8,11

*Sunshine Mining Co. v. United Steelworkers of America, etc.*,
   823 F.2d 1289 (9th Cir. 1987).............................................................................11

*Todd Shipyards Corp. v. Cunard Line*,
   943 F.2d 1056 (9th Cir. 1991).............................................................................14

*Volt Info. Scis. v. Bd. of Trs.*,
   489 U.S. 468 (1989) ...........................................................................................13

*Vu Luong v. Circuit City Stores, Inc.*,
   368 F.3d 1109 (9th Cir. 2004)..............................................................................14

*W. Employers Ins. Co. v. Jefferies & Co.*,
   958 F.2d 258 (9th Cir. 1992)...............................................................................19

*Woodchem v. D.B. Western, Inc.*,
   No. 01-132-HO,
   2001 U.S. Dist LEXIS 25290 (D. Or. Nov. 2, 2001) ..................................8, 9, 14

*Woods v. Saturn Distribution Corp.*,
   No. SA CV 94-327-LTL (RWR),
   1994 U.S. Dist. LEXIS 21471 (C.D. Cal. May 31, 1994) .....................................10

*Yeng Sue Chow v. Levi Strauss & Co.*,
   49 Cal. App. 3d 315 (1975)..................................................................................17

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2nd Cir. 1997).............................................................................5, 6, 9

**STATUTES, RULES & REGULATIONS**

9 U.S.C. § 1....................................................................................................................7

9 U.S.C. § 10..........................................................................................................1, 13

9 U.S.C. § 10(a)(2)........................................................................................................10

9 U.S.C. §10(a)(4).................................................................................................12, 14

1

9 U.S.C. §10(d) ..................................................................................................... 13

2

9 U.S.C. § 201 ................................................................................................ *passim*

3

Federal Arbitration Act

§ 10 ...................................................................................................... 14

4

§ 10(a)(4) ....................................................................................... 12, 13

5

§ 11(b) ................................................................................................. 12

6

California Civil Code

§ 1670.5(a) ......................................................................................... 17

7

8

**SECONDARY SOURCE**

9

The Law and Practice of Commercial Arbitration

§37.02 .................................................................................................. 10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

In August of 2007, an ICC tribunal issued a Final Award ("Award") on defendant Kyocera's motion for summary adjudication by creating its own procedural standard instead of following California law as prescribed by the underlying arbitration agreement, the applicable Terms of Reference ("TOR")[1] and the ICC rules. The Tribunal denied all of LaPine's (or "Plaintiff, Claimant") claims. LaPine has motioned this Court to vacate that Award on the grounds that the panel exceeded its powers and manifestly disregarded the law. Defendant has cross-motioned the Court to confirm the Award under Chapter II of the Federal Arbitration Act, 9 U.S.C. § 201 *et. seq.* ("FAA"), and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, 300 U.N. 308 (the "Convention"). The issues before this Court are: (i) whether the Convention governs the Court's review of the Award; (ii) whether review is more properly based on Federal Arbitration Act, 9 U.S.C. § 10 ("FAA § 10") standards, express and implied, as contracted by the parties; and (iii) whether application of the Convention invalidates the arbitration agreement.

**I.    STATEMENT OF FACTS**

**A.    LaPine's Arbitration Request**

On November 14, 1986, LaPine Technology and Prudential instituted proceedings against Kyocera in the U.S. District Court for the Northern District of California claiming breach of contract (*see* Declaration of Brooke E. West in Support of Anthony N. LaPine's Motion to Vacate Arbitration Award, filed December 3, 2007 ("West Decl."), Ex. 7), which lawsuit was stayed after Kyocera's motion to compel arbitration pursuant to the Definitive Agreement, was granted. On December 14, 1990, Anthony N. LaPine filed a request for arbitration with the Secretariat of the International Chamber of Commerce ("ICC"). *Id.* On July 6, 1992, in agreement with LaPine's request and intent to conserve the Tribunal's resources, by procedural order, the Tribunal issued a stay ruling that proceedings of any matter of his case not commence until after a final award was issued in ICC No. 6070/BDG between Kyocera and Prudential. West Decl. Ex. 8.

---

[1]    Attached hereto as Exhibit A.

On August 25, 1994, the ICC issued a final award in the Prudential Arbitration.. Pursuant to the unanimous agreement of the parties, by communication of the Arbitral Tribunal on October 28, 1994, all proceedings in the arbitration were stayed in view of the proceedings before the US Federal Courts.  West Decl., Ex. 33,  ¶2.

On February 5, 2004, the Court Secretariat confirmed that all judicial or other action regarding awards rendered in the previous arbitration had become final.  West Decl., Ex. 33. Although the Secretariat attempted to contact LaPine's counsel to invite LaPine to comment on the constitution of the Arbitral Tribunal on or before March 2, 2004, unbeknownst to Plaintiff, his counsel had been disbarred and LaPine was not made aware of the Tribunal's request for several months.  West Decl., Ex. 11.

On August 18, 2004, LaPine wrote to the Tribunal stating he did not wish to withdraw his claims and expressed his intention to continue with the present proceedings.  West Decl., Ex. 12.  Although Kyocera argued that LaPine forfeited the right to press his claims by delaying the arbitration 16 years, the Tribunal disagreed stating: "Absent an agreement to terminate, the proceedings remain alive and the ICC Court will extend the delays for making the award on the merits." West Decl., Ex. 33, ¶79.

**B.    Arbitration Proceedings**

On June 30, 2006, Kyocera filed an Updated Answer and Counterclaim and simultaneously moved for summary adjudication on all of LaPine's claims, which LaPine opposed. West Decl., Ex. 17.  On September 18, 2006, LaPine, Kyocera and the members of the Arbitral Tribunal signed the Terms of Reference in accordance with Article 13 of the ICC Rules of Conciliation and Arbitration (in force as of January 1, 1988).  Ex. A.  The Terms of Reference provided for the laws of the State of California and the rules of the ICC to govern the arbitration both procedurally and substantively.  *Id.* at 2.

Additionally, the parties jointly submitted a proposed procedural schedule to the Tribunal on August 18, 2006. West Decl., Ex. 20.  The joint schedule first called for the Tribunal to address dispositive issues and second for the parties to exchange discovery on the remaining issues.  (West Decl., Ex. 20).  On January 23, 2007, the parties participated in a one-

day hearing where they argued their respective positions regarding Kyocera's Motion for Summary Adjudication. West Decl., Ex. 23, ¶27. The Tribunal extensively questioned Kyocera regarding the standards of review available to the Panel to decide the motion for summary adjudication. At the hearing, the Panel questioned the parties about the precedents for a summary adjudication proceeding in an international arbitration, as the Panel had not been able to find any such precedents. Nor could Kyocera's counsel provide any precedents that dealt with resolution of an international arbitration by motion for summary adjudication. West Decl., Ex. 23, 129:19-131:21.

By letter to the parties on April 11, 2007, the Chairman of the Panel informed the parties that the Tribunal intended to apply three standards (based on Rule 56 of the Federal Rules of Civil Procedure) when deciding the application for summary adjudication. West Decl. Ex. 26, ¶32. The Chairman invited the parties to comment no later than May 17, 2007. West Decl. Ex. 26, ¶32. On May 17, 2007, in accordance with the Tribunal's request, LaPine submitted a Response to the Tribunal's April 11, 2007 letter and a declaration of Anthony LaPine. West Decl., Exs. 27, 28. Kyocera responded to the Tribunal April 11, 2007 letter by stating it had nothing to add to the record. Only after receiving LaPine's May 17, 2007 Response did Kyocera indicate any interest in responding to the Tribunal's April 11, 2007 letter, by requesting a new opportunity to respond, which the Tribunal granted. Kyocera responded to the issues addressed in LaPine's May 17, 2007 submission and included several, but not all, of the documents LaPine addressed as relevant in his submission. West Decl., Ex. 30. The Tribunal exceeded its powers by applying these three standards that were contrary to the parties' express intent to be bound by California law pursuant to the Terms of Reference.

Not only did the Tribunal ignore the applicable California summary adjudication standards, but it failed to view the absence of documents not included on the record, as requested by LaPine in his Response to the Tribunal's April 11, 2007 letter as material to the proceedings. West Decl., Ex. 29. Thus, the proceedings closed without the possibility of LaPine to dispute the failure to include those documents in the record.

1

   C.    **The Tribunal's Award**

2     On August 29, 2007, the Tribunal issued the Final Award. West Decl., Ex. 33. First, as

3 mentioned above, the Tribunal declined to dismiss LaPine's claims for his delay in prosecution.

4 The Tribunal acknowledged applicable ICC procedural rules with regard to delay under Article

5 11 of the ICC Rules of Conciliation and Arbitration. The Tribunal then erred when it failed to

6 apply California law to its review of summary adjudication proceedings as provided for in the

7 Terms of Reference. Ex. A. Because the ICC was silent with regard to summary adjudication,

8 the Tribunal should have applied California summary judgment standards to reflect the parties'

9 intent to be bound by California law.

10    Second, the Panel incorrectly held that LaPine, although not required by California law,

11 did not make a *prima facie* showing of fraudulent misrepresentation or fraud-in-the-inducement

12 with regard to LaPine's fraud claims. West Decl., Ex. 33, ¶93. In spite of the several findings

13 in the prior arbitration of Kyocera's breaches, the panel held that none of the documents raised

14 in LaPine's Response to Tribunal's April 11, 2007 letter presented a genuine or material

15 disputed issue of fact. West Decl., Ex. 33, ¶93. In reaching this conclusion, the Panel applied

16 its own standards and rejected LaPine's argument that California law should govern the motion

17 for summary adjudication. West Decl., Ex 33, ¶95.

18    Third, the Tribunal manifestly disregarded the law by dismissing LaPine's claims for

19 lack of standing. Despite LaPine's claim under penalty of perjury that he first became aware he

20 had been damaged by Kyocera's conduct statement in March of 1988, the Panel found that

21 LaPine knew or should have known of Kyocera's fraudulent conduct before December 14,

22 1987. West Decl., Ex. 33, ¶98. The Tribunal erroneously found that class-action tolling applies

23 only where class certification is denied on numerosity, and that a related class action did not toll

24 the statute of limitations on Plaintiff's fraud claims. West Decl., Ex. 33, ¶103-104.

25    Fourth, even though Kyocera destroyed valuable consideration granted to LaPine by the

26 contract, the Panel erred in holding that LaPine lacked standing to pursue a damages claim for

27 Kyocera's intentional breach. West Decl., Ex. 33, ¶112. Without finding an express waiver, the

28

1    Panel also erroneously dismissed these claims on estoppel grounds.  West Decl., Ex. 33 ¶117-

2    123.

3    **II.    ARTICLE V OF THE CONVENTION DOES NOT GOVERN THIS COURT'S REVIEW OF THE AWARD**

4

5    **A.    Article V(1)(e) Allows This Court to Apply Domestic Arbitral Law and Its Full Panoply of Express and Implied Grounds for Relief**

6    Defendant has filed a Cross-Motion to Confirm Arbitral Award ("XMot.") in an effort to

7    have this Court confirm the Award under the Convention, which it raises for the first time. The

8    Award was rendered in the state of California and, at least partially, under the laws of

9    California.  Defendant now seeks to have the Award confirmed in a U.S. district court located in

10   California.  The Convention would only theoretically govern review of this Award if it were

11   properly brought before a court of competent jurisdiction in Japan.  An Award rendered by a

12   tribunal in the United States, or under the laws of the United States, and reviewed by a court in

13   the United States, is subject to United States domestic arbitral law.  Article V(1)(e); *see also,*

14   *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15 (2nd Cir. 1997).

15   *Toys "R" Us* involved a contract between an American-based toy retailer and a Kuwaiti

16   business. A dispute arose and the parties submitted to arbitration before the American

17   Arbitration Association.  Defendant *Toys "R" Us* lost, the Kuwaiti business moved to confirm

18   in a U.S. district court; *Toys "R" Us* cross-moved to vacate under the FAA, the district court

19   upheld the award in favor of the Kuwaiti business, and *Toys "R" Us* appealed.  In finding for

20   the Kuwaiti business, the appellate court performed a thorough analysis of the Convention,

21   including legislative history, its predecessor (the Geneva Convention), the opinions of

22   commentators, and precedent.  The court held:

23           In sum, we conclude that the Convention mandates very different regimes for
             review of arbitral awards (1) in the state in which, or under the law of which, the
24           award was made, and (2) in other states where recognition and enforcement are
             sought. The Convention specifically contemplates that the state in which, or
25           under the law of which, the award is made, will be free to set aside or modify an
             award in accordance with its domestic arbitral law and its full panoply of express
26           and implied grounds for relief.

27   *Id.* at 23.   The court based its holding on Article V(1)(e) which states: Recognition and

28   enforcement of the award may be refused where "[t]he award has not yet become binding on the

1    parties, or has been set aside or suspended by a competent authority of the country in which, or

2    under the law of which, that award was made."  Article V(1)(e).  This Court should adopt the

3    Second Circuit's interpretation of Article V(1)(e) and apply domestic arbitral law and all the

4    express and implied grounds for review therein.

5         Since some of the original cases interpreting the Convention, courts have tended toward

6    a narrowing of Article V.  *Toys "R" Us* makes the distinction clear:

7         Those courts holding that implied defenses were inapplicable under the
     Convention did so in the context of petitions to confirm awards rendered abroad.
8         These courts were not presented with the question whether Article V(1)(e)
     authorizes an action to set aside an arbitral award under the domestic law of the
9         state in which, or under which, the award was rendered.

10   126 F.3d at 20. Other courts have recognized the applicability of domestic arbitral law to awards

11   issued in the U.S. and vacated or confirmed in a United States court.  *See Lander Co. v. MMP*

12   *Invs.,* 107 F.3d 476, 481 (7th Cir. 1997) (observing "[n]othing in the Convention or its history,

13   or in the implementing legislation or its history, suggests exclusivity"); *Jacada (Europe), Ltd. v.*

14   *Int'l Mktg. Strategies, Inc.,* 255 F. Supp. 2d 744 (W.D. Mich. 2003), *aff'd* 401 F.3d 701  (6th

15   Cir. 2005) (citing *Toys "R" Us* and applying domestic arbitral law); *see also Int'l Standard*

16   *Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Indus. y Comercial*, 745 F. Supp. 172, 178

17   (S.D.N.Y. 1990) (deciding that only the state under whose procedural law the arbitration was

18   conducted has jurisdiction under Article V(1)(e) of the Convention to vacate the award, whereas

19   on petition for confirmation made in any other state, only the defenses to confirmation listed in

20   Article V of the convention are available); *cf Chromalloy Aeroservices v. Arab Republic,* 939 F.

21   Supp. 907, 909 (D.D.C. 1996) (citing Convention Article VII[2] and applying the FAA

22   concurrently in a motion to confirm in a U.S. district court an Egyptian arbitral award rendered

23   under Egyptian law).

24

25

26   _____

27   [2]    "The provisions of the present Convention shall not . . . deprive any interested party of
     any right he may have to avail himself of an arbitral award in the manner and to the extent
28   allowed by the law . . . of the country where such award is sought to be relied upon."
     Convention Article VII.

1    Moreover, the parties specifically contracted for review under the FAA. Exclusive

2    review under Article V is nowhere to be found in the parties' arbitration agreement or the TOR.

3    West Decl., Ex. 3, ¶8.10 and Ex. A at 2. The parties specifically contemplated that this Court

4    "shall vacate, modify, or correct any award: (i) based upon *any* of the grounds referred to in the

5    Federal Arbitration Act, (ii) where the arbitrators [sic] findings of fact are not supported by

6    substantial evidence; or (iii) where the arbitrator's [sic] conclusions of law are erroneous." Ex.

7    A at 2.[3]  Furthermore, the Convention speaks only to confirming awards and is silent on

8    vacating or modifying awards, with the exception of the implied references under Article

9    V(1)(e) and Article VII. As the Convention is silent on vacating and modifying, the parties

10   could only have contemplated the review procedures under Chapter I of the FAA. Furthermore,

11   nothing in the Definitive Agreement supports an argument that the parties agreed to waive their

12   rights to vacate, modify, or correct an award under the FAA.

13   Because the parties agreed that review of the Award would proceed before a U.S. court,

14   the stronger presumption increases in favor of a finding that the parties intended domestic

15   arbitral law to govern review of any Award. Therefore, the grounds for confirming an award

16   under the Convention are not exclusive, and the grounds for vacatur under the FAA apply to this

17   award.

18   **B.    Defendant's Cases Are Not Persuasive**

19   Defendant's cases in support of its argument that Convention Article V provides the

20   exclusive grounds for review are distinguishable or inapposite. Defendant cites *Mgmt. & Tech.*

21   *Consultants S.A. v. Parson-Jurden Int'l Corp.*, 820 F.2d 1531, 1533-34 (9th Cir. 1987) to claim

22   that Article V provides the exclusive grounds for review of a non-domestic arbitral award. This

23   case is unpersuasive for several reasons. First, *Parson-Jurden* relies on *Fotochrome, Inc. v.*

24

---

25   [3]    The parties also contracted for expanded judicial review in their arbitration agreement.
     West Decl., Ex. 3 at ¶8.10. On March 25, 2008, the U.S. Supreme Court issued a decision in
26   *Hall Street Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. ____ (2008), 127 S. Ct. 2875 (2007). The
     Court held that the statutory grounds in the FAA, 9 U.S.C. § 1 *et seq.*, provide for judicial
27   review to confirm, vacate or modify arbitration awards that may not be supplemented by
     contract. *Id.*, 1. Although LaPine recognizes several distinguishing factors although the Supreme
28   Court's decision, LaPine no longer advances arguments raised in his motion to vacate award
     based on grounds for expanded judicial review.

1  *Copal Co.*, 517 F.2d 512, 519 (2nd Cir. 1975) for the proposition that under the Convention, an

2  arbiter's award can be vacated only on the grounds specified in Article V. However,

3  *Fotochrome* involved a Japanese corporation confirming in the U.S. an award that was *rendered*

4  *in Japan*. *Id.* at 514. Conversely, *Parson-Jurden* confirms in the U.S. an award that was

5  *rendered in the U.S.* Thus, the Second Circuit's *Fotochrome* decision does not support *Parson-*

6  *Jurden*. Several years later, the Second Circuit held in *Toys "R" Us* that this distinction makes

7  Convention Article V inapplicable to the facts of *Parson-Jurden*. Second, *Parson-Jurden* does

8  not analyze the applicability of Article V(1)(e). Third, *Parson-Jurden* only provides a

9  superficial analysis of the Convention and the applicability of domestic arbitral law. If *Parson-*

10  *Jurden* teaches anything, it is that the Ninth Circuit frequently looks to the Second Circuit for

11  guidance on the Convention.

12        Likewise, *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.,* 379 F.3d

13  796 (9th Cir. 2004) is distinguishable. Apex sought U.S. confirmation of an award *rendered in*

14  *China* after a Chinese court had already rejected a motion to vacate. *Id.* at 799. The *Apex* court

15  does not address the applicability of Article V(1)(e) and offers no help to Defendant.

16        *Woodchem v. D.B. Western, Inc.*, No. 01-132-HO, 2001 U.S. Dist LEXIS 25290 (D. Or.

17  Nov. 2, 2001) is an erroneous decision from Oregon that has no binding effect on this Court.

18  First, in support of its conclusion that "the Ninth Circuit has not expanded the reading of the

19  Convention for foreign arbitration awards," *Id.* at *15-*16, the court cites *Ministry of Def. of*

20  *Islamic Republic v. Gould, Inc.,* 969 F.2d 764 (9th Cir. 1992) in which the Ninth Circuit once

21  again turns to the Second Circuit for guidance, and once again cites to the already distinguished

22  case, *Fotochrome,* 517 F.2d 512. *Gould,* 969 F.2d at 770. It also relies on *Parsons &*

23  *Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969

24  (2nd Cir. 1974) which predates *Toys "R" Us* by more than 20 years, and which fails to address

25  Article V(1)(e). *Id.* at 977.

26        Second, *Woodchem* wrongly interprets *Toys "R" Us* to have three holdings, and

27  mischaracterizes the true holding of the case.[4] *Woodchem,* 2001 U.S. Dist. LEXIS 25290, at

28

---

[4]      "First, *Toys "R" Us* held that an arbitral award made within the United States involving

- 8 -  PLAINTIFF'S OPP. TO DEF'S CROSS-MOTION
TO CONFIRM ARBITRAL AWARD
Case No. CV-07-06132 MHP

1   *10, citing *Toys "R" Us,* 126 F.3d at 19-22.  The first holding is not a holding at all, the court

2   merely applies its own holding from another case, *Bergesen v. Joseph Muller Corp.*, 710 F.2d

3   928, 932 (2nd Cir. 1983), to the facts to find that the Convention applies.  *Id.*  The purported

4   second holding is a complete mischaracterization of the actual holding.  The court merely joins

5   in agreement with other courts that "…in an action to confirm an award *render in, or under the*

6   *law, of a foreign jurisdiction*, the grounds for relief enumerated in Article V of the Convention

7   are the only grounds available for setting aside an arbitral award." *Toys "R" Us,* 126 F.3d at 20

8   (emphasis added).  Finally, the purported third holding would limit vacatur to "any other ground

9   accepted by the Federal Arbitration Act." *Woodchem*, 2001 U.S. Dist. LEXIS 25290, at *10.  In

10  truth, the correct holding is much broader: "domestic arbitral law and its full panoply of express

11  and implied grounds for relief." *Toys "R" Us,* 126 F.3d at 23.

12      Third, none of the other Circuit opinions examined in *Woodchem* directly address the

13  applicability of domestic arbitral law under Article V(1)(e).  2001 U.S. Dist. LEXIS 25290, at

14  *13-*15.  Fourth, in addressing Seventh Circuit opinions, *Woodchem* fails to include *Lander*,

15  *supra*.  In sum, these difficult issues demand precision, and it is clear that this Court should not

16  base its decision on *Woodchem*.

17      *Industrial Risk Insurers v. M.A.N Gutenhoffnungshutte GmbH*, 141 F.3d 1434 (11th Cir.

18  1998) involved an arbitral award rendered in the United States under U.S. law and reviewed in a

19  U.S district court.  *Id.* at 1448-49.  Like *Woodchem, Industrial Risk Insurers* mischaracterizes

20  the holding in *Toys "R" Us*. *Id.* at 1446.  It also fails to address Article V(1)(e).  *Id.*

21      Kyocera contracted with LaPine in the Definitive Agreement to permit review of this

22  Award on the grounds enumerated in FAA, as well as for erroneous conclusions of law.  West

23  Decl., Ex. 3, ¶8.10.  Nothing in the contractual language between the parties, nor case law,

24

25  conduct and contract performance in a foreign country is considered a non-domestic award
    governed by the Convention. *Id.* at 19.  Second, it held that the seven grounds for vacating an

26  arbitral award enumerated in Article V of the Convention are exclusive.  *Id.*  Finally, and most
    significantly here, the court held that United States courts are not limited to the seven grounds

27  enumerated in Article V when vacating non-domestic awards rendered in the United States.  *Id.*
    at 19-22.  In other words, when a court is asked to vacate a non-domestic arbitral award

28  rendered in the United States, it may do so on any of the seven grounds listed in Article V, or it
    may apply any other ground accepted by the Federal Arbitration Act."

1  limits exclusive review of the Award to Article V.  The Ninth Circuit has yet to address the

2  applicability of Article V(1)(e) to awards rendered in the U.S., or under U.S. law, and reviewed

3  in the U.S.  Therefore, this Court should follow the Second Circuit, as it has in the past when

4  interpreting the Convention, and apply *Toys "R" Us* in finding that domestic arbitral law,

5  express and implied, applies to the review of this Award.

6         **C.**      **Confirmation of This Award Is Premature and May Not Result In**

7                 **Automatic Judgment**

8        Kyocera argues that confirmation of an arbitration award is a "summary proceeding"

9  that results in an automatic judgment on the award. (XMot. at 12).  Kyocera relies on *Woods v.*

10  *Saturn Distribution Corp.,* No. SA CV 94-327-LTL (RWR), 1994 U.S. Dist. LEXIS 21471

11  (C.D. Cal. May 31, 1994) citing *Florasynth, Inc. v. Pickholtz,* 750 F.2d 171 (2nd Cir. 1934) a

12  Second Circuit case, to support its holding.  For reasons stated below, this language is not

13  binding on this Court and should not be considered in the Court's ruling.

14        In *Woods*, plaintiff brought a motion to vacate arbitration award under 9 U.S.C.

15  §10(a)(2) which provides for vacatur due to evident partiality or corruption of an arbitrator.  In

16  his opposition, plaintiff requested a hearing on defendant's motion to confirm to allow him time

17  to conduct discovery "with respect to the alleged impartiality."  The court held that plaintiff did

18  not demonstrate that the court had the power to continue a motion to confirm an arbitration

19  award to allow time for discovery.  The court reasoned that to continue a motion to confirm to

20  allow time for discovery would conflict with the policy of the FAA. 1994 U.S. Dist. LEXIS

21  21471, at *21-*23.

22        *Woods* is distinguishable in several respects.  First, the language Kyocera relies upon to

23  determine that confirmation of an award is a "summary proceeding" is from a 1968 legal journal

24  regarding the law and practice of commercial arbitration, which is a secondary source that is not

25  binding on this Court.  "First, the confirmation of an arbitration award is a summary proceeding

26  *that merely makes what is already a final arbitration award a judgment of the court.*"  M.

27  Domke, *The Law and Practice of Commercial Arbitration* §37.02 (1968) cited in *Woods*, 1994

28  U.S. Dist. LEXIS 21471, at *22.

1    Second, the court in *Woods* first had to determine that no evidence supported plaintiff's

2   allegations of evident partiality of the arbitration before it could confirm the award. Only after

3   the court determined no facts supported plaintiff's argument for continuation of a motion to

4   confirm to allow time for discovery, did the court grant defendant's motion to confirm. Here,

5   LaPine has presented viable issues to be considered on his motion to vacate arbitration award.

6   Before the Court may even consider whether the Award should be confirmed, it must first

7   decide on LaPine's motion to vacate. Article V(1)(e).

8    Therefore the Court must reject Kyocera's inference that the confirmation of an

9   arbitration award is a summary proceeding resulting in automatic judgment on the Award

10  without first considering and ruling on LaPine's motion to vacate.

11    **D.    In the Alternative, Should the Court Find that Article V Applies Exclusively
         to Review of This Award, the Award Still Cannot Be Confirmed Under
12       Article V**

13        **1.    Article V(1)(b)**

14    Convention Article V(1)(b) states: "[t]he award may be refused [where] the party against

15  whom the award is invoked… was otherwise unable to present his case." It is appropriate to

16  vacate an arbitral award if the exclusion of relevant evidence deprives a party of a fair hearing.

17  *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364

18  F.3d 274, 300-01 (5th Cir. 2004). "[T]he defense provided for in Article V(1)(b) 'essentially

19  sanctions the application of the forum state's standards of due process,' and that due process

20  rights are 'entitled to full force under the Convention as defenses to enforcement.'" *Iran*

21  *Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145-46 (2nd Cir. 1992) citing *Parsons &*

22  *Whittemore Overseas Co.*, 508 F.2d at 975-76. "A hearing is fundamentally fair if it meets 'the

23  minimal requirements of fairness' - - adequate notice, a hearing on the evidence, and an

24  impartial decision by the arbitrator." *Sunshine Mining Co. v. United Steelworkers of America,*

25  *etc.*, 823 F.2d 1289, 1295 (9th Cir. 1987).

26    Here, the arbitral award was made in a proceeding without precedent. Never before had

27  summary adjudication occurred in an international arbitration. In this unprecedented

28  proceeding, by denying LaPine discovery and thus a hearing on all the evidence, the tribunal

1   denied him the full force of his due process rights under the law.  Defendant's argument that

2   consent to arbitration is somehow a waiver of the ability to hear the full record of evidence

3   following a proper opportunity for discovery is inapposite.  Defendant fails to cite authority to

4   support its position that arbitration deprives LaPine of his constitutional due process rights.

5          Furthermore, the parties stipulated to an evidentiary hearing, and LaPine requested

6   documents from Kyocera that Kyocera never produced and the panel never examined.

7   Plaintiff's Motion to Vacate Arbitration Award ("MTV") at 24-25.  Also, the panel refused to

8   accept as evidence LaPine's declaration in response to the Tribunal's April 11, 2007 letter.

9   West Decl., Ex. 28.  Therefore, LaPine was unable to present his case by being deprived of a

10  hearing on the evidence in a proper manner, and for this reason the Award must be vacated.

11                         **2.    Article V(1)(c)**

12         Defendant contends that the Award may not be denied confirmation on the ground that it

13  was "not in accordance with the agreement of the parties" pursuant to Article V(1)(d).  (Xmot.

14  at 13-16).  LaPine believes this argument is addressed more accurately under Article V(1)(c),

15  since the submission of the parties includes the TOR and the Definitive Agreement.

16         Convention Article V(1)(c) states: "[t]he award may be refused … [where] the award

17  deals with a difference not contemplated by or not falling within the terms of the submission to

18  arbitration."  Article V(1)(c).  This "is a defense under both the Federal Arbitration Act and the

19  Convention.  *Compare* 9 U.S.C. §§ 10(a)(4), 11(b), *with* Article V1(c) of the Convention.  The

20  wording is slightly different but there is no reason to think the meaning different." *Lander,* 107

21  F.3d at 481 *accord Industrial Risk Insurers*, 141 F.3d at 1443, n.10.  Given this interpretation,

22  and to conserve judicial resources, LaPine incorporates by reference his FAA § 10(a)(4)

23  argument (*infra* § III.A.) here.

24  **III.    THE AWARD MUST BE VACATED UNDER THE FAA**

25         Kyocera contends that the Award should not be vacated under Chapter I of the FAA

26  because the Award was issued in an international arbitration.  However, Kyocera has taken full

27  advantage of the use of domestic law both in this proceeding and in the prior *Prudential* case,

28

1    *Kyocera Corp. v. Prudential-Bache T. Servs.*, 341 F.3d 987, 990-91 (9th Cir. 2003)[5].   This

2    Award was rendered in the State of California, under California law and now Defendant seeks

3    to have its motion confirmed in a U.S. district court located in California.   Moreover, the parties

4    did not contract for Article V of the Convention to govern this arbitration.   The parties have

5    specifically contemplated that Chapter I of the FAA would apply to this arbitration, which

6    provides grounds to vacate when arbitrators 1) exceed their powers or 2) manifestly disregard

7    the law.   Ex. A at 2; West Decl., Ex. 3, ¶8.

8           **A.**     **The Arbitral Panel Exceeded Its Powers**

9          As the Supreme Court has recognized, arbitration is a matter of consent and the parties'

10   desires regarding the manner in which they want to resolve disputes must be respected.   *Volt*

11   *Info. Scis. v. Bd. of Trs.,* 489 U.S. 468, 479 (1989) ("Arbitration under the Act is a matter of

12   consent, not coercion, and the parties are generally free to structure their arbitration agreements

13   as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may

14   they specify by contract the rules under which that arbitration will be conducted.") (citations

15   omitted.)   Chapter I of the FAA, which is applicable to this case, permits a court to vacate a

16   domestic arbitration award when, *inter alia*, the arbitrators exceed their powers.   9 U.S.C. §10.

17   Arbitrators "exceed their powers" under § 10(a)(4) when they "rule on a matter not submitted to

18   them, or act outside the scope of the parties' contractual agreement." *Michigan Mut. Ins. Co. v.*

19   *Unigard Sec. Ins. Co.,* 44 F.3d 826, 830 (9th Cir. 1995).   When an arbitrator's authority is

20   derived from an agreement of the parties, the arbitration should neither exceed that authority nor

21   do less than is required to exercise that authority completely.   *Mastrobuono v. Shearson Lehman*

22   *Hutton,* 514 U.S. 52 (1995).   Moreover, where arbitrators simply ignore a contract it may be

23   determined that they exceeded their powers pursuant to 9 U.S.C. §10(d). *Barnes v. Logan*, 122

24   F.3d 820 (9th Cir. 1997).

25   //

26   //

27

28       [5]    Kyocera argued for vacatur under FAA § 10 (a)(4) and for expanded review under the
Definitive Agreement and Terms of Reference.

## B.    The Tribunal Manifestly Disregarded the Law

The Ninth Circuit has held that a district court may review and vacate an arbitration award, essentially adding another standard under FAA § 10, when the award itself is irrational or exhibits a manifest disregard of the law.  *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003).    When, as here, the Tribunal demonstrates a clear manifest disregard of the law by failing to base its decision on the foundation of the parties' agreement, the Court must vacate or modify the award as appropriate.  *See e.g. Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 203 (1956).  Any time an arbitral decision involves a contractual interpretation, the court must defer to the decision which draws its essence from the agreement. *George Day Constr. Co. v. United Bhd. of Carpenters & Joiners, Local 354*, 722 F.2d 1471, 1477 (9th Cir. 1983).  When there is a well-defined legal principle and clearly applicable case law that the arbitrators manifestly disregarded, a court may vacate the arbitration award.  *Vu Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109 (9th Cir. 2004); *Todd Shipyards Corp. v. Cunard Line*, 943 F.2d 1056, 1059-60 (9th Cir. 1991) (suggesting that this ground really defines 9 U.S.C. §10(a)(4)).

As stated above in § II.B., Kyocera incorrectly relies on *Woodchem* to support its position that manifest disregard does not apply to this arbitration award.  *Woodchem*, 2001 U.S. Dist. LEXIS 25290.    The facts of this case are completely opposite to *Woodchem*, which involved a petitioner who did not file a motion to vacate arbitration award.  Contrary to our case, *Woodchem* waited for respondent to file a motion to confirm and when it tried to utilize the protections of manifest disregard, the court held *Woodchem* was confined to the defenses under the Convention which applied to defendant's confirmation of the award.

Although the Ninth Circuit has not directly dealt with the issue of whether manifest disregard applies to vacate a foreign arbitral award, courts generally look to the Second Circuit holding in *Toys "R" Us* which permits manifest disregard as a defense in foreign awards. Moreover, the Ninth Circuit has consistently held that the manifest disregard standard is considered an extension of the FAA under 9 U.S.C. §10(a)(4).  *Todd Shipyards*, 943 F.2d at 1059-60.

1    LaPine has contracted for Chapter I of the FAA to apply to this arbitration proceeding.

2    Additionally, manifest disregard has consistently been considered a standard under the FAA and

3    by the Ninth Circuit in domestic proceedings, by which a district court may review and vacate

4    an award. Manifest disregard applies to this case.

5    **IV.    SHOULD THE COURT FIND THAT CONVENTION ARTICLE V APPLIES**
     **EXCLUSIVELY,     THE     ARBITRATION     AGREEMENT     MUST     BE**
6    **INVALIDATED**

7        **A.    Review Under "Any of the Grounds Referred to in the Federal Arbitration**
             **Act" and the Expanded Review Clause Are Integral Components of the**
8            **Arbitration Agreement**

9        The consent to arbitrate depended on having a judicial safety net, which is now

10   unavailable, so the parties' original consent to arbitrate is no longer valid. The arbitration

11   agreement, which included the TOR, was a carefully crafted and bargain-for dispute resolution

12   procedure designed to ensure that the arbitrators' decisions could be vacated, modified, or

13   corrected "(1) based upon ***any*** of the grounds referred to in the Federal Arbitration Act, (ii)

14   where the arbitrators [sic] findings of fact are not supported by substantial evidence; or (iii)

15   where the arbitrator's [sic] conclusions of law are erroneous." Ex. A at 2; *see also Coast*

16   *Trading Co. v. Pacific Molasses Co.*, 681 F.2d 1195, 1198 (9th Cir. 1982) (arbitrators' authority

17   derives from both the original arbitration agreement and the terms of reference).

18       In fact, Kyocera made this exact argument in *Prudential*, which interpreted the identical

19   clause that is at issue here.   Kyocera's position regarding the severability of the expanded

20   review clause has been permanently cemented in this Circuit's case law:

21           Kyocera  is of the view that the scope of review clause as included in the
             Arbitration Agreement is an integral part of the arbitration provision, and there is
22           no basis to suppose that the parties would have agreed to arbitrate at all, absent
             that provision.
23
     *LaPine Tech. Corp. v. Kyocera Corp.*, 909 F. Supp. 697, 706 (N.D. Cal. 1995).
24
             Kyocera argues that federal court review on the basis of the expanded terms of
25           section  8.10(d)(ii)-(iii) of the "Definitive Agreement" was integral to any
             agreement, and that it would never have agreed to arbitrate at all if expansive
26           review were precluded.

27   *Prudential* (*en banc*), 341 F.3d at 1000.

28

1    Kyocera maintained this position throughout the entire course of litigation in *Prudential*.

2    It should not now be allowed to reverse its position regarding the same clause in the same

3    agreement.    Furthermore, Kyocera's support for the invalidation of the entire arbitration

4    agreement is the distinguishing factor between the *Prudential* case in which the court severed

5    the judicial review clause, and the case at bar.    Here, both parties are in agreement that they

6    would never have entered into the arbitration agreement if expansive review were precluded. In

7    *Prudential,* only Kyocera maintained that position.    *LaPine Tech. Corp.,* 909 F. Supp. at 706.

8    Therefore, by invalidating the arbitration agreement, the Court would be carrying out the will of

9    the parties and acting in accordance with the law.    It would be the most equitable remedy

10    available under the circumstances.

11    The case at bar is even more distinguishable.    The argument for invalidation is stronger

12    here because Kyocera also argues that LaPine should be denied review under Chapter I of the

13    FAA, where as in *Prudential,* Kyocera only sought invalidation for severance of the expanded

14    review clause. With neither Chapter I of the FAA, nor expanded review, the arbitration

15    agreement is meaningless, inconsistent with the parties' intent, and must be invalidated.

16    Kyocera and LaPine agreed to arbitrate all disputes arising out of their dealings so long

17    as the Award was reviewable under the FAA, and for erroneous conclusions of law and where

18    findings of fact are not supported by substantial evidence.    *See* West Decl., Ex. 3, ¶8.10 and Ex.

19    A at 2.    To now deny these integral review procedures and bind LaPine to an award full of

20    errors is to run amuck of the original bargained-for agreement to arbitrate and bind the parties to

21    a contract they did not contemplate.    Furthermore, Kyocera had an opportunity to secure the

22    validity of the arbitration agreement by amending the TOR as late as September 2006 to include

23    a provision mandating the enforceability of the arbitration agreement in the event expanded

24    judicial review were made unavailable.[6]

25

26    _____
    [6]    *See* Ronald M. Greenberg, *Uncertain Appeal: Both Opponents and Advocates of*

27    *Expanded Judicial Review of Arbitration Decisions Invoke the Intent of the Federal Arbitration Act*, 25 L.A. Law. 35, 41 (2002) (advising that parties who now have agreements for arbitration

28    that contain an enhanced judicial review provision should, if they still want arbitration in the event the judicial review provision is found unenforceable, so specify in an amendment to their arbitration agreements).

1

**B.**    **Under California and Federal Law, the FAA and Expanded Judicial Review Clauses Cannot Be Severed and Failure or Inability to Apply Them Renders the Arbitration Agreement Void**

2

3    The parties chose California law to govern their contract.  *See* West Decl., Ex. 3, ¶8.6.

4    California law forbids severance when the provision at issue is an integral part of the contract

5    and is supported by the same consideration as the remainder of its terms.  *See IMO Dev. Corp.*

6    *v. Dow Corning Corp.*, 135 Cal. App. 3d 451, 458-59 (1982) (waiver provision could not be

7    severed from balance of contract where defendant agreed to sell plaintiff land and to loan funds

8    only if plaintiff would waive preexisting claims against defendant).  The language of the parties'

9    written agreement governs whether the contract is "divisible" or "entire," and therefore whether

10    a provision may be severed without destroying the entire contract.  *IMO,* 135 Cal. App. 3d at

11    458-59; *Yeng Sue Chow v. Levi Strauss & Co.,* 49 Cal. App. 3d 315, 326 (1975).

12    To determine whether the parties' contract to arbitrate is divisible, *i.e.* whether there was

13    separate consideration for the judicial review clause, the district court should review the entire

14    agreement, including the TOR.  *Ottley v. Schwartzberg*, 819 F.2d 373 (2nd Cir. 1987)

15    (arbitration agreement and submission agreement define scope of arbitration powers).  In the

16    parties' agreement, the FAA and expanded judicial review clauses are intertwined with the

17    arbitration provision.  Neither party paid separate consideration for either the FAA or expanded

18    judicial review clauses.  Furthermore, neither the Definitive Agreement nor the TOR contain a

19    severability or savings clause, and the agreement was integrated.  Therefore, under California

20    law, the FAA and expanded judicial review clauses are not severable and the arbitration

21    agreement is void without their enforcement.

22    *Prudential*'s decision to sever the expanded review clause is also distinguishable under

23    the law.  In California, the court's authority to sever an offending contract provision is provided

24    by statute, which states that "[i]f the court as a matter of law finds . . . any clause of the contract

25    to have been unconscionable at the time it was made the court may refuse to enforce the

26    contract, or it may enforce the remainder of the contract without the unconscionable clause."

27    Cal. Civ. Code § 1670.5(a).  The purpose of severing an offending provision is to prevent an

28    undeserved benefit/detriment that may result if the court were to void the entire agreement and

1   to conserve the contractual relationship. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1074

2   (2003), quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 123-24

3   (2000).   In determining whether to sever, courts should determine whether the illegality

4   concerns a central purpose or a collateral issue. *Little,* 29 Cal. 4th at 1074.  Where the illegality

5   concerns the central purpose, then courts will not enforce the agreement. *Id.*  However, where

6   the illegality concerns a collateral issue and the offending provision can be removed, then

7   severance is appropriate. *Id.*

8          It is appropriate to consider the number of illegal provisions in the arbitration agreement

9   in determining whether the arbitration agreement should be enforced.   For example, "[a]n

10  employment arbitration agreement can be considered permeated by unconscionability if it

11  'contains more than one unlawful provision.'"  *Murphy v. Check 'N Go of California, Inc.*, 156

12  Cal. App. 4th 138, 149 (2007), citing *Armendariz,* 24 Cal. 4th at 122.

13         In *Little*, the court noted that the arbitration agreement did not appear to be bilateral in

14  that the employee was obligated to arbitrate any claims he may have against the employer, but it

15  was not clear whether the employer was obligated to arbitrate any of its claims against the

16  employee.  Notwithstanding this fact, the court only considered whether to sever a provision of

17  the arbitration agreement whereby an appeal of any award greater than $50,000 would be

18  reviewed by a second arbitrator, rather than the courts.  The court found this to unilaterally

19  favor the employer and deemed the provision unconscionable.   Ultimately, the court

20  distinguished from *Armendariz* because in *Little*, only one provision of the arbitration

21  agreement was unenforceable and because the court would not have to add new terms to the

22  arbitration agreement.  Rather, it could cure any defect by excising the offending term from the

23  arbitration agreement.

24         The *Prudential* court relied heavily on *Little*.  *Prudential,* 127 F.3d at 1000-03.  Here,

25  the Court would essentially be denying the enforcement of two critical review provisions: FAA

26  Chapter I and expanded review.  By refusing to give effect to the parties' explicit desire that the

27  arbitration be governed by Chapter I of the FAA, the court has implicitly deemed that provision

28  unenforceable.  The result would be no different if the provision were deemed illegal, as the

1    U.S. Supreme Court has done with respect to the expanded judicial review provision in *Hall*

2    *Street Assocs.,* 2008 U.S. LEXIS 2911.  Accordingly, consistent with *Murphy,* the Court should

3    *not* sever the "offending" provisions because the Court would be denying effect to more than

4    one provision of the arbitration agreement.

5            The FAA and expanded judicial review clauses are not severable under federal law

6    either.  The Supreme Court has made abundantly clear that arbitration agreements must be

7    enforced as written by the parties.  *See Info,* 489 U.S. at 478 (the FAA "requires courts to

8    enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with

9    their terms"); *W. Employers Ins. Co. v. Jefferies & Co.,* 958 F.2d 258, 262 (9th Cir. 1992) (a

10   party should not be "held to the terms of a contract for which it did not bargain").

11           The Ninth Circuit addressed severability of an arbitration agreement in *Graham Oil Co.*

12   *v. ARCO Prods. Co.*, 43 F.3d 1244 (9th Cir. 1994).  The court noted "[i]t is a well-known

13   principle in contract law that a clause cannot be severed from a contract when it is an integrated

14   part of the contract."  *Id.* at 1248.  The court declined to sever the provisions pertaining to

15   exemplary damages and struck the arbitration agreement from the contract.  The court stated

16   that an arbitration agreement is a "highly integrated unit," establishing a "unified procedure for

17   handling all disputes" in which the "unlawful provisions are all a part of that overall procedure,"

18   and, thus, the arbitration agreement "must be treated as a whole and that its provisions are not

19   severable." *Id.* at 1248-49.

20           Here, the parties agreed to submit their disputes to a non-judicial body that would make

21   a determination, which would then be subject to substantial judicial review.  Without the review

22   specified by the parties, there is no agreement to arbitrate.  Therefore, under both California and

23   federal law, if the parties' agreement to judicial review under domestic law is not enforced, then

24   the Court must find that the arbitration agreement is invalid.

25   //

26   //

27   //

28   //

1

**CONCLUSION**

2    For all the foregoing reasons this Court should deny Defendant's Cross-Motion to

3 Confirm the Arbitral Award.

4 DATED:  March 31, 2008       Respectfully submitted,

5            GERGOSIAN & GRALEWSKI LLP
              EDWARD M. GERGOSIAN
6            ROBERT J. GRALEWSKI, JR.
              BROOKE E. HODGE

7

8             /s/ Edward M. Gergosian
              EDWARD M. GERGOSIAN
9            ed@gergosian.com

10           655 West Broadway, Suite 1410
             San Diego, CA  92101

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

3

I certify that I am at least 18 years of age, and not a party to this action.  My business

4

address is 655 West Broadway, Suite 1410, San Diego, California 92101.

5

On March 31, 2008, the following document was filed electronically with the Clerk of

6

Court using the CM/ECF system which will send an electronic notice to all parties registered for

7

electronic filing in this case:

8

**OPPOSITION TO DEFENDANT KYOCERA CORPORATION'S
CROSS-MOTION TO CONFIRM ARBITRAL AWARD**

9

I declare under penalty of perjury under the laws of the United States of America that

10

the foregoing is true and correct.

11

DATED: March 31, 2008                      /s/ Johanna Cervantes
                                                          Johanna Cervantes

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28