Simon J. Frankel, SB # 171552
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:    (415) 591-6000
Facsimile:    (415) 591-6091
sfrankel@cov.com

Eugene D. Gulland (*pro hac vice*)
Donald J. Ridings Jr. (*pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004-2401
Tel: (202) 662-6000
Fax: (202) 662-6291

Attorneys for Defendant
KYOCERA CORPORATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANTHONY N. LAPINE,<br><br>                    Plaintiff,<br><br>        v.<br><br>KYOCERA CORPORATION,<br><br>                    Defendant. | Civil Case No.:  3:07-cv-06132-MP<br><br>**DEFENDANT KYOCERA CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS CROSS-MOTION TO CONFIRM ARBITRAL AWARD**<br><br>Date:          April 28, 2008<br>Time:         2:00 p.m.<br>Courtroom:   15<br><br>Hon. Marilyn H. Patel |

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

I.    THE CONVENTION GOVERNS REVIEW OF THE AWARD. ................................... 3

II.   THERE IS NO BASIS FOR DECLINING TO CONFIRM AND ENFORCE
      THE AWARD .......................................................................................................... 6

      A.    The Tribunal did not "exceed its powers." .......................................... 7

      B.    The Tribunal did not deprive LaPine of an opportunity to present his
            case. ....................................................................................................... 7

III.  THE ARBITRATION AGREEMENT IS VALID ......................................................... 9

CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)................................................................8

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000)....................11

*Association of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078
 (E.D. Cal. 2006)............................................................................................................................9

*Burton v. Bush*, 614 F.2d 389 (4th Cir. 1980) ............................................................................8

*Cedano-Viera v. Ashcroft*, 324 F.3d 1062 (9th Cir. 2003) ........................................................9

*China National Metal Prod. Import/Export Co. v. Apex Digital, Inc.*, 379 F.3d 796 (9th
 Cir. 2004)......................................................................................................................................3

*Collins v. D. R. Horton, Inc.*, 505 F.3d 874 (9th Cir. 2007)......................................................5, 6

*Fortier v. Morgan Stanley DW, Inc.*, 2006 WL 3020926 (N.D. Cal. Oct. 23, 2006) ....................6

*French v. Merrill Lynch*, 784 F.2d 902 (9th Cir. 1986)...............................................................1

*Goodman v. CIBC Oppenheimer & Co.*, 131 F. Supp. 2d 1180 (C.D. Cal. 2001) ........................6

*Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244 (9th Cir. 1995)......................................11

*Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. ___, 2008 WL 762537 (2008)..........1, 5, 6

*Industrial Risk Insurance v. M.A.N. Gutehoffnungshutte*, 141 F.3d 1434 (11th Cir. 1998)........4, 6

*Jacada (Europe) Ltd. v. International Marketing Strategies*, 401 F.3d 701 (6th Cir.
 2005)..............................................................................................................................................4

*Jain v. de Mere*, 51 F.3d 686 (7th Cir. 1995) ............................................................................4

*Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987 (9th Cir. 2003) .......10, 11

*Little v. Automobile Stiegler, Inc.*, 29 Cal. 4th 1064 (2003).......................................................11

*Management & Technical Consultants S.A. v. Parsons-Jurden International Corp.*, 820
 F.2d 1531 (9th Cir. 1987)..............................................................................................................5

*Ministry of Defense of Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764 (9th Cir.
 1992)..............................................................................................................................................6

*Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054 (11th Cir. 1998) ..............................8

*Wilko v. Swan*, 346 U.S. 427 (1953)............................................................................................5

*Woodchem Europe, S.A. v. D.B. Western, Inc.*, 2001 U.S. Dist. LEXIS 25290
(Nov. 2, 2001)................................................................................................................4

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys R' Us, Inc.*, 126 F.3d 15 (2d Cir. 1997) ...........4, 5

**STATUTES**

9 U.S.C. § 10 .................................................................................................................2, 7

9 U.S.C. § 202 ...............................................................................................................3

9 U.S.C. § 207 ...............................................................................................................3

9 U.S.C. § 1 *et seq.* ........................................................................................................3

9 U.S.C. § 201 *et seq.* ....................................................................................................3

9 U.S.C. § 301 *et seq.* ....................................................................................................3

**<u>INTRODUCTION</u>**

The Supreme Court's March 2008 decision in *Hall Street Associates, L.L.C.* v. *Mattel, Inc.*, 552 U.S. ___, 2008 WL 762537 (2008), eliminates LaPine's principal basis for challenging the Award. *Hall Street* confirms that federal courts may not conduct "expanded judicial review" of arbitral awards that are governed by the Federal Arbitration Act (FAA), because the FAA's statutory grounds for review of awards are exclusive. *Id*. at *4. *Hall Street* endorses the Ninth Circuit's 2003 *en banc Prudential* decision declining to allow expanded judicial review under the identical arbitration clause that is involved here.

LaPine devoted most of his December 2007 motion to vacate the Award to arguments calling for "expanded judicial review" of the Award. (Mot. at 13-25.)[1]  Because of *Hall Street,* "LaPine no longer advances arguments raised in his motion to vacate the award based on grounds for expanded judicial review."  (Opp. at 7 n.3.)  LaPine's objection to reviewing the Award on a "summary" or expedited basis (Opp. at 10-11) is also untenable in light of *Hall Street's* affirmation that the FAA "provides for expedited judicial review to confirm, vacate, or modify arbitration awards," and that such civil actions "get streamlined treatment as a motion." *Hall Street*, 2008 WL 762537, at *2, 4.

We show below that none of LaPine's remaining arguments has merit.  Under the exceedingly narrow standard of review for domestic arbitral awards, even "implausibility is not a valid ground for vacating or correcting an award" under the FAA. *Id.* at *4 n.1, *citing Hall Street Associates, L.L.C.* v. *Mattel, Inc.*, 196 Fed. Appx. 426, 477-78 (9th Cir. 2006).  Serious errors of law are not enough to justify vacatur unless the award is "completely irrational." *French v. Merrill Lynch*, 784 F.2d 902, 906 (9th Cir. 1986).  LaPine does not come close to showing any such error in the Award, which consists of a well-reasoned unanimous decision by an unusually distinguished tribunal.

---

[1]  We cite LaPine's Motion to Vacate as "Mot. ____ " and his Opposition to Kyocera's Motion to Confirm as "Opp. ___."

1    LaPine devotes a major part of his Opposition to a point that cannot affect the outcome

2   of this case.  He contends that "review" of the Award must be conducted under the standards of

3   Chapter I of the FAA (domestic), rather than Chapter II (international).  (Opp. at 5-7.)  As

4   shown by the language from *Hall Street* and *French* quoted above, the exceedingly narrow

5   domestic standard of review under 9 U.S.C. § 10 could not help LaPine.[2]  Thus the interplay

6   between Chapters I and II is an academic issue in this case.  In fact, the circuit courts of appeal

7   (including the cases he cites) have categorically rejected the assertion that Chapter II and the

8   Convention "does not govern" review of non-domestic arbitral awards that are rendered in the

9   U.S.  All of the cases hold that the Convention and Chapter II of the FAA furnish the exclusive

10  grounds for *confirming* such awards, although the circuits are divided on the applicability of

11  Chapter II to motions to *vacate* such awards.  But LaPine could not prevail here even if the

12  Court applied the "manifest disregard" standard recognized in some circuits under Chapter I.

13    LaPine's final argument – that the unavailability of "expanded judicial review" renders

14  the entire arbitration agreement unenforceable – was expressly considered and rejected by the *en*

15  *banc* court in the *Prudential* litigation.  Voiding the arbitration agreement at this late stage,

16  moreover, would be inequitable and ignore that LaPine elected – with full knowledge of that *en*

17  *banc* decision – to prosecute the arbitration without raising this objection until after the Tribunal

18  rejected all his claims on the merits.

---

[2]  The grounds for vacating an award under Chapter I of the FAA are:

> "(1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10.

## I.    THE CONVENTION GOVERNS REVIEW OF THE AWARD.

LaPine's chief argument in opposing Kyocera's cross-motion to confirm is that the Convention "does not govern this Court's review of the Award."  (Opp. at 5.)  That argument is easily disposed of.  The FAA sets forth the three requirements that must be met for an award to fall under the Convention:  it must (i) arise out of a legal relationship that is (ii) commercial in nature and (iii) is not entirely between citizens of the United States.  *See* 9 U.S.C. § 202.  The Award plainly satisfies this three-part test, and LaPine's puzzling argument that the Convention nonetheless "does not govern" the Court's review is without merit.

LaPine also contends that the Convention is inapplicable because "the parties specifically contracted for review under the FAA."  (Opp. at 7.)  This argument is predicated on a false distinction between "the FAA" and "the Convention."  The FAA applies not only to domestic arbitrations (Chapter I), but also to arbitrations that are not purely domestic and that are governed by the Convention through Chapter II of the FAA.[3]  *See China Nat'l Metal Prod. Import/Export Co.* v. *Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004) (section 207 of the FAA "incorporates by reference the Convention's seven enumerated exceptions or defenses to the mandatory recognition or enforcement of a foreign arbitral award.").  There is accordingly no merit to LaPine's contentions that evaluating the Award against the seven standards provided in the Convention would deprive LaPine of review "under the FAA," or that the arbitration agreement at issue was somehow referring only to Chapter I when it called for review under "the FAA."  (*See* Opp. at 15.)  The express language of *Chapter II* of the FAA *requires* U.S. courts to confirm non-domestic awards according to the standards set forth in Article V of the Convention.  *See* 9 U.S.C. § 207.

---

[3]  The FAA consists of three chapters:  Chapter I (9 U.S.C. § 1 *et seq.*), dealing with domestic arbitral awards; Chapter II (9 U.S.C. § 201 *et seq.*), which governs review of non-domestic awards and implements the Convention; and Chapter III (9 U.S.C. § 301 *et seq.*), which implements a separate treaty providing for review of certain arbitral awards that are rendered in, and that involve parties that are citizens of, specified countries that are members of the Organization of American States.

Nor is there any merit to LaPine's assertion (offered without any citation) that "[t]he Convention would only theoretically govern review of this Award if it were properly brought before a court of competent jurisdiction in Japan."  (Opp. at 5.)  Cases cited by both parties establish that awards rendered in the U.S. are subject to the Convention if they meet Section 202's test for "non-domestic" awards.[4]  Even the case on which LaPine chiefly relies makes clear that Article V of the Convention governs *confirmation* of the Award.  *See Yusuf Ahmed Alghanim & Sons, W.L.L.* v. *Toys 'R' Us, Inc.*, 126 F.3d 15, 18 (2d Cir. 1997) ("Neither party seriously disputes the applicability of the Convention to this case and it is clear to us that the Convention does apply.").

We do not contend that this Court must confirm the Award without ruling on LaPine's motion to vacate.  (Opp. at 1.)  The question that *Toys 'R' Us* presents is whether, in evaluating LaPine's motion to vacate, the Court must consider *additional* review standards, such as "manifest disregard," that may apply in domestic FAA cases governed by Chapter I of the FAA.  (*Toys 'R' Us* held that Chapter II governed confirmation and Chapter I governed vacatur of an award entered after arbitration in New York.)  That is an open question in this Circuit, but the weight of judicial authority holds that review of a non-domestic award, such as the one at issue here, must be under the Article V grounds.  *See, e.g.*, *Indus. Risk Ins.* v. *M.A.N. Gutehoffnungshutte*, 141 F.3d 1434, 1441 (11th Cir. 1998) ("no defense against enforcement of an international arbitral award is available on the ground that the award is 'arbitrary and capricious,' or on any other grounds not specified by the Convention"); *Woodchem Europe, S.A.* v. *D.B. Western, Inc*., 2001 U.S. Dist. LEXIS 25290 (Nov. 2, 2001).  Consistent with this view,

---

[4] *See, e.g. Indus. Risk Ins.* v. *M.A.N. Gutehoffnungshutte*, 141 F.3d 1434, 1440 (11th Cir. 1998) ("Do the [Convention], and thus the provisions of Chapter 2 of the FAA, govern an arbitral award granted to a foreign corporation by an arbitral panel sitting in the United States and applying American federal or state law?  We hold that they do."); *Jain* v. *de Mere*, 51 F.3d 686, 689 (7th Cir. 1995) ("Chapter 2 mandates that any commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention"); *Jacada (Europe) Ltd.* v. *Int'l Mktg. Strategies*, 401 F.3d 701 (6th Cir. 2005) (non-domestic award rendered in the U.S. in proceeding involving U.S. and foreign parties and applying Michigan substantive law falls under the Convention).

1  the Ninth Circuit has stated in reviewing a non-domestic award that "[u]nder the Convention, an

2  arbiter's award can be vacated only on the grounds specified in the Convention." *Mgmt. &*

3  *Technical Consultants S.A.* v. *Parsons-Jurden Int'l Corp.*, 820 F.2d 1531, 1533-34 (9th Cir.

4  1987). The award under review in *Parsons-Jurden* was rendered outside of the U.S., and we

5  therefore acknowledge that it does not foreclose LaPine's argument that Chapter I should

6  govern his motion to vacate.[5] 126 F.3d at 20-23.

7           But there is no need to resolve that question in this case, because the outcome will be the

8  same regardless of the answer. The only arguable difference that LaPine has identified between

9  the two otherwise parallel FAA review regimes is the "manifest disregard" standard that some

10  courts have applied in Chapter I cases reviewing domestic awards, but that is not recognized

11  under the Convention. LaPine cannot remotely make the required showing that the Tribunal did

12  not merely err, but that it consciously disregarded legal principles it knew were controlling. *See*

13  *Collins v. D. R. Horton, Inc.*, 505 F.3d 874 (9th Cir. 2007). As shown in our cross-motion,

14  moreover, the Tribunal did not ignore LaPine's claims for breach of the covenant of good faith

15  (Cross-Mot. at 22-23), or mistakenly believe that he was a shareholder of LTC. (*Id.* at 23.)

16          It is also questionable whether the "manifest disregard" standard remains viable after the

17  Supreme Court's recent decision in *Hall Street*. Fifty years ago, the Supreme Court stated that

18  "the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are

19  not subject, in the federal courts, to judicial review for error in interpretation." *Wilko* v. *Swan*,

20  346 U.S. 427, 436-37 (1953). Some lower courts interpreted that statement as recognizing

21  "manifest disregard of the law" as an additional, "implicit" ground for vacatur of arbitral awards

22  beyond those enumerated in Chapter I of the FAA. *See Hall Street*, 2008 WL 762537, at *5.

23  *Hall Street* casts doubt on that interpretation:

24                   "Maybe the term 'manifest disregard' was meant to name a new ground for
25              review, but maybe it merely referred to the §10 grounds collectively, rather than
                adding to them. Or, as some courts have thought, 'manifest disregard' may have
26              been shorthand for the §10(a)(3) or §10(a)(4), the subsections authorizing vacatur

27  _____
5  LaPine mistakenly states in his opposition brief that the award in *Parsons-Jurden* "was
28  rendered in the U.S." (Opp. at 8 (emphasis omitted).)

1  when the arbitrators were 'guilty of misconduct' or 'exceeded their powers.'"  *Id.*
2  (citations omitted).

3      In sum, there is no doubt that Chapter II and the Convention govern the Court's review
4  of the Award on Kyocera's cross-motion to confirm.  The only question is whether the seven
5  grounds for review enumerated in the Convention are exclusive, or whether, as LaPine has
6  argued, the Award may also be reviewed for "manifest disregard" of the law on his motion to
7  vacate.  While courts are divided on this question in the case of non-domestic awards rendered
8  in the U.S. that fall within the Convention, and although it is an open question in this Circuit,
9  the answer does not affect the disposition of this case.

10  **II.    THERE IS NO BASIS FOR DECLINING TO CONFIRM AND ENFORCE THE**
11         **AWARD**

12      LaPine pays lip service to the rule that the grounds for vacating an award under both
13  Chapters of the FAA are exceedingly narrow.  *See* Opp. at 13-14 and cases cited therein;
14  *Ministry of Defense of Islamic Republic of Iran* v. *Gould, Inc.*, 969 F.2d 764, 770 (9th Cir.
15  1992) (the Convention's seven grounds "should be construed narrowly" to promote the "general
16  pro-enforcement bias [that] inform[ed] the Convention.") (citation omitted); *Indus. Risk Ins.*,
17  141 F.3d at 1441 ("no defense against enforcement of an international arbitral award is available
18  on the ground that the award is 'arbitrary and capricious,' or on any other grounds not specified
19  by the Convention");  *Fortier* v. *Morgan Stanley DW, Inc.*, 2006 WL 3020926, at *4 (N.D. Cal.
20  Oct. 23, 2006) (when evaluating whether arbitrators exceeded their powers, courts resolve all
21  reasonable benefit of the doubt in favor of upholding the award); *Collins*, 505 F.3d at 879
22  ("manifest disregard" requires much more than a "failure on the part of the arbitrators to
23  understand and apply the law," or "erroneous interpretation of the law" . . . "[i]t must be clear
24  from the record that the arbitrators recognized the applicable law and then ignored it.");
25  *Goodman* v. *CIBC Oppenheimer & Co.*, 131 F. Supp. 2d 1180, 1183 (C.D. Cal. 2001) ("the
26  Court must search for even a barely colorable justification for the outcome reached, and if one is
27  found, the arbitration award must be confirmed.") (citation and internal quotation omitted).

28

1    In a reprise of his motion to vacate, LaPine's opposition brief argues that the Award

2    should be set aside because the arbitrators (i) exceeded their powers by failing to follow

3    California's summary adjudication procedures and (ii) deprived LaPine of the opportunity to

4    present his case by denying him discovery.  (Opp. at 11-15.)  As we demonstrated in our cross-

5    motion and further show below, LaPine has not come close to satisfying the stringent test for

6    declining to confirm (or for vacating) the Award.

7        **A.    The Tribunal did not "exceed its powers."**

8        LaPine notes in his opposition brief, and we agree, that the stringent test for vacating an

9    award under 9 U.S.C. §10(a)(4) is substantially the same as the analogous test under Article V

10   of the Convention.  (Opp. at 12, 13.)  We demonstrated in our cross-motion that the Tribunal

11   acted well within its authority under ICC Rules when it applied summary judgment standards

12   that were modeled on FRCP 56 rather than state procedural law, and we showed that LaPine's

13   attorney acknowledged at the hearing that California state law does not govern questions of

14   arbitral procedure.  (Cross-Mot. at 13-16, 21.)  The parties expressly agreed in the ICC "Terms

15   of Reference" governing the arbitration that "[t]he applicable rules of procedure are the [ICC]

16   Rules."  (Opp. Ex. A, p. 20.)  The Terms of Reference also contemplated the summary

17   adjudication procedure.  (*Id.*, pp. 18-19.)  LaPine's opposition ignores these provisions of the

18   Terms of Reference and fails to respond to Kyocera's arguments and authorities distinguishing

19   the choice of state substantive law from the arbitration rules that control procedure.  (Cross-Mot.

20   at 14-15.)  Nor does LaPine dispute that the Tribunal's approach was consistent with its parallel

21   ruling – upholding LaPine's position – that California state procedural rules governing dismissal

22   for delay would not be applied in this international arbitration because the ICC rules govern.

23   (Award ¶ 71.)

24       **B.    The Tribunal did not deprive LaPine of an opportunity to present his case.**

25       We agree with LaPine that "the defense provided for in Article V(1)(b) essentially

26   sanctions the application of the forum state's standards of due process."  (Opp. at 11 (citation

27   and quotation omitted).)  LaPine has not remotely shown anything approaching a due process

28   violation.

LaPine's complaint that "[n]ever before had summary adjudication occurred in an international arbitration" may quickly be disposed of. LaPine agreed to this procedure – which the courts have routinely approved in domestic arbitrations (Cross-Mot. at 13 n.4) – and he joined with Kyocera in proposing that the Tribunal hear and resolve Kyocera's dispositive motion as the first order of business. (Ex. 20; Award ¶ 26.) The Tribunal did not offend due process by agreeing to follow the parties' joint request.

LaPine next argues that, "by denying LaPine discovery and thus a hearing on all the evidence, the tribunal denied him the full force of his due process rights." (Opp. at 11-12.) LaPine cites no authority in support of his asserted entitlement to discovery, which is contrary to a mountain of precedent holding that there is no right to discovery in arbitration. (Cross-Mot. at 17.)[6] The premise of this argument is also wrong as a factual matter: as we explained in our cross-motion, Kyocera provided LaPine and the Tribunal with 28 of the 34 documents that LaPine requested and certified that the remaining six documents either could not be located or never existed. (Cross-Mot. at 18.) Those six documents accordingly would not have been available even if full-blown discovery had occurred. LaPine's bald assertion that "the proceedings closed without the possibility of LaPine to dispute the failure to include those documents in the record" (Opp. at 3) is also inaccurate. As we explained in our cross-motion, LaPine opted not to respond to this submission, and he remained silent when the Tribunal indicated that it intended to close the proceedings and decide Kyocera's motion on the record before it. (Cross-Mot. at 18.) LaPine has not disputed any of these facts, nor did he try to show that the six phantom documents would be material to the issues in dispute.

---

[6] *See, e.g.*, *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 57-58 (1974) ("the factfinding process in arbitration usually is not equivalent to judicial factfinding. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable."); *Burton* v. *Bush*, 614 F.2d 389, 390 (4th Cir. 1980) (parties that agree to arbitrate thereby "relinquish the right to certain procedural niceties which are normally associated with a formal trial. One of these accoutrements is the right to pre-trial discovery."); *Paladino* v. *Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (noting that "[a]rbitral litigants often lack discovery").

LaPine also asserts that "the panel refused to accept as evidence LaPine's declaration in response to the Tribunal's April 11, 2007 letter." (Opp. at 12.) Not only did the Tribunal "accept" Mr. LaPine's declaration (Award ¶ 34), it specifically addressed that declaration in its Award. (*Id.* ¶ 96.)

Finally, the Court should disregard LaPine's conclusory assertions – made without citing any legal authority – that the Tribunal committed legal error when it (i) concluded that LaPine did not make out a *prima facie* showing of fraud; (ii) dismissed claims for lack of standing; (iii) ruled that the statute of limitations on LaPine's fraud claims was not tolled; and (iv) held that certain claims were barred by waiver and estoppel. (Opp. at 4-5.) The Tribunal correctly resolved each of these legal issues as we demonstrated in our cross-motion. (Cross-Mot. at 23-35.) Moreover, LaPine's motion to vacate addressed these issues on the assumption that there should be "expanded judicial review" of the Award. That avenue was foreclosed by *Hall Street*, and by LaPine's own admission, the Award may not now be set aside for these asserted errors of law. (Opp. at 13-15.)[7]

## III.    THE ARBITRATION AGREEMENT IS VALID

Finally, LaPine argues that "the parties' original consent to arbitrate is no longer valid" because the "expanded judicial review" provision may not be severed from the rest of the arbitration clause. (Opp. at 15.) Citing Kyocera's arguments during the prior *Prudential* litigation in seeking to set aside the Prudential award, LaPine claims that "both parties are in agreement" that severability is improper. (*Id.* at 15-16.)

---

[7] Should LaPine attempt in his April 14 reply brief to re-brand these or other "expanded judicial review" arguments as "manifest disregard of the law," the Court may properly disregard arguments that appear for the first time in the reply brief. *Cedano-Viera* v. *Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("we decline to consider new issues raised for the first time in a reply brief"); *Ass'n of Irritated Residents* v. *C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief").

1    LaPine fails to mention the most important point:  the Ninth Circuit (*en banc*) rejected

2    all of Kyocera's arguments in its 2003 *Prudential* decision.  *Kyocera Corp.* v. *Prudential-Bache*

3    *Trade Servs., Inc.*, 341 F.3d 987 (9th Cir. 2003).  The Court instead found that the expanded

4    review terms did "not permeate any other portion of the arbitration clause," and that "the review

5    provisions are not interdependent with any other."  *Id.* at 1001-02.  Concluding that the

6    expanded review terms were "not sufficiently central to the arbitration clause to defeat

7    severability," *id.* at 1002, the Court ruled that the "unlawful expanded scope-of-review terms

8    should be severed from the remainder of the arbitration clause" and confirmed the award against

9    Kyocera.  *Id.* at 1001.  LaPine's "non-severability" argument is therefore foreclosed by binding

10   Circuit precedent governing *the same arbitration clause*.

11   LaPine argues that invalidating the entire arbitration agreement "would be the most

12   equitable remedy available under the circumstances."  (Opp. at 16.)  This is exactly backwards.

13   LaPine was fully aware at the time that he prosecuted the arbitration that, under controlling

14   Ninth Circuit precedent, the expanded judicial review provision would be severed from the

15   arbitration agreement during any follow-on judicial proceedings.  LaPine nonetheless chose to

16   proceed with his claims, hoping that he would prevail and then take advantage of the *Prudential*

17   decision barring expanded judicial review.  LaPine cannot pursue arbitration in reliance on the

18   arbitration clause, with full knowledge of the *en banc* decision and its consequences; wait to see

19   whether he wins or loses; and then, *after he loses,* seek to escape the Award by erasing the

20   arbitration that he chose to prosecute.

21   LaPine also contends that his "non-severability" argument is "stronger" than the one

22   rejected in *Prudential* because Kyocera has sought confirmation of the Award under the

23   Convention, rather than under Chapter I of the FAA.  (Opp. at 16 ("[w]ith neither Chapter 1 of

24   the FAA, nor expanded review, the arbitration agreement is meaningless").)  LaPine has not

25   been deprived of review under the FAA, as this case amply shows.  Chapter II governing non-

26   domestic awards *is part of the FAA*, and both parties agree that the FAA governs review of the

27   Award.  As explained above, (i) the question is whether the Court's review should be conducted

28   exclusively under the standards provided in Chapter II of the FAA (which implements the

1    Convention), or whether the Chapter II standards should be supplemented by the additional

2    standards of Chapter I of the FAA applicable to domestic awards, but (ii) the answer to the

3    question does not matter because LaPine cannot remotely show a "manifest disregard of the

4    law" by the Tribunal, which is the only substantive difference between the two regimes that

5    LaPine has identified.

6          Finally, LaPine identifies cases that assertedly support his position (Opp. at 17-19) such

7    as *Little* v. *Auto Stiegler, Inc*., 29 Cal.4th 1064 (2003), *Armendariz* v. *Found. Health Psychcare*

8    *Servs., Inc*., 24 Cal.4th 83 (2000), and *Graham Oil Co*. v. *ARCO Prods. Co*., 43 F.3d 1244 (9th

9    Cir. 1995). The Ninth Circuit cited and discussed the same cases when it concluded that the

10   "expanded judicial review" provision should be severed from the balance of the arbitration

11   agreement. *See Prudential*, 341 F.3d at 1000-1002 (citing and discussing *Little*, *Armendariz*,

12   *Graham Oil*, and other state and federal decisions).

### CONCLUSION

14         This proceeding has entered its eighteenth year. LaPine has had every opportunity to

15   present his arguments to a distinguished tribunal of arbitrators, whose competence and

16   impartiality are above reproach. After carefully considering every one of LaPine's arguments

17   the Tribunal unanimously rejected all of his claims in a thorough and carefully-reasoned 31-

18   page decision. Kyocera urges the Court to bring this proceeding to a close by granting its cross-

19   motion to confirm the Award, and denying LaPine's motion to vacate the Award.

DATED:  April 14, 2008

Respectfully submitted,


_____/s/_____

Simon J. Frankel, SB # 171552
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:      (415) 591-6000
Facsimile:      (415) 591-6091
sfrankel@cov.com

Eugene D. Gulland (*pro hac vice*)
Donald J. Ridings Jr. (*pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004-2401
Tel: (202) 662-6000
Fax: (202) 662-6291

Attorneys for Defendant
KYOCERA CORPORATION