GERGOSIAN & GRALEWSKI LLP
EDWARD M. GERGOSIAN (105679)
ed@gergosian.com
ROBERT J. GRALEWSKI, JR. (196410)
bob@gergosian.com
BROOKE E. HODGE (234411)
brooke@gergosian.com
GERGOSIAN & GRALEWSKI LLP
655 West Broadway, Suite 1410
San Diego, CA 92101
Telephone: (619) 237-9500
Facsimile: (619) 237-9555

Attorneys for Plaintiff and Claimant
ANTHONY N. LaPINE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHEN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTHONY N. LaPINE, | ) Case No. CV-07-06132 MHP |
| Plaintiff and Claimant, | ) **PLAINTIFF'S REPLY TO** |
| | ) **DEFENDANT'S OPPOSITION TO** |
| vs. | ) **PLAINTIFF'S MOTION TO VACATE** |
| | ) **ARBITRATION AWARD** |
| KYOCERA CORPORATION, | ) |
| | ) Date: April 28, 2008 |
| Defendant and Respondent. | ) Time: 2:00 p.m. |
| | ) Courtroom: 15 |
| | ) Judge: Hon. Marilyn H. Patel |

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ..........................................................................1

II.   CALIFORNIA LAW GOVERNED THE ARBITRATION .......................................2

   A.   The Tribunal Ignored the Implied Covenant of Good Faith and Fair Dealing..................2

   B.   The Tribunal Erroneously Relied on Federal Law.........................................3

III.   THE PANEL EXCEEDED ITS POWERS .............................................................5

   A.   The Tribunal's Holding Is Without Legal Precedence ......................................5

   B.   California Procedural Rules Apply to this Summary Adjudication.................................7

   C.   *Lex Arbitri* and Federal Procedural Law ........................................................9

   D.   The Tribunal Applied the Wrong Law to LaPine's Fraud Claims .................................10

   E.   The Tribunal Failed to Consider a Full Record Before It................................................11

IV.   MANIFEST DISREGARD OF THE LAW.........................................................12

   A.   Manifest Disregard of Waiver Doctrine........................................................12

   B.   Manifest Disregard of Class-Action Tolling Doctrine...................................14

V.   CONCLUSION ..........................................................................................15

TABLE OF CONTENTS

1

# TABLE OF AUTHORITIES

2

**Cases**

3
*American Pipe & Constr. Co. v. Utah,*
   414 U.S. 538 (1974) .................................................................................. 14

4

5
*Bangert* v. *Narmco Materials,*
   163 Cal. App. 3d 207 (1984)...................................................................... 14

6
*Becker v. McMillin Constr. Co.,*
   226 Cal. App. 3d 1493 (1991).................................................................... 14

7

8
*Binder v. Aetna Life Ins. Co.,*
   75 Cal. App. 4th 832 (1999) ....................................................................... 4

9
*Brandon & Tibbs v. George Kevorkian Accontancy Corp.,*
   226 Cal App. 3d 442 (1990)....................................................................... 14

10

11
*Carey v. Kerr-McGee Chem. Corp.,*
   999 F. Supp. 1109 (N.D. Ill. 1998)....................................................... 14, 15

12
*Engalla v. Permanente Med. Group, Inc.,*
   15 Cal. 4th 951 (1997) ............................................................................ 7, 11

13

14
*Estate of Housley,*
   56 Cal. App. 4th 342 (1997) ........................................................................ 5

15
*Glendale Fed. Sav. & Loan Ass'n v. Marina View Heights Dev. Co.,*
   66 Cal. App. 3d 101 (1977)........................................................................... 2

16

17
*Goenaga v. March of Dimes Birth Defects Found.,*
   51 F.3d 14 (1995) ......................................................................................... 4

18
*Green v. Smith,*
   261 Cal. 2d 392 (1968) .............................................................................. 14

19

20
*Grisham v. Phillip Morris U.S.A., Inc.,*
   40 Cal. 4th 623 (2007) ............................................................................... 11

21
*Hall Street Assocs., L.L.C. v. Mattel, Inc.,*
   552 U.S. ___(2008), 127 S. Ct. 2875 (2007) ............................................ 2

22

23
*Hicks v. E.T. Legg & Assocs.,*
   89 Cal. App. 4th 496 (2001) ........................................................................ 3

24
*Hoffman v. Sports Car Club of Am.,*
   180 Cal. App. 3d 119 (1986)........................................................................ 4

25

26
*Ins. Co. of the W. v. Haralambos Beverage Co.,*
   195 Cal. App. 3d 1308 (1987) ................................................................... 13

27
*Jolly v. Eli Lilly & Co.,*
   44 Cal. 3d 1103 (1988) .............................................................................. 14

28

- i -

1   *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
       364 F. 3d 274 (5th Cir. 2004)........................................................................................9

2

3   *Kessler v. General Cable Corp.,*
       92 Cal. App. 3d 531 (1979).........................................................................................2

4   *Kulshrestha v. First Union Commercial Corp.,*
       33 Cal. 4th 601 (2004)...............................................................................................10

5

6   *Kyocera Corp. v. Prudential-Bache Trade Servs.,*
       299 F.3d 765 (9th Cir. 2002).....................................................................................10

7   *Las Palmas Assocs. v. Las Palmas Ctr. Assoc.,*
       235 Cal. App. 3d 1220 (1991)....................................................................................10

8

9   *Madden v. Kaiser Found. Hospitals,*
       17 Cal. 3d 699 (1976)..................................................................................................7

10  *McManis v. San Diego Postal Credit Union,*
       61 Cal. App. 4th 547 (1998).......................................................................................4

11

12  *Morgan v. Int'l Aviation Underwriters, Inc.,*
       250 Cal. App. 2d 176 (1967).....................................................................................13

13  *Rall v. Lovell,*
       105 Cal. App. 2d 507 (1951).......................................................................................5

14

15  *San Francisco Unified Sch. Dist. v. W.R Grace & Co.,*
       37 Cal. App. 4th 1318 (1995)....................................................................................14

16  *Sheldon v. Vermonty,*
       269 F.3d 1202 (10th Cir. 2001)...................................................................................6

17

18  *Sierra Nat'l Bank v. Brown,*
       18 Cal. App. 3d 98 (1971).........................................................................................11

19  *Sphere Drake Ins. Ltd. v. Lincoln Nat. Life Ins.,*
       2006 WL 2699270 (N.D. Ill. Sept. 13, 2006)...........................................................6

20

21  *Szetela v. Discover Bank,*
       97 Cal. App. 4th 1094 (9th Cir. 2002).....................................................................15

22  *Terrell v. Int'l Assoc. of Machinists,*
       150 Cal. App. 2d 24 (1957).........................................................................................5

23

24  *Universal Sales Corp. v. California Press Mfg. Co.,*
       20 Cal. 2d, 751 (1942).................................................................................................2

25  *Vogelsang v. Wolpert,*
       227 Cal. App. 2d 102 (1964)......................................................................................11

26

27  *Volt Info. Scis. v. Bd. of Trs.,*
       489 U.S. 468 (1989).....................................................................................................7

28  *Warren v. Tacher,*
       114 F. Supp. 2d 600 (W.D. Ky. 2000)........................................................................6

TABLE OF AUTHORITIES

1

*Weber v. John Crane, Inc.*,
   143 Cal. App. 4th 1433 (2006)..................................................................................4

2

3

**STATUTES, RULES & REGULATIONS**

4

United States Codes
9 U.S.C. §10(a)(4).......................................................................................................2

5

6

California Code of Civil Procedure
   §437 c(b)(1)............................................................................................................10
   §437 c(b)(2)...........................................................................................................
   §437c(d).................................................................................................................4
   §437c(h).................................................................................................................5
   §1281.12...............................................................................................................15

7

8

9

Federal Rules of Civil Procedure
   Rule 56................................................................................................................3, 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

I.      PRELIMINARY STATEMENT

The Arbitral Tribunal for the ICC International Court of Arbitration's ("Tribunal") dismissal of LaPine's claims in a summary adjudication proceeding is without precedence in an international arbitration. When extensively questioned on the issue at a hearing before the Panel on January 23, 2007, Kyocera could provide no legal precedence upon which the Tribunal could consider its motion. The Tribunal further exceeded its power by resolving disputed facts in disregard of the parties' joint procedural order, in which the parties agreed to exchange evidence and resolve disputed facts only *after* disposition of the summary adjudication motion.

Moreover, in granting defendant Kyocera Corporation's ("Kyocera") motion for summary adjudication the Tribunal exceeded its power. It failed to apply California law in disregard of the parties' contractual agreement in the Definitive Agreement and Plan of Reorganization ("Definitive Agreement") and unanimous agreement in the Terms of Reference. As a result, the Tribunal dismissed all of Plaintiff LaPine's claims *on the merits*, without a full record before it, in the face of several genuine issues of material fact and completely ignoring Kyocera's established violations of the covenant of good faith and fair dealing. Declaration of Brooke E. West in Support of Plaintiff's Motion to Vacate Arbitration Award ("West Decl."), Ex. 33.[1] In addition, the Tribunal ignored the previous panel's determination that Kyocera's breaches of its contractual obligations were the material and proximate cause of the damages awarded. Ex. 16 at 20.

Further, the Tribunal failed to apply well-settled California law which recognizes an implied covenant of good faith and fair dealing in every contract. In so doing, the Tribunal overlooked the harm Kyocera caused LaPine – a party to the Definitive Agreement – by violating that covenant implied in the Definitive Agreement.

Thus, LaPine has established, by his motion to vacate and his opposition to confirm, that in rendering the Award, the Tribunal exceeded its power and manifestly disregard the law.[2]

---

[1]      Unless otherwise noted, all exhibits (Ex. __) referenced herein are attached to the West Decl.

[2]      Because of the Supreme Court's decision in *Hall Street Assocs.,* LaPine may not advance arguments raised in his motion to vacate award based on grounds for expanded judicial review. *Hall*

1    Therefore, pursuant to Chapter 1 of the Federal Arbitration Act ("FAA"), this Court must vacate

2    the Award.  9 U.S.C. §10(a)(4).

3    **II.      CALIFORNIA LAW GOVERNED THE ARBITRATION**

4          **A.      The Tribunal Ignored the Implied Covenant of Good Faith and Fair Dealing**

5          As LaPine established by undisputed facts, he was a signatory to the Definitive

Agreement.  Therefore, LaPine has standing to sue Kyocera for harm resulting from Kyocera's

breach of contract.[3]  Under California law, "[G]eneral damages that may be awarded for breach

of contract are ordinarily confined to those which would naturally arise from the breach, or

which might have been reasonably contemplated or foreseen by the parties at the time they

contracted, as the probable result of the breach." *Glendale Fed. Sav. & Loan Ass'n v. Marina

View Heights Dev. Co.,* 66 Cal. App. 3d 101, 125 (1977).  Here, LaPine is suing for the

damages that resulted from Kyocera's breach and were reasonably foreseen by the parties,

namely the destruction of value of an asset promised to LaPine in exchange for his 29% interest

in LTC and use of his technology. [4]

          Furthermore, Kyocera breached the implied covenant of good faith and fair dealing.  The

Tribunal disregarded LaPine's argument that under California law in every contract is a

covenant of good faith and fair dealing that neither party will do anything to injure the other.

*Universal Sales Corp. v. California Press Mfg. Co.*, 20 Cal. 2d, 751, 771 (1942) ("In every

contract there is an implied covenant that neither party shall do anything which will have the

effect of destroying or injuring the right of the other party to receive the fruits of the contract,

---

*Street Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. ___(2008), 127 S. Ct. 2875 (2007).  Although LaPine does not advance arguments based on grounds for expanded review in this brief, he believes that issues previously raised in his motion to vacate are governed by Chapter 1 of the FAA when, as here: 1) the Tribunal exceeds its power; or 2) the Tribunal manifestly disregards the law.

[3]    Defendant asserts that *Kessler* is unavailing because in that case Plaintiff sued for breach of an indenture agreement.  Defendant fails to note that *Kessler* involved a claim for breach, not of any term of the indenture agreement, but rather the implied covenant of good faith and fair dealing.  *Kessler v. General Cable Corp.,* 92 Cal. App. 3d 531 (1979).

[4]    The Tribunal erred by not considering 11 undisputed facts in support of Claimant's contract standing.  Ex. 27, ¶23.

1    which means that in every contract there exists an implied covenant of good faith and fair

2    dealing.").

3    　　　Here, LaPine makes precisely this claim: that Kyocera's actions had the effect of

4    destroying LaPine's right to receive all of the fruits of the Definitive Agreement.[5] Additionally,

5    the issue of whether the breach of implied covenant of good faith and fair dealing is a question

6    of fact and is not generally decided on summary judgment, *Hicks v. E.T. Legg & Assocs.,* 89

7    Cal. App. 4th 496, 509 (2001). Therefore, the Tribunal erred when it ignored Plaintiff's claim

8    Kyocera breached its duty of good faith and fair dealing, a genuine issue of material fact.

9    　　　**B.　　The Tribunal Erroneously Relied on Federal Law**

10    　　　In granting the Award, the Tribunal relied on standards it created in the April 11, 2007

11    letter and F.R.C.P. 56. Ex. 33, ¶95. The Tribunal reasoned that because the ICC Rules were

12    silent and Kyocera could provide no precedent for granting summary judgment in an

13    international arbitration, "this arbitration is international in nature, and although venued in

14    California, is not subject to Californian procedural law not standing for core Californian public

15    policy. For this reason, the Arbitral Tribunal does not deem itself bound by California statutes

16    or case law regarding summary judgment disposal on the merits of the case…[s]hould the

17    Arbitral Tribunal seek guidance in the *lex arbitri* to determine standards regarding summary

18    judgment it would naturally look to the Federal Rules of Civil Procedure (Rule 56)." *Id.*

19    However, the use of federal law and the creation of summary judgment standards were in

20    complete disregard of applicable California law for which the parties had contracted.

21    　　　Specifically, the Tribunal erred in failing to recognize the difference between California

22    and federal law with regard to summary judgment standards in its decision:

23    　　　**Under Federal law**, the moving party's burden is satisfied if he can point to an
       　　　absence of evidence to support an essential element of the non-moving party's

24

25    ────────────

26    [5]    In the previous arbitration, the Panel found that the loss of opportunity to realize LTC's potential value was a foreseeable consequence of Kyocera's breaches of contract, supported by substantial evidence, and a consequence of which Kyocera had, or should have had, full knowledge and reason to anticipate. Ex. 16 at 17. Therefore, Kyocera should have known that its conduct would ultimately affect shareholders of LTC by making impossible a public offering or other means by which shareholders could eventually have realized the value of their LHC/LTC stock. *Id.*

27

28

claims.  The moving party does not have to present any evidence in support of the motion.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (1995).

**Under California law,** the moving party bears the initial burden of showing the lack of any triable factual issue while the non-moving party only bears the burden of proof at trial.  *Binder v. Aetna Life Ins. Co.,* 75 Cal. App. 4th 832, 839-40 (1999).  When, as here, the moving party fails to meet this burden, the opposing party has no burden to present opposing evidence.  *See Weber v. John Crane, Inc.*, 143 Cal. App. 4th 1433, 1442 (2006).

Moreover, had the Panel applied California law, the results in this proceeding would have been substantially different.  First, the Tribunal erroneously required LaPine to make a *prima facie* showing of fraud and ignored LaPine's declaration with regard to his fraud claims.  The Panel erred when it did not require Defendant to carry this initial burden.  Even if it was necessary for Plaintiff to make a *prima facie* showing of fraud or undue influence to defeat Defendant's motion for summary adjudication, Plaintiff met his burden by submitting his declaration to the Panel.  *Hoffman v. Sports Car Club of Am.*, 180 Cal. App. 3d 119, 126 (1986), LaPine's declaration should have been offered as admissible evidence of the existence of a triable issue.  C.C.P. §437c(d); *see McManis v. San Diego Postal Credit Union,* 61 Cal. App. 4th 547, 555 (1998) (opposing affidavits and declarations need not prove the opposition's case. They suffice if they disclose the existence of a triable issue).

Second, the Tribunal erroneously held that documents not joined to the record were immaterial to LaPine's claims.  In response to the Tribunal's April 11, 2007 letter, LaPine submitted Brooke E. West's Declaration for Additional Discovery ("BEW Declaration") to request documents cited to and relied on in the previous arbitration between Prudential and Kyocera.  LaPine believes that the documents cited by the first Tribunal materially support his claims of fraud and misrepresentation, objections to closing, merits of the December 24, 1986 waiver document, standing and right to claim damages, and breach of contract.  Ex. 29, ¶3. Although Kyocera provided 28 documents in response to the BEW Declaration, 6 documents were not joined to the record and LaPine did not have the opportunity to comment on *any* of the documents provided by Kyocera before the Tribunal ruled the documents were not material. Moreover, under California law, "[i]f it appears from the affidavits submitted in opposition to a

- 4 -

1   motion for summary judgment or summary adjudication or both that facts essential to justify

2   opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the

3   motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may

4   make any other order as may be just." C.C.P. §437c(h).

5   Third, the Tribunal erroneously weighed evidence and the credibility of the evidence in

6   Kyocera's summary adjudication motion.  For example, the Tribunal erred by concluding that

7   LaPine was a warrant holder (he was not) and not a signatory to the Definitive Agreement (he

8   was), by finding that Kyocera owed no duty of good faith and fair dealing to LaPine, and that

9   LaPine waived his rights under the contract – all questions of fact.  Under California law, the

10  Tribunal could not weigh the credibility of a declaration submitted by the party opposing a

11  summary judgment motion and then grant the motion.  *Estate of Housley,* 56 Cal. App. 4th 342,

12  359-60 (1997).  A motion for summary judgment is not a trial on the merits, but is made merely

13  to determine whether there is an issue to be tried.  *Rall v. Lovell,* 105 Cal. App. 2d 507 (1951);

14  *Terrell v. Int'l Assoc. of Machinists*, 150 Cal. App. 2d 24 (1957) (the purpose of summary

15  judgment procedure is to determine whether there is a triable issue of fact irrespective of

16  sufficiency of pleadings).  Therefore, the Tribunal exceeded its power by failing to apply on

17  California law.

18  **III.    THE PANEL EXCEEDED ITS POWERS**

19  **A.    The Tribunal's Holding Is Without Legal Precedence**

20  On January 23, 2007, the parties appeared at a hearing before the Tribunal to argue their

21  respective positions with regard to Kyocera's motion for summary adjudication. Ex. 33, ¶27.

22  At the hearing, the Tribunal questioned whether Kyocera's counsel could provide any precedent

23  to grant summary adjudication in an international arbitration:

24      ARBITRATOR AKSEN: I kind of get the impression that you're asking for
        something that's pretty unusual in international arbitration.
25
            That's just a general comment. And at the same time, you have a burden in
26      getting us to grant this application.

27

28

1

2

> So I'm looking for some help in terms of, I don't want to do something here that no one ever has done before, unless your arguments are so overwhelming that the three of us have no other choice.

3

4

> But you're giving me no comfort that you've got any precedent for a previous either ICC tribunal or any arbitral --- international arbitral tribunal granting this kind of relief.

5

> MR. GULLAND: Well, sitting here, I cannot give you that precedent.

6

Ex. 23, 118:9-24.

7

Not only could counsel for Kyocera not point to a single case establishing precedence

8

granting summary adjudication in an international arbitration at the hearing, but Kyocera has

9

failed to provide a case to support its position in its Motion and Cross-Motion to Confirm

10

Arbitral Award and in Opposition to Plaintiff's Motion to Vacate. ("Cross-Motion") at 13.

11

In its Cross-Motion, Kyocera relies, in a footnote, on three cases to show that a tribunal

12

may dispose of an arbitration on a summary adjudication proceeding. *Id*. at 13. Kyocera relies

13

on *Sheldon v. Vermonty*, a Tenth Circuit case that vaguely refers to a summary judgment motion

14

only to hold that the court considered the motion irrelevant. *Sheldon v. Vermonty*, 269 F.3d

15

1202 (10th Cir. 2001). Additionally, Kyocera cites to *Warren v. Tacher*, 114 F. Supp. 2d 600

16

(W.D. Ky. 2000) and *Sphere Drake Ins. Ltd. v. Lincoln Nat. Life Ins.,* 2006 WL 2699270 (N.D.

17

Ill. Sept. 13, 2006), which neither refer to nor provide precedent allowing an arbitral panel to

18

grant a motion for summary adjudication in an international arbitration. Cross-Motion at 13.

19

By relying on these cases, Kyocera attempts to redirect the Court's attention to an entirely

20

separate issue – whether LaPine is entitled to an evidentiary hearing – to mask its inability to

21

cite case law that supports any precedence for granting summary adjudication in international

22

arbitrations.

23

Moreover, although Plaintiff agreed that the Tribunal could hear Kyocera's summary

24

adjudication motion, that agreement was premised on Kyocera's representation that its motion

25

would not require the resolution of any disputed facts. Ex. 20. It became apparent to Plaintiff

26

that Kyocera's motion would require the resolution of disputed facts, and so in response to the

27

28

1   Tribunal's April 11, 2007 letter, Plaintiff objected to the Tribunal's resolution of any disputed

2   facts on its ruling on the summary adjudication motion.  Ex. 27.

3          Kyocera also fails to address the parties' express agreement that California law govern

4   procedural issues of the arbitration.  Ex. A to Plaintiff's Opposition to Kyocera's Cross Motion

5   to Confirm, at 2.  Because the ICC Rules are silent as to summary adjudication standards, and

6   Kyocera cannot provide precedence to the contrary, the Tribunal exceeded its powers when it

7   failed to apply California summary judgment standards in this arbitration.

8          **B.    California Procedural Rules Apply to this Summary Adjudication**

9          In clear violation of the parties' agreement and § 10(a)(4) of the FAA, the Tribunal

10  exceeded its powers by arbitrarily disregarding well-defined California law.  Ex. 33, ¶95.  When

11  California law is expressly incorporated into the arbitration agreement in question and governs

12  the adjudication of any disputes arising from the agreement, California law applies to

13  procedural issues.  *Engalla v. Permanente Med. Group, Inc.,* 15 Cal. 4th 951, 971 (1997).

14  Moreover, California law incorporates many of the basic policy objectives contained in the

15  FAA, including a requirement that an arbitration agreement must be enforced on the basis of

16  state contract law.  *Madden v. Kaiser Found. Hospitals,* 17 Cal. 3d 699, 709, 711 (1976).

17  *Engalla*, 15 Cal. 4th at 971-72.  Finally, California procedural law may not be preempted by the

18  FAA when parties contract for the arbitration agreement to be governed by state law.  *Volt Info.*

19  *Scis. v. Bd. of Trs.,* 489 U.S. 468 (1989).

20         In its Cross-Motion, Kyocera argues that the Tribunal was not required to apply

21  California judicial procedures.  Cross-Motion at 21.  This argument is unfounded.  First, both

22  the Definitive Agreement and the Terms of Reference provide that the California law and the

23  ICC Rules govern the conduct of the arbitrators with regard to procedural issues.  Ex. A to

24  Opposition at 2; Cross-Motion at 15.  The Terms of Reference, drafted by the Tribunal pursuant

25  to the rules of the ICC, and the Definitive Agreement state that the arbitrators shall decide

26  matters submitted to them based upon "the evidence presented, the terms of this Agreement, the

27  Agreement in Principle and ***the laws of the State of California***." Ex. A to Opposition, and

28

- 7 -

1    Definitive Agreement, ¶8.10(d). The ICC Rules provide that the Tribunal should follow the

2    parties' selection of procedures where the ICC Rules are silent:

3        The rules governing the proceedings before the arbitrator shall be those rules
         resulting from these Rules and, where these Rules are silent, *any rules which the*
4        *parties* (or failing them, the arbitrator) may settle, and whether or not reference is
         thereby made to a municipal procedural law to be applied to the arbitration.

5
     *ICC Rules of Conciliation And Arbitration, Article 11, New Conciliation Rules and amended*
6    *Arbitration Rules in force as from January 1, 1988.*[6] ICC Rules of Conciliation and Arbitration,
     Ex. A attached hereto.
7
          Here, the parties contracted to use California law to fill in the gaps where the ICC Rules
8
     were silent, including summary judgment standards. In disregard of the parties' intent to be
9
     bound by California law, the Tribunal exceeded its powers by failing to apply California law to
10
     the summary adjudication proceeding.
11
          Second, Kyocera incorrectly relies on the Tribunal's holding with regard to delay where
12
     it did not apply California law, and assumes that California law does not apply to other
13
     procedural issues such as summary judgment standards. Cross-Motion at 16. In the Award, the
14
     Tribunal held that ICC Rules were *not* silent with regard to that *particular* issue:
15
         The ICC Rules do not have provisions, nor is there a policy inherent in the spirit
16       of the ICC Rules (Article 26) favoring claimants over defendants…On the
         contrary, the ICC Rules are quite explicit in ensuring that arbitral proceedings are
17       to continue irrespective of either party failing to participate in the arbitration. In
         this respect, Article 8(2) of the ICC Rules recites as follows: If one of the parties
18       refuses or fails to take part in the arbitration, the arbitration shall proceed
         notwithstanding such refusal or failure.
19
     Ex. 33, ¶76.
20
          Therefore an *explicit* ICC rule governs the procedural issue of delay which the Tribunal
21
     correctly used to hold that LaPine's claims could not be dismissed. There is, however, *no* ICC
22
     Rule that governs summary judgment. Ex. A. The Tribunal exceeded its power when it failed
23
     to apply California procedural law to Kyocera's motion for summary adjudication.
24

25   _____
     [6]      Kyocera incorrectly cites to Article 15 of a different set of ICC Rules which changes the terms
26   "municipal procedural law" to "the rules of procedure of a national law..." Cross-Motion at 14. Although
     the parties contracted to have California law govern this arbitration, under Article 11, had the parties not
27   specified the procedure governing this arbitration California procedural law would be the "municipal"
     law pursuant to the ICC Rules of 1988.
28
     _____
                                          - 8 -

1    **C.    *Lex Arbitri* and Federal Procedural Law**

2    The Panel exceeded its power in applying federal procedural law as the *lex arbitri*

3 governing this arbitration. Without definition or supporting authority, the Tribunal invoked the

4 doctrine of *lex arbitri* to decide that F.R.C.P. 56 governed Defendant's motion for summary

5 adjudication. Ex. 33, ¶95. Although its meaning is clear, the term *lex arbitri* appears

6 infrequently in case law[7] and deserves further explanation.

7    *Lex arbitri* is the law of the forum. It provides that absent an express choice of law

8 provision dictating what procedural law will apply to the arbitration, the Tribunal must apply

9 the law of the forum, based on the agreement's forum clause. *See Karaha Bodas Co., L.L.C. v.*

10 *Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F. 3d 274, 291 (5th Cir. 2004)

11 (explaining that "[u]nder the New York Convention, ***an agreement specifying the place of the***

12 ***arbitration creates a presumption that the procedural law of the place applies to the***

13 ***arbitration***").[8]

14    In *Karaha*, the parties contracted to arbitrate in Geneva, Switzerland, and under the

15 Arbitration Rules of the United Nations Commission on International Trade Law. *Id.* at 282.

16 The agreement did not expressly identify the procedural law that would apply to the arbitration.

17 *Id.* at 290. It was undisputed that Indonesian substantive law would apply. *Id.* at 291. The

18 court held that "the parties presumptively chose Swiss procedural law as the *lex arbitri* when

19 they designated Switzerland as the site of the arbitration." *Id.* at 292.

20    Here, Kyocera and LaPine contracted to arbitrate in San Francisco, California, and under

21 the ICC Rules and the FAA. Ex. A to Opposition at 2 and Definitive Agreement ¶ 8.10. The

22 agreement also identifies California law as the procedural law that should govern this

23 arbitration. Ex. 18 at 2. It is undisputed that California substantive law applies. Ex. 33, ¶95.

24 *infra* §II.B.

25    The Tribunal ignored the *lex arbitri*, the ***place*** of arbitration, California, and chose

26

27    [7]    A search for "*lex arbitri*" in the broadest "Federal and State Cases, Combined" database on
LexisNexis renders only 6 results, 4 of which are different opinions in *Karaha*.

28    [8]    Unless otherwise noted, all emphasis is added and citations are omitted.

1   instead to focus on the rules of the Arbitration, the FAA.  From *Karaha* and the parties'

2   agreement, it is clear that California procedural laws apply to the arbitration.  As discussed

3   above, had the Tribunal applied California summary judgment standards as contracted by the

4   parties, the outcome would have been different.  Therefore, the Tribunal exceeded its power

5   under the parties' agreement and manifestly disregarded the law.

6       **D.    The Tribunal Applied the Wrong Law to LaPine's Fraud Claims**

7          First, without the burden to do so, LaPine presented significant evidence to support his

8   fraud claims in his motion to vacate in addition to the timely submission of his declaration.

9   Motion to Vacate, and Ex. 28.  LaPine presented evidence of Defendant's intent to fraudulently

10  induce Plaintiff and supported those facts with the findings of Phase I[9] and II of the previous

11  awards, while Kyocera tendered nothing.  In its dealing with Plaintiff, Defendant made false

12  representations, concealed information from him and failed to disclose material information.

13  Although, LaPine pointed to documents such as the Proxy Statement of LaPine Technology, the

14  Definitive Agreement, and the Amended Trading Agreement to support LaPine's claims of

15  fraud, the Tribunal disregarded the evidence and the genuine issues of material fact arising

16  therein.  Ex. 33, ¶90 at 7.

17         Second, LaPine declared under oath that he never received the December 22, 1986 letter

18  notifying the parties of Kyocera's intent not to comply with the obligations covered by the

19  Definitive Agreement, raising a disputed factual issue.  As stated above, under California law

20  Plaintiff does not have the burden of proving *direct* evidence of Defendant's fraudulent intent.

21  *Las Palmas Assocs. v. Las Palmas Ctr. Assoc.*, 235 Cal. App. 3d 1220, 1239 (1991).

22  Additionally, the use of affidavits and declarations are specifically authorized to support and

23  oppose motions for summary adjudication.  *Kulshrestha v. First Union Commercial Corp.*, 33

24  Cal. 4th 601, 609 (2004) (citing C.C.P. §437 c(b)(1)&(2)).  Therefore, the Panel exceeded its

25

26  [9]    In Phase I of the Award Sentence, the previous Tribunal found that Kyocera was estopped to deny that it was bound by the ATA and determined that PBTC, LTC and shareholders of LTC all

27  changed their positions, at least some to their detriment, by committing themselves to the reorganization of LTC, in reliance upon the existence of a complete and valid contract.  Ex. 21, 16; Ex. 9, ¶40.  *Kyocera*

28  *Corp. v. Prudential-Bache Trade Servs.*, 299 F.3d 765 n. 14 (9th Cir. 2002).

1    powers by resolving disputed issues of fact and erroneously weighing LaPine's credibility as a

2    witness on a motion for summary adjudication.

3         Third, pursuant to California law:

4         "[I]t is not … necessary that [a plaintiff's] reliance upon the truth of the
          fraudulent misrepresentation be the sole or even the predominant or decisive

5         factor in influencing his conduct…It is enough that the representation has played
          a substantial part, and so has been a substantial factor, in influencing his decision.

6                                                ***
          Moreover, a presumption, or at least an inference, of reliance arises wherever

7         there is a showing that a misrepresentation was material."

8    *Engalla,* 15 Cal. 4th at 976-77.   More recent cases have indicated that fraud need only be

9    proved by a preponderance of the evidence.   *Sierra Nat'l Bank v. Brown*, 18 Cal. App. 3d 98,

10   104-06 (1971).   Thus, fraud may be proved by inference and circumstantial evidence because it

11   is almost impossible to prove directly.   *Vogelsang v. Wolpert*, 227 Cal. App. 2d 102, 111

12   (1964).   Additionally, whether reliance is reasonable is a question of fact for the jury under

13   California law.   *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 638 (2007).   In his

14   Updated Request for Arbitration, Plaintiff alleged with particularity that to induce Plaintiff to

15   execute the Definitive Agreement and with the intent to deceive, Defendant "employed a

16   scheme, artifice and conspiracy to defraud."   Ex. 16 at 27.   Plaintiff justifiably relied on

17   Kyocera's assurances and promises to sign the ATA and to effectuate the reorganization.

18   Furthermore, LaPine was ignorant to the misrepresentations and omissions of material fact

19   regarding Defendant's intent to resolve all disputes existing between them, which Kyocera

20   concealed to LaPine.

21        Thus, LaPine provided the Panel with evidence that raised genuine issues of disputed

22   facts about Defendant's representations.   The Panel erred by holding it was unable to find

23   genuinely material disputed facts in Plaintiff's fraud claims.

24        **E.    The Tribunal Failed to Consider a Full Record Before It**

25        The Tribunal found that the 28 out of 34 documents requested in LaPine's application

26   for further discovery were "spontaneously joined to the record" and without comment by the

27   parties, the Tribunal erroneously determined that the documents did not identify any genuine

28

1   material disputed facts as to the fraud-in-the-inducement claim.[10]  Ex. 33, ¶93.  The Tribunal

2   also completely disregarded LaPine's request that the findings of fact in Phases I and II of the

3   Award be joined to the record.

4        First, the Tribunal erred by limiting review of the documents produced by Kyocera to

5   support LaPine's fraud-in-the-inducement claim.  As stated in the BEW Declaration, "[t]he

6   documents cited by the first Arbitration Tribunal and the Court of Appeals are material in

7   support of Claimant's present claims of fraud and misrepresentation, objections to closing,

8   merits of the December 24, 1986 waiver document, standing and right to claim damages, and

9   breach of contract." West Decl., ¶3.

10       Second, included in LaPine's request were documents containing internal memos

11  expressing concern over the execution of pertinent agreements between the parties, meeting

12  notes in November 1986 regarding substantive negotiations between Kyocera and Prudential-

13  Bache Trade Corp. where Kyocera proposed changes to agreements the day before the fairness

14  hearing before LTC shareholders, letters from Kyocera's attorneys anticipating Kyocera's

15  failure to execute the Prudential-Bache Trade Corporation/Amended Trading Agreement

16  agreement, and an internal memo from Kyocera stating that Kyocera anticipated that its

17  breaches would result in LaPine's collapse.  Ex. 29, ¶5 at 2-5.  All of the above-mentioned

18  documents were relied on by the previous Tribunal and were considered important in Phase I

19  and II of the Awards.  Moreover, these documents address issues in direct dispute by the parties.

20  Therefore, the Tribunal erred when it dismissed the materiality of the documents requested by

21  LaPine on Kyocera's motion for summary adjudication.

22  **IV.    MANIFEST DISREGARD OF THE LAW**

23       **A.    Manifest Disregard of Waiver Doctrine**

24

25

---

26  [10]    There are 6 documents LaPine requested in BEW's Declaration that were not produced.  Ex. 33,
    ¶93.  The Tribunal erroneously relied on Kyocera's belief that because it could not find the documents,
27  the documents never existed.  Ex. 33, ¶93.  Each document in the BEW Declaration was an exhibit in the
    original arbitration between Prudential and Kyocera and if the documents are no longer available, then
28  they were destroyed.

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD
Case No. CV-07-06132 MHP

1      The Tribunal erred in holding that Plaintiff's second, fourth, eighth and tenth claims are

2   barred by equitable estoppel.  Clearly, the Tribunal was unable to make the distinction between

3   waiver and estoppel, as defined in LaPine's Motion to Vacate, as two distinct and different

4   doctrines.  *Ins. Co. of the W. v. Haralambos Beverage Co.,* 195 Cal. App. 3d 1308, 1321 (1987);

5   *Morgan v. Int'l Aviation Underwriters, Inc.*, 250 Cal. App. 2d 176 (1967).  Kyocera also relies

6   on the Tribunal's erroneous holding to support its position that pursuant to the Definitive

7   Agreement, LaPine had a choice to either: 1) redeem his original notes for a guaranteed

8   payment of more than $1.1 million and let his warrants expire; or 2) forego the $1.1 million in

9   cash and convert his initial warrants into final warrants, that would be converted into shares of

10  LaPine Holding – when the company successfully went public. Furthermore, the Tribunal made

11  no analysis of the law or evidence in summarily dismissing Plaintiff's claims on estoppel

12  grounds even though LaPine pointed to substantial evidence to show that Kyocera could not

13  have been ignorant of the true state of the facts.[11]  Ex. 33, ¶115-123.

14      Moreover, the Tribunal misconstrued LaPine's mitigation-of-damages argument by

15  making a finding that by accepting the cash payment he waived his other relatively enormous

16  rights under the contract.  To the contrary, when LaPine accepted the $1.1 million cash payment

17  he did so to mitigate his damages and preserve his contractual rights.  Additionally, when "'the

18  only proof of intention to waive rests on what a party does or forbears to do, his act or

19  omissions to act should be so manifestly consistent with and indicative of an intent to relinquish

20  voluntarily a particular right that no other reasonable explanation of his conduct is possible.'"

21  *Central Bank v. Superior Court*, 81 Cal. App. 3d 592, 600-01 (1978).  As explained in LaPine's

22  opening brief (Motion to Vacate at 16), and in view of the fact that Lapine was told the

23  warrants were worthless (Ex. 21 at 7), there is no support for waiver.  Moreover, mitigation of

24  damages is a question of fact and should not have been dismissed on a motion for summary

25  adjudication.  *Brandon & Tibbs v. George Kevorkian Accontancy Corp.*, 226 Cal App. 3d 442

26

---

27  [11]      One of the elements required of equitable estoppel is "the party asserting the estoppel must be
    ignorant of the true state of the facts." *Ins. Co. of the W.,* 195 Cal. App. 3d at 1321.

28

1    (1990); *see Green v. Smith*, 261 Cal. 2d 392, 396 (1968) (whether a plaintiff has acted

2    reasonably to mitigate damages is determined in light of the situation with which plaintiff was

3    confronted at the time the loss was threatened and not by the judgment of hindsight). Therefore,

4    the Panel erred in finding that LaPine waived his rights by failing to consider LaPine's

5    reasonable explanation for his actions, namely that he accepted money to mitigate his losses.

6    **B.    Manifest Disregard of Class-Action Tolling Doctrine**

7    Kyocera argues that LaPine's tolling of the eight-month period of the former LTC

8    shareholders in the *Evans* class action should be rejected. In his Motion to Vacate, LaPine

9    argues the Tribunal manifestly disregarded case law that has expanded *American Pipe &*

10   *Constr. Co. v. Utah*, 414 U.S. 538 (1974), not that the Tribunal declined to create new law.

11   Furthermore, California courts have also analyzed and applied *American Pipe*.[12]

12   Defendant once again mischaracterizes the holding of *American Pipe* by omitting a

13   critical phrase from the holding. (*cf* Cross-Motion at 31-32 and *American Pipe,* 414 U.S. at

14   552-53) (holding that tolling is appropriate *"at least* where class action status has been denied

15   solely because of failure to demonstrate that the  class is so numerous that joinder of all

16   members is impracticable"). Moreover, Defendant ignores LaPine's argument and the law that

17   states *American Pipe* is especially applicable when the underlying class action was filed in

18   federal court, as was the *Evans* case. Motion to Vacate at 19.

19   In a weak attempt to distinguish *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109

20   (N.D. Ill. 1998), Kyocera argues that the court did not explain why it extended *American Pipe*

21   to *Carey*, therefore it is unreliable. Cross-Motion at 32, n. 13. In *Carey*, while the court

22   dismissed plaintiffs' property damages claims based on the "discovery rule" grounds, the court

23

---

[12]    *Bangert* v. *Narmco Materials*, 163 Cal. App. 3d 207 (1984) (finding that the filing of a class
action complaint tolled the running of the statute of limitations for all members of the purported class
until class certification was denied for insufficient community of interest, not numerosity) (analyzed and
disapproved in part by *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988)). *Becker v. McMillin Constr.
Co.*, 226 Cal. App. 3d 1493 (1991) (opining that *Bangert* had not been completely disapproved by *Jolly*,
and tolling the statute of limitations where a related class action had been dismissed for lack of
commonality); *San Francisco Unified Sch. Dist. v. W.R Grace & Co.*, 37 Cal. App. 4th 1318 (1995)
(tolling the statute of limitations for those absent class members who eventually opt out of a pending
class action in which class certification was never denied).

1    agreed "that [underlying class action] tolled the running of the limitations period." *Carey*, 999

2    F. Supp at 1114. Additionally, *Carey*, like the *Evans* case, settled before a determination on

3    class certification was made.

4         Lastly, Defendant argues that LaPine, as a signatory to the Definitive Agreement, was

5    unlike other shareholders and required to arbitrate all of his disputes. Cross-Motion at 31. Yet,

6    at the same time, Defendant argues that LaPine was just like any other shareholder and that his

7    claims are derivative. Cross-Motion at 26. Kyocera cannot have it both ways. Additionally,

8    Kyocera mistakes the law. First, the arbitration agreement does not expressly preclude class

9    actions. (Definitive Agreement § 8.10). Even if it did, it would be found void as against public

10   policy. *See Szetela v. Discover Bank,* 97 Cal. App. 4th 1094, 1101-02 (9th Cir. 2002) (holding

11   that an arbitration clause prohibiting class actions violates the public policy favoring judicial

12   economy). Second, as shown above, California law applies to this arbitration. And California

13   tolls claims subject to arbitration.[13] For these reasons, the statute of limitations should be tolled

14   on Plaintiff's fraud claims.

15   **V.    CONCLUSION**

16        For all of the reasons stated above, the Court should grant Plaintiff's Motion to Vacate

17   Arbitration Award in its entirety or, in the alternative, modify the arbitration award as

18   appropriate.

19   DATED: April 14, 2008                              Respectfully submitted,

20                                        GERGOSIAN & GRALEWSKI LLP

21                                   /s/ Edward M. Gergosian
                                    EDWARD M. GERGOSIAN

22

23                                  655 West Broadway, Suite 1410
                                    San Diego, CA  92101

24

25        [13]     "If an arbitration agreement requires that arbitration of a controversy be demanded or initiated

26   by a party to the arbitration agreement within a period of time, ***the commencement of a civil action by that party based upon that controversy, within that period of time, shall toll the applicable time***

27   ***limitations contained in the arbitration agreement with respect to that controversy***, from the date the civil action is commenced until 30 days after a final determination by the court that the party is required

28   to arbitrate the controversy, or 30 days after the final termination of the civil action that was commenced and initiated the tolling, whichever date occurs first." C.C.P. §1281.12.

1

## CERTIFICATE OF SERVICE

2

3       I certify that I am at least 18 years of age, and not a party to this action.  My business

4 address is 655 West Broadway, Suite 1410, San Diego, California 92101.

5       On  April 14, 2008, the following document was filed electronically with the Clerk of

6 Court using the CM/ECF system which will send an electronic notice to all parties registered for

7 electronic filing in this case:

8 **PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
TO VACATE ARBITRATION AWARD**

9       I declare under penalty of perjury under the laws of the United States of America that

10 the foregoing is true and correct.

11

12 DATED: April 14, 2008                    /s/ Johanna Cervantes
                                        Johanna Cervantes

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    - 1 -