**EXHIBIT 5**

# COVINGTON & BURLING

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

EUGENE D. GULLAND
TEL 202.662.5504
FAX 202.778.5504
EGULLAND@COV.COM

February 20, 2006

**VIA E-MAIL AND FEDERAL EXPRESS**

Dr. Horacio Alberto Grigera Naón
2708 35th Place, N.W.
Washington, D.C. 20007

Graydon S. Staring, Esq.
7843 S. Galileo Lane
Tucson, Arizona 85747

Gerald Aksen, Esq.
Thelen Reid & Priest LLP
875 Third Avenue
New York, NY 10022

> Re:  *Anthony N. LaPine v. Prudential Bache Trade Corporation, et al.* No. 7099/BGD/OLG/ERS/MS/JB

Gentlemen:

On behalf of respondent Kyocera Corporation, I write for two purposes: (1) to address a question concerning the Kyocera-Prudential settlement that Arbitrator Aksen posed during the hearing, and (2) to respond to Claimant's post-hearing submission dated 7 February 2007.

The Prudential-Kyocera settlement

The tribunal's Phase II Award in the earlier arbitration awarded $234 million in damages to LTC for the lost value of that company caused by Kyocera's refusal to sign the Amended Trading Agreement and related conduct. The tribunal directed as follows: "the full lost value is given to LTC, leaving it to LTC to allocate the funds to its shareholders." (Phase II Award, Section XI. Conclusions of Law, ¶ 210.) Prudential and Kyocera were the only shareholders in LaPine Holding, which owned LTC. As the majority shareholder, Prudential controlled both entities at the time the Phase II award was issued and at all relevant times thereafter.

At the hearing on January 23, 2007, Arbitrator Aksen asked whether the parties to the first arbitration made any provision for a payment to Mr. Anthony LaPine as part of the

COVINGTON & BURLING

Dr. Horacio Alberto Grigera Naón
Graydon S. Staring, Esquire
Gerald Asken, Esquire
February 20, 2007
Page 2

settlement that terminated the legal proceedings arising out of the Prudential-Kyocera arbitration. (Hearing Tr. at 119:2 - 121:7.)

LTC, LaPine Holding, and Prudential settled their claims against Kyocera in December 2003 after the 9th Circuit *en banc* decision against Kyocera.[1] The fact of the settlement, including the settlement amount of $331.5 million, was disclosed in SEC filings. (A copy of Prudential's 8-K report describing the settlement is attached.) There was also broad press coverage of the settlement. The settlement agreement prohibits the parties from disclosing matters relating to the settlement. Without waiving or breaching Kyocera's obligations under the confidentiality provisions of that agreement, I can inform the Tribunal of the following:

- No provision was made in the settlement agreement to set aside or otherwise allocate any portion of the LTC award or settlement proceeds to any party other than the two shareholders in LaPine Holding.

- The settlement agreement did not earmark, by an escrow fund or any other device, funds to pay Mr. LaPine or any other non-shareholder in LaPine Holding.

- Neither Prudential nor Kyocera agreed to indemnify the other with respect to claims asserted by Mr. LaPine or by any other non-shareholder in LaPine Holding.

- There was no other agreement, besides the settlement agreement, by which Prudential and Kyocera dealt with the foregoing issues.

We do not know whether Prudential, which controlled LTC and LaPine Holding, discussed with Mr. LaPine the possibility of allocating to him a portion of the monies that the tribunal awarded to LTC. We are aware that Mr. LaPine dropped his claims against Prudential in this case, but are not aware of the terms, if any, on which he did so.

Dismissal for unreasonable delay

On 7 February 2007, Mr. LaPine submitted as Exhibit K an email that he received from James Morrison, counsel in the ICC Secretariat. The email stated: "the Secretariat's letters to the parties dated 12 February 2004 (sent to you personally by mail) and 28 June

---

[1] *See Kyocera Corp. v. Prudential-Bache Trade Svcs., Inc.*, 341 F.3d 987 (9th Cir. 2003) (*en banc*), *cert. dismissed*, 540 U.S. 1098 (2004).

COVINGTON & BURLING

Dr. Horacio Alberto Grigera Naón
Graydon S. Staring, Esquire
Gerald Asken, Esquire
February 20, 2007
Page 3


2004 (sent to you personally by DHL) were not delivered." (Exhibit K.) While we do not know the basis for this statement, we accept it for purposes of Kyocera's Summary Adjudication motion, and offer the following observations on Mr. LaPine's submission:

*First*, the Tribunal should reject the suggestion that delayed notification of the termination of the Prudential-Kyocera arbitration could excuse LaPine's failure to prosecute his case. It is now uncontroverted that LaPine allowed his claims to lie dormant from 1990, when he filed this proceeding, until 2005, when he reactivated them. Under the *Chapin* rule discussed in our briefs and at the hearing, Mr. LaPine's 15-year delay requires dismissal of his claims. When Mr. LaPine was informed of the settlement — whether in February 2004, August 2004, or not at all — is irrelevant under the *Chapin* rule and does not excuse his 15-year delay.

*Second*, although Mr. LaPine now apparently contends (for the first time) that he did not receive written notice of the settlement from the ICC in February 2004, at no point in this proceeding has he denied that he had actual knowledge of the Prudential-Kyocera settlement near the time that it occurred. As noted above, the Prudential-Kyocera settlement was disclosed by Prudential's 8-K dated December 22, 2003 (attached hereto), and it received broad publicity.

*Finally*, any consequences flowing from the failures of the attorney whom Mr. LaPine chose to represent him must be borne by Mr. LaPine, not Kyocera. We have no reason to doubt Mr. LaPine's assertions that his former attorney failed to keep Mr. LaPine informed of developments in this case, but no failure of Mr. LaPine's counsel to discharge his professional responsibility could justify imposing the resulting prejudice on Kyocera. Nor is there any explanation for the further year's delay — until July 2005 — during which Mr. LaPine continued to delay any prosecution of this case.

Sincerely,

Eugene D. Gulland

cc: Jonathan M. Barnett, Secretariat of the ICC
    Darius C. Ogloza, Esq.
    Edward M. Gergosian, Esq.

8-K 1 d8k.htm FORM 8-K

---

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 8-K

### CURRENT REPORT

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): December 22, 2003

# PRUDENTIAL FINANCIAL, INC.
(Exact name of registrant as specified in its charter)

| New Jersey | 001-16707 | 22-3703799 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

751 Broad Street
Newark, New Jersey 07102
(Address of principal executive offices and zip code)

(973) 802-6000
(Registrant's telephone number, including area code)

**Item 5. Other Events and Regulation FD Disclosure.**

On December 22, 2003, Kyocera Corporation ("Kyocera") agreed to pay $331.5 million to certain subsidiaries of Prudential Financial in settlement of an arbitration award rendered against Kyocera in connection with the matter of *LaPine Technology Corp. v. Kyocera Corp.*, which matter was discussed in the Registrant's Annual Report on Form 10-K for the year ended December 31, 2002 and its Quarterly Report on Form 10-Q for the quarter ended September 30, 2003. The Registrant expects the payment to be made prior to year-end 2003 and will record the proceeds as income, net of collection expenses, of the Financial Services Businesses. Income recorded as a result of the settlement will be included as a component of divested businesses and, therefore, not included in adjusted operating income.

In managing its businesses, the Company uses a non-GAAP measure called "adjusted operating income" to measure the performance of the Financial Services Businesses. Adjusted operating income is a non-GAAP measure that excludes realized investment gains, net of losses and related adjustments, and results of divested businesses and discontinued operations. Adjusted operating income should not be viewed as a substitute for net income determined in accordance with GAAP, and the Company's definition of adjusted operating income may differ from that used by other companies. The Company believes that the presentation of adjusted operating income as measured for management purposes enhances the understanding of its results of operations by highlighting the results from ongoing operations and the underlying profitability factors of its businesses. For additional information about adjusted operating income and the comparable GAAP measure, please refer to the Company's Annual Report on Form 10-K and Quarterly Report on Form 10-Q for the quarter ended September 30, 2003.

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: December 23, 2003

PRUDENTIAL FINANCIAL, INC.

By: /s/ SUSAN L. BLOUNT

Name: Susan L. Blount
Title: Vice President and Deputy General Counsel