UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY N. LaPINE,<br><br>    Plaintiff,<br><br>  v.<br><br>KYOCERA CORP.,<br><br>    Defendant.                            / | No. C 07-06132 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Cross Motions to Vacate/Confirm Arbitration Award** |

     In December 2007 Anthony LaPine ("LaPine") brought this action against Kyocera Corporation ("Kyocera") asking this court to vacate the arbitration award rendered by the ICC International Court of Arbitration (the "ICC") in *Anthony N. LaPine v. Kyocera Corporation*, No. 7099. Kyocera moved to confirm the award. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

BACKGROUND

     In the 1980s, plaintiff LaPine formed a California disk drive company called LaPine Technology Corporation ("LTC"). LaPine was LTC's President, Chief Executive Officer and Chairman. In 1985, Kyocera and LaPine, along with Prudential-Bache Trade Services, Inc. ("Prudential"), formed a three-way business relationship to manufacture, finance and market LTC's disk drives.

     Subsequently, in 1986, Prudential and Kyocera entered into an agreement to acquire LTC and reorganize it. LaPine was also a participant in this transaction. LaPine, Kyocera and Prudential agreed to arbitrate "[a]ll questions, disputes or differences in any way arising out of or relating to

this Agreement" under ICC Rules. West Dec., Exh. 3 (hereinafter "Definitive Agreement"), ¶ 8.10. The agreement was governed by California substantive law. Id., ¶ 8.10(d).

Shortly before the reorganization was scheduled to close, a disagreement arose between Kyocera and Prudential. In May 1987 LTC filed suit against Kyocera in this court. LTC ceased operations shortly thereafter. In October 1987 Prudential and LTC commenced arbitration proceedings against Kyocera (the "Prudential Arbitration"). In 1994 a three-member panel ruled in favor of Prudential and LTC. The Ninth Circuit confirmed the award in the Prudential Arbitration. See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987 (9th Cir. 2003) (en banc).

In 1990, LaPine filed this arbitration proceeding (the "LaPine Arbitration") against both Kyocera and Prudential, accusing them of destroying the value of LTC. The same panel as the one in the Prudential Arbitration was appointed and it granted a stay of the LaPine Arbitration pending issuance of a decision in the Prudential Arbitration. When the LaPine Arbitration proceedings resumed in 2005, the panel had to be reconstituted due to the intervening death of a panel member. The reconstituted panel, with agreement of both parties, agreed to entertain a summary adjudication motion by Kyocera.

The grounds for summary judgment asserted by Kyocera were unreasonable delay, standing, waiver/estoppel, statute of limitations and release. The parties jointly submitted a proposed procedural schedule to the panel on August 18, 2006. West Dec., Exh. 20. The joint schedule called for the panel to address Kyocera's dispositive motion in a threshold summary adjudication phase. The parties also agreed to a Terms of Reference ("TOR") which stated that the "applicable rules of procedure are the 1988 Rules of Conciliation and Arbitration of the International Chamber of Commerce." See Pl's. Opp. to Kyocera's Cross-Motion to Confirm, Exh. A, ¶ 10. The TOR further stated that the "[a]ll matter regarding the merits submitted to the Arbitral Tribunal shall be governed by the laws of the Sate of California, U.S.A." Id., ¶ 11. On September 18, 2006 the panel issued Procedural Order No. 1 adopting the parties' proposal and establishing a briefing schedule. Id., Exh. 19.

On April 11, 2007 the panel advised the parties of the specific summary judgment standards it would apply and offered the parties a further opportunity to submit any additional evidence in

2

support of their respective positions. Id., Exh. 26. LaPine then filed a brief asking for thirty-four additional documents from Kyocera. Id., Exhs. 27–29. On June 22, 2007 Kyocera submitted copies of twenty-eight of those documents. In an accompanying declaration, Kyocera's attorneys confirmed that following an extensive search of Kyocera's files the remaining six documents either never existed or could not be located. Id., Exhs. 30–31. LaPine did not respond and the panel declared the arbitral proceedings closed on July 17, 2007. Id., Exh. 32.

On August 29, 2007 the panel issued a unanimous award. Nestor Dec., Exh. F (hereinafter "Arbitral Award"). The panel declined to dismiss LaPine's claims for his delays of prosecution. The panel acknowledged California's procedural rules favoring dismissal in such circumstances, but declined to apply California procedural law. Instead, it ruled that "although California law governs the dispute on the merits, it does not control procedural matters or matters concerning the conduct of this arbitration." Id., ¶ 71. The panel stressed that ICC procedural rules "isolat[e] ICC arbitral proceedings from the local laws of procedure of the arbitral seat." Id., ¶ 83. Since ICC rules do not call for dismissal of cases for delayed prosecution, the panel ruled that LaPine could present his claims.

On the merits, the panel ruled that LaPine's fraud claims were barred by the statute of limitations applicable to such claims. It rejected LaPine's argument that a class action filed by another former shareholder had tolled the statute on LaPine's obligation to commence this arbitration, and ruled that the authority cited by LaPine did not apply. As an alternative ground for dismissal, the panel also ruled that LaPine failed to make out a prima facie case of fraud.

The panel dismissed LaPine's contract-based and corporate mismanagement claims for lack of standing. The panel ruled that warrant holders lack standing to bring generalized damages claims based on the diminution in value or destruction of the company that issued the warrant. The panel also ruled that LaPine's claims were derivative, not individual; that they could only be asserted by LTC; and that LTC had already asserted and recovered damages for them in the Prudential Arbitration. As an additional basis for dismissal, the panel ruled that LaPine's claims were barred by the doctrines of waiver and estoppel, based on LaPine's decision to accept, without any reservation of rights, $1.1 million in lieu of exchanging his warrants for shares; his failure to escrow

3

1 those monies or otherwise segregate and secure them; his failure to tender those monies back; and
2 his use of those monies during the past 18 years to fund other ventures.

3 Having dismissed all of LaPine's claims on these grounds, the panel found it unnecessary to
4 resolve Kyocera's release and other defenses.

## DISCUSSION

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards—also known as the "New York Convention," and hereinafter referred to as the "Convention"—was drafted in 1958 under the auspices of the United Nations. Ministry of Defense of the Islamic Republic of Iran v. Gould Inc., 887 F.2d 1357, 1362 (9th Cir. 1989). The United States acceded to the Convention in 1970 and that same year, Congress enacted legislation implementing the provisions of the Convention into domestic law, codified as Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. sections 201–208. Id.; Pub. L. 91-368, 84 Stat. 692 (July 31, 1970). The purpose of the Convention is to "encourage the recognition and enforcement of international arbitral awards" and "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte, 141 F.3d 1434, 1440 (11th Cir. 1998).

### I.     Applicability of the Convention

An arbitration agreement or arbitral award "falls under" the Convention if it "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial," provided that if the relationship is entirely between U.S. citizens, it must involve property or performance abroad or have some other reasonable relation with a foreign country. 9 U.S.C. § 202. A corporation is a citizen of the United States for purposes of Chapter II of the FAA if it is incorporated or has its principal place of business in the United States. Id.; see also Jacada (Europe), Ltd. v. Int'l Marketing Strategies, Inc., 401 F.3d 701, 704–709 (6th Cir. 2005) (discussing scope of the Convention under Article I(1) and siding with other courts, including Ninth Circuit, that 9 U.S.C.

United States District Court
For the Northern District of California

section 202 provides definition for determining whether award falls under the Convention), abrogated on other grounds by Hall Street Associates, L.L.C. v. Mattel, Inc., 128 S. Ct. 1396 (2008).

Here, the arbitration agreement and arbitral award fall under the Convention. The Definitive Agreement embodies a legal relationship the subject of which—the reorganization of Lapine Technology Corporation and the buyout of its shareholders—is commercial in nature. Respondent Kyocera is not a citizen of the United States because it is a corporation organized and existing under the laws of Japan and has its principal place of business in Kyoto, Japan. The arbitration, therefore, was not entirely between citizens of the United States.

Accordingly, the arbitration agreement and arbitral award fall under the Convention pursuant to 9 U.S.C. section 202, and the court has jurisdiction over the award pursuant to 9 U.S.C. section 203.[1] That the arbitral award was made in the United States under American law does not change the court's conclusion. See Indus. Risk. Ins., 141 F.3d at 1441 (arbitral award made in the United States, under American law, fell under Convention because one party was a German corporation); Lander Co., Inc. v. MMP Investments, Inc., 107 F.3d 476 (7th Cir. 1997) (arbitral award made in the United States between two domestic corporations involving distribution of shampoo in Poland fell under Convention); Bergesen v. Joseph Muller Corp., 710 F.2d 928 (2d Cir.1983) (arbitral award made in the United States between two foreign entities fell under Convention).

The court pauses here to note that the Ninth Circuit has indicated that in order to fall under the Convention, an "additional" requirement must be met, namely the award "must be made in the territory of another Contracting State." Gould, 887 F.2d at 1362. In its declaration of accession, the United States as well as many other signatories announced that, pursuant to Article I(3) of the Convention, the United States would "apply the Convention, on the basis of reciprocity, to the recognition and enforcement of only those awards made in the territory of another Contracting State." 21 U.S.T. 2517; see also notes following 9 U.S.C.A. § 201. The Ninth Circuit in Gould grafted this declaration of accession onto the jurisdictional mandate of 9 U.S.C. section 203. Gould, 887 F.2d at 1362.

This court does not find the Ninth Circuit's statement in Gould to be controlling authority. The question of whether the Convention encompasses arbitral awards made in the United States was

5

1 not squarely before the court in Gould.  There, the arbitral award was made in the Netherlands.
2 Gould, 887 F.2d at 1362.  Moreover, other Circuits that have considered the relevance of the
3 declaration of accession have rejected the proposition that the declaration precludes applicability of
4 the Convention to awards rendered in this country.  See Lander, 107 F.3d at 481–482; Bergesen, 710
5 F.2d at 932–933.

6        In sum, the court concludes that the arbitral award made in the United States under American
7 law falls under the Convention as defined in 9 U.S.C. section 202 because one of the parties to the
8 arbitration, Kyocera, is not a citizen of the United States.

10 II.    Standard of Review

11        Having found that the arbitration agreement and award fall under the Convention, and having
12 found proper jurisdiction to confirm the award, the court now turns to the heart of the parties'
13 dispute: Under what standards should this court review the arbitral award?  Because the award falls
14 under the Convention, there is no doubt that Article V of the Convention, implemented in the United
15 States under Chapter II of the FAA, governs the court's review.  The parties' primary dispute is
16 whether the grounds for review enumerated in the Convention are exclusive, or whether as LaPine
17 argues, the award may also be reviewed under the standards set forth in Chapter I of the FAA, 9
18 U.S.C. sections 9–11.[2]

19        When an arbitral award falls under the Convention, a party has three years from the date of
20 the award to apply to a court for an order confirming the award.  9 U.S.C. § 207.  "The court shall
21 confirm the award unless it finds one of the grounds for refusal or deferral of recognition or
22 enforcement of the award specified in the said Convention."  Id.  Article V of the Convention sets
23 forth seven grounds upon which a court may refuse an award.  See 21 U.S.T. 2517, reprinted at notes
24 following 9 U.S.C.A. § 201.  Under Article V(1) of the Convention, the grounds for refusing to
25 recognize or enforce an award are:

26     (1)(a) The parties to the agreement . . . were . . . under some incapacity, or the said
agreement is not valid under the law . . . ; or
27     (1)(b) The party against whom the award is invoked was not given proper notice of
the appointment of the arbitrator or of the arbitration proceedings . . . ; or
28

6

> (1)(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to the arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ; or
> (1)(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or
> (1)(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Under Article V(2) of the Convention, two additional grounds for refusing an award are:

> (a) The subject matter of the difference is not capable of settlement by arbitration . . . ; or
> (b) The recognition or enforcement of the award would be contrary to the public policy of [the country in which enforcement or recognition is sought].

Together, the five grounds in Article V(1) and the two grounds in Article V(2) are the only grounds for refusal explicitly provided under the Convention.

Under what courts have sometimes termed the "domestic" portion of the FAA, *i.e.*, Chapter I of Title 9 of the United States Code, a federal court reviews a "domestic" arbitral award (*i.e.*, an arbitral award over which a federal court has jurisdiction, but which does not "fall under" the Convention) pursuant to 9 U.S.C. sections 9–11. Under Chapter I of the FAA, a federal court may vacate the award:

> (1) Where the award was procured by corruption, fraud, or undue means.
> (2) Where there was evident partiality or corruption in the arbitrators . . .
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, . . . or in refusing to hear evidence pertinent and material to the controversy . . .
> (4) Where the arbitrators exceeded their powers . . .

9 U.S.C. § 10(a).

Whether, in addition to the grounds specified in Article V of the Convention, the "domestic" standards embodied in Chapter I of the FAA apply to review of an arbitral award falling under the Convention and made in the United States under American law is an open question in the Ninth Circuit.

The Second Circuit has squarely addressed the question and has answered it in the affirmative. In <u>Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.</u>, 126 F.3d 15, 23 (2nd Cir. 1997), the Second Circuit held that "the Convention mandates very different regimes for review of arbitral awards (1) in the state in which, or under the law of which, the award was made, and (2) in other states where recognition and enforcement are sought." Relying on Article V(1)(e) of the

7

1  Convention, the Second Circuit stated that "the Convention specifically contemplates that *the state*
2  *in which, or under the law of which the award is made*, will be free to set aside or modify an award
3  in accordance with its domestic arbitral law and its full panoply of express and implied grounds for
4  relief." Id. (emphasis added). Moreover, the Second Circuit stated that "the Convention is also clear
5  that when an action for enforcement is brought *in a foreign state*, the state may refuse to enforce the
6  award only on the grounds explicitly set forth in Article V of the Convention." Id. (emphasis
7  added).        Other circuits have adopted the Second Circuit's holding. See Jacada, 401 F.3d at
8  709 (Sixth Circuit cited Toys "R" Us approvingly and stated, "[b]ecause this award was made in the
9  United States, we can apply domestic law, found in the FAA, to vacate the award"). However, some
10  circuits appear to be in conflict with Toys "R" Us. See Indus. Risk Ins., 141 F.3d at 1441–1443
11  (arbitral award falling under Convention and made in Tampa, Florida under Florida law was
12  reviewed by Eleventh Circuit under Article V, without regard to standards set forth in Chapter I of
13  the FAA or any grounds not specified in the Convention).

14        The Ninth Circuit has stated in reviewing an award that fell under the Convention that "under
15  the Convention, an arbiter's award can be vacated only on the grounds specified in the Convention."
16  Mgmt. & Technical Consultants S.A. v. Parsons-Jurden Int'l Corp., 820 F.2d 1531, 1533–34.
17  However, the award under review in Parsons-Jurden was rendered outside the United States, in
18  Bermuda under Bermuda law. Id. at 1533. The parties in Parsons-Jurden sought recognition and
19  enforcement in the United States of an arbitral award rendered in a foreign jurisdiction.
20  Accordingly, Parsons-Jurden is consistent with the portion of Toys "R" Us holding that where a
21  party seeks recognition and enforcement of an award rendered in a foreign jurisdiction, Article V of
22  the Convention provides the exclusive grounds for relief.

23        Ultimately, as defendant Kyocera notes, the answer to the question presented is perhaps
24  academic because as shall be seen below, the outcome is the same regardless of whether the court
25  applies the standards set forth under Article V of the Convention or the standards set forth in
26  Chapter I of the FAA under 9 U.S.C. section 10. In the absence of further guidance from the Ninth
27  Circuit, the court concludes that the appropriate standard of review is under both Article V and 9
28  U.S.C. section 10.[3]

8

III.  Analysis

The Ninth Circuit has interpreted the domestic portion of the FAA, 9 U.S.C. section 10(a)(4), to clarify when arbitrators "exceed[] their powers." Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 830 (9th Cir. 1995). The court held that "[w]hen arbitrators rule on a matter not submitted to them, or act outside the scope of the parties' contractual agreement, the award may be overturned because the arbitrators exceeded the scope of their authority." Id. (citing 9 U.S.C. § 10(a)(4)). In ensuing years, the Ninth Circuit has held that under 9 U.S.C. section 10(a), arbitrators "exceed their powers" "not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational or exhibits a manifest disregard of the law." Kyocera Corp., 341 F.3d at 997 (internal quotations and citations omitted). This implies that manifest disregard of the law is co-extensive with "exceed their powers" other than for decisions that are completely irrational. The court held that "[t]hese grounds afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." Id. at 998. Thus, this court "may not reverse an arbitration award even in the face of an erroneous interpretation of the law. Rather, to demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." Collins v. D.R. Horton, Inc., 505 F.3d 874, 879 (9th Cir. 2007) (internal quotations and citations omitted).

This standard is echoed by the Second Circuit. In Toys "R" Us, Inc. the court did not explicitly discuss the "exceed[] their powers" language, but found that an award may be vacated under 9 U.S.C. section 10 for manifest disregard of the terms of the agreement or of the law. Specifically:

> Mere error in the law or failure on the part of the arbitrator to understand or apply the law is not sufficient to establish manifest disregard of the law. For an award to be in 'manifest disregard of the law,' the error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.

126 F.3d at 23–24 (internal quotations and citations omitted).[4] It then applied the same standard with respect to manifest disregard of the terms of the agreement.

9

1   Each of LaPine's allegations of error pertain to one of the following: 1) violation of Article
2   V(1)(b) of the Convention; 2) violation of Article V(1)(c) of the Convention; 3) the arbitral panel
3   "exceeded its powers;" or 4) the arbitral panel "manifestly disregarded" the law.  In light of the
4   foregoing discussion, the court analyzes both "exceeded its powers" and "manifestly disregarded"
5   under the same rubric when discussing LaPine's allegations.

### A.   Article V(1)(b)

Article V(1)(b) of the Convention allows this court to vacate the arbitral award if the losing party "was otherwise unable to present his case."  LaPine argues, without objection, that this prong "essentially sanctions the application of the forum state's standards of due process."  Iran Aircraft Indus. v. Avco Corp., 980 F.3d 141, 145–46 (2d Cir. 1992) (quotation and citation omitted).  LaPine claims the following offended due process: 1) the summary adjudication proceedings precluded discovery; 2) Kyocera never produced requested documents; and 3) the panel ignored certain declarations submitted by LaPine.  Each of these contentions are also made elsewhere and are discussed below.  None of them offend due process.

### B.   Article V(1)(c)

Article V(1)(c) of the Convention allows this court to vacate the arbitral award if it was "not in accordance with the agreement of the parties."  LaPine merely incorporates by reference the arguments he makes regarding violations of FAA section 10(a)(4).  Consequently, the court rejects the arguments, incorporating by reference its rationale below for rejecting LaPine's arguments regarding violations of FAA section 10(a)(4).

### C.   FAA section 10(a)(4) – Panel Exceeded its Powers/Manifest Disregard

#### 1.   Lack of Legal Precedent

LaPine claims that the lack of legal precedent regarding summary adjudication in an international arbitration automatically means that the panel exceeded its powers.  However, the lack of legal precedent is merely another manner in which to characterize an issue of first impression.

United States District Court
For the Northern District of California

1  When an adjudicatory body decides an issue of first impression, it does not automatically exceed its
2  powers. Indeed, the panel could not have manifestly disregarded the law if there was no law to
3  follow in the first instance. Thus, this argument is frivolous.

4  Furthermore, the use of summary adjudication was jointly agreed to by the parties. West
5  Dec., Exh. 20. Indeed, the parties stipulated to a hearing on the motion before any document
6  exchange or discovery was to take place. Id. The court finds no due process violations in this
7  arbitration context—where discovery is not guaranteed[5]—when parties stipulate to a particular
8  schedule.

9  LaPine also argues that the panel resolved disputed facts. He does not, however, state what
10 disputed facts were decided by the panel. To the extent that LaPine's argument is based on the panel
11 making credibility determinations, it is discussed below.

### 2. California Procedural Rules

Section 8.10 of the Definitive Agreement directs that "[t]he arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce ("ICC") and the Federal Arbitration Act." Definitive Agreement at 45. Further, the parties agreed, in the TOR, that the 1988 Rules of Conciliation and Arbitration of the ICC would govern procedural matters and substantive California law would govern adjudication of the merits. The 1988 Rules of Conciliation and Arbitration provide that the panel must select procedures where ICC Rules are silent:

> The rules governing the proceedings before the arbitrator shall be those rules resulting from these Rules and, where these Rules are silent, any rules which the parties (or failing them, the arbitrator) may settle, and whether or not reference is thereby made to a municipal procedural law to be applied to the arbitration.

Pl.'s Reply to Def.'s Opp., Exh. 1.[6] On April 11, 2007 the panel notified the parties that "the Arbitral Tribunal is left with the impression of a possible misunderstanding on the standards for considering the Application, which are not provided in the ICC Arbitration Rules." West Dec., Exh. 26. The panel then set forth the standards it intended to apply, which were based on federal law, as gap-fillers and asked the parties to submit further briefing. Both parties submitted briefs that discussed the appropriate standards to be applied. Id., Exhs. 27, 30. In its final opinion, the panel affirmed the standard it had set forth earlier. Arbitral Award, ¶ 85. It went on to state that

11

"providing for the summary disposal on the merits of claims when the conditions to do so are met is fully compatible with both the letter and spirit of the ICC Rules . . . ." Id., ¶ 86.

LaPine's first argument claims California procedural law, instead of the standards adopted by the panel was intended to govern the procedural standards applicable to the summary judgment proceedings. The panel's decision regarding procedure was, at best, a correct interpretation of how the ICC gap-filler provisions work and at worst, is an incorrect interpretation of how the ICC gap-filler provisions apply in this situation. Thus, at worst, the panel merely interpreted or applied the governing law incorrectly. There is no evidence that the award is completely irrational or exhibits a manifest disregard of the law. Indeed, the panel requested further briefing on the issue of summary judgment standards to be used. There is no evidence that the panel neglected to read these submissions. In light of a lack of evidence to the contrary, it appears that the panel considered LaPine's arguments and rejected them. For example, the panel stated:

> [T]his award is international in nature, and although venued in California, is not subject to Californian procedural law not standing for core Californian public policy. For this reason, the Arbitral Tribunal does not deem itself bound by California statutes or caselaw regarding summary judgment disposal on the merits of the case.

Arbitral Award, ¶ 95. Moreover, the court does not find that due process has been offended. Using the forum's procedural law while concurrently using the substantive law of a different jurisdiction is common and pervasive in federal courts. Here, the panel used federal procedural law and California substantive law. This does not offend due process.

For the same reasons, LaPine's argument that the application of federal procedural laws as *lex arbitri* exceeds the panel's powers is also unpersuasive. Specifically, the panel invoked the doctrine of *lex arbitri*—law where the arbitration is to take place—to decide that Federal Rule of Civil Procedure 56 governed this action. Again, at worst, this is an incorrect interpretation of the law of the place where the arbitration is to take place. The arbitration took place in San Francisco, which is located both in California and the United States. A decision to use federal procedural law when presented with two competing procedural standards is not completely irrational nor does it exhibit a compete disregard of ICC Rules. Indeed, the arbitrators are the best qualified to determine what the ICC Rules require, and they specifically affirmed, in their final opinion, the decision to use this particular summary judgment standard. They stated:

12

> [P]recisely because of their international nature, the *lex arbitri* governing these arbitral proceedings is primarily the U.S. Federal Arbitration Act. Should the Arbitral Tribunal seek guidance in the *lex arbitri* to determine standards regarding summary judgment, it would naturally look to the Federal Rules of Procedure (Rule 56).

Arbitral Award, ¶ 95.

Second, LaPine contends the panel failed to apply California standards regarding unknown facts during summary judgment when it made a decision without reviewing six documents identified by LaPine. Kyocera submitted a sworn declaration, which stated that it was unable to locate the remaining six documents and it appeared that three of those documents did not exist. West Dec., Exh. 31. LaPine relies on California Code of Civil Procedure section 437c(h), which states:

> If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just.

This statute explicitly allows the panel to make any other order as may be just. Here, the panel found that LaPine had not made a showing as to "where or under whose control [the missing] documents – if at all existing - could or would be." Arbitral Award, ¶ 93. The panel went further to note that "such circumstances eloquently reveal once more the daunting evidentiary difficulties to be met if this case were tried on the merits after having been dormant for over twenty years and the absence of even a *prima facie* record permitting that to happen." Id. Consequently, the panel's reasoned decision not to wait for these documents, which was well within their powers under the California statute, does not offend due process nor is it a manifest disregard of the law.

Third, LaPine contends the panel erroneously made credibility determinations on summary judgment. Lapine presented no evidence other than self-serving and conclusory statements to the panel in order to create a genuine issue of material fact to defeat summary judgment. However, mere allegations or denials do not defeat a moving party's allegations on summary judgment. Fed. R. Civ. P. 56(e)(2); Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 959–60 (9th Cir. 1994). Consequently, the panel did not exceed its powers even if it did resolve issues confronted by directly contradictory declarations. This same rationale applies to LaPine's argument that a genuine issue of material fact was created by his declaration that he did not receive a letter dated December 22, 1986.

13

### 3. Disregarding Submitted Evidence

LaPine claims that documents he submitted that demonstrate fraudulent misconduct, such as proxy statements and trading agreements, were disregarded by the panel. Paragraph 90 of the panel's opinion, however, specifically discusses the evidence submitted by LaPine. See Arbitral Award, ¶ 90. The subsequent paragraphs discuss the panel's reasoning. Similarly, LaPine claims the panel did not "accept" his declaration in response to the panel's April 11, 2007 letter. However, the panel specifically refers to his declaration in its opinion. Id., ¶ 96. To the extent that LaPine contends his declaration creates a genuine issue of material fact, that argument has been rejected above. Since the panel did not ignore this evidence, no due process violations or manifest disregard can be found.

### 4. Errors of law

LaPine lost at the arbitration stage and now attempts a review of the panel's decision by attempting to re-litigate the merits by advancing errors of law made by the panel. These errors include allegations that: 1) the panel ignored LaPine's good faith and fair dealing claim;[7] 2) LaPine's updated request for arbitration created a genuine issue of material fact regarding fraud;[8] 3) the panel's holding regarding the twenty-eight documents that Kyocera submitted upon LaPine's request for further discovery was in error;[9] 4) the panel should not have dismissed certain claims for a lack of standing; 5) the panel should have tolled the statute of limitations regarding certain claims; and 6) the panel erroneously held that certain claims were barred by waiver and estoppel.

LaPine has skillfully attempted to re-argue the case in this forum; however, this court conducts a very limited review of the arbitral panel's decision. It is irrelevant that a mistake was made or that this court would decide the case differently. See T-Mobile USA, Inc. v. Quest Commc'ns Corp., 2007 WL 3171428, at *3–*4 (W.D. Wash. Oct. 26, 2007). LaPine's arguments, based on errors of law, do not demonstrate that any of the panel's decisions offend due process, are completely irrational or exhibit a manifest disregard of the law. Indeed, there is no showing that the arbitrators recognized the applicable law and ignored it. The arbitrators merely ruled against LaPine. There is no redress in this court for the pure errors of law claimed by LaPine.

///

14

///

CONCLUSION

      For the foregoing reasons, the arbitral award is AFFIRMED.

      IT IS SO ORDERED.

Dated: May 22, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# ENDNOTES

1.   9 U.S.C. section 203 vests subject matter jurisdiction in the federal district courts over "an action or proceeding falling under the Convention," without regard to the amount in controversy.  Venue is proper pursuant to 9 U.S.C. section 204 (stating that venue is proper in the district court which "embraces the place designated in the agreement as the place of arbitration if such place is within the United States") and section 8.10(c) of the parties' Definitive Agreement (stating that "[t]he arbitration shall be held in the City and County of San Francisco").

2.   Given the Ninth Circuit's decision in Kyocera Corp., 341 F.3d 987 and the Supreme Court's recent decision in Hall Street, 128 S. Ct. 1396, both holding that parties may not by private agreement expand or contract the grounds on which a federal court reviews an arbitral award, LaPine no longer argues for review under sections 8.10(d)(ii) and (iii) of the parties' Definitive Agreement.  Those contractual provisions call for what LaPine has termed "expanded judicial review," allowing a court to vacate, modify, or correct any award where "the arbitrators' findings of facts are not supported by substantial evidence" or where "the arbitrators' conclusions of law are erroneous."

3.   Since the court finds that both the Convention and the FAA apply, the court does not reach LaPine's argument that the Definitive Agreement must be invalidated if only the Convention applied.

4.   The applicability of this standard has been called into question by the Second Circuit but has not been overruled.  In Westerbeke Corp. v. Diahatsu Motor Co., Ltd., 304 F.3d 200, 221–22 (2d Cir. 2002), the court questioned whether "manifest disregard" may be allowed as "an additional non-statutory ground for vacatur, given that the FAA embodies a strong public policy favoring arbitration as an alternative means of dispute resolution."

5.   The full panoply of rights associated with judicial proceedings are not available during arbitration.  See, e.g., Burton v. Bush, 614 F.2d 389, 390 (4th Cir. 1980) ("When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial.  One of these accoutrements [sic] is the right to pre-trial discovery." (internal citations omitted)); Paladino v. Avnet Computer Techs., 134 F.3d 1054, 1062 (11th Cir. 1998) ("Arbitral litigants often lack discovery, evidentiary rules, a jury, and any meaningful right to further review. In light of a strong federal policy favoring arbitration, these inherent weaknesses should not make an arbitration clause unenforceable.").

6.   ICC Rules of Conciliation and Arbitration, Article 11, New Conciliation Rules and amended Arbitration Rules in force as from January 1, 1988.

7.   LaPine did not have standing to pursue his contractual claims.  See Arbitral Award, ¶¶ 105–23.  Since the covenant of good faith and fair dealing is effectively an invisible covenant in the contract, LaPine may not sue on that cause of action without standing to sue on the contract.

8.   Even if the panel erred by requiring prima facie evidence of certain causes of action, the panel's decision must nevertheless be affirmed for claims dismissed alternatively on statute of limitations grounds.  Parties had agreed that the defense of delay would be subject to the summary adjudication proceedings.

9.   There is no merit to LaPine's claim that he was denied the opportunity to "comment on" the documents that Kyocera submitted to the panel.  After the summary judgment motion had been briefed, argued and post-hearing submissions had been filed, LaPine asserted in May 2007—for the first time—that he wanted thirty-four additional documents.  The fact that he did not get an opportunity to "comment on" documents submitted in response to that request does not rise to the level of a due process violation.  Moreover, the panel explicitly found these documents to be immaterial.  Arbitral Award, ¶ 93.